UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY, *Plaintiff*, v. LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin, *Defendants*. | Case No. 1:23-cv-129-LY |

DECLARATION OF CARLOS CARVALHO

I, Carlos Carvalho, declare the following based on my personal knowledge:

1. I am a professor of statistics and the La Quinta Centennial Professor of Business at the University of Texas at Austin's McCombs School of Business. I am also the Executive Director of the Salem Center for Policy at the McCombs school. I have taught at the University of Texas since 2010.

2. In late 2017, I became responsible for the management of a dormant "Center for Politics and Governance" at the university and revived it under the auspices of the McCombs school. The newly-renamed and reimagined Salem Center for Policy, of which I am the Executive Director, promotes free markets and a free society. The Salem Center supports research, trains and engages students, and develops classes relevant to its mission. The Salem Center also sponsors about 60 lectures, debates, and other events throughout the year in its efforts to deliver the classical liberal message to the wider school community.

3. Professor Richard Lowery is a Senior Scholar at the Salem Center and works closely with me in operating it. He has been involved informally in the Salem Center since its inception and became formally attached to the Center in the fall of 2021.

4. Lowery and I had elicited the university president's support in asking the state legislature to create a new "Liberty Institute" at the university. This institute would have developed curriculum and hired faculty to advance classical liberal themes as a new, independent academic unit. As the administration and faculty are overwhelmingly opposed to classical liberal ideology, and the Liberty Institute was

1

conceived as a counterweight to the dominant ideology on campus. Lowery and I believed that independence from the administration and faculty's control was essential to the Liberty Institute's ability to advance its mission.

5. The legislature approved the new institute, but its enabling legislation was unfortunately somewhat vague—vague enough for the school administration, in our view, to renege on our understandings of how the institute (renamed "Civitas") would function and who would control it. Prof. Lowery has been an outspoken critic of the university's handling of "Civitas."

6. In a late July or early August of 2022 phone call I had with the Chair of the McCombs School's Finance Department, Sheridan Titman, Professor Titman said, "We need to do something about Richard," referencing Prof. Lowery. Titman added that the McCombs School's Dean, Lillian Mills, and University of Texas President Jay Hartzell, were upset about Lowery's political advocacy, and wanted to know if "we can ask him to tone it down?" I understood this as an implicit threat, but refused to do anything, and explained to Prof. Titman that Prof. Lowery has a First Amendment right to express himself.

7. On August 12 or 15, 2022, Dean Mills and Ethan Burris, Senior Associate Dean for Academic Affairs, called me into what started as a normal oversight meeting regarding the Salem Center. But after about an hour, the tone shifted when Mills and Burris changed the subject to Lowery and his speech. Mills and Burris claimed that Lowery was "crossing the line" in his criticism of school officials, to the point where the UT legal department was allegedly concerned about

2

his speech. When I asked them for examples of such speech, Dean Mills pointed to a podcast interview Lowery gave Richard Hanania, a Fellow at the Salem Center, about the Liberty Institute controversy. Dean Mills advised me to "work with Richard [Lowery]" about his speech.

8. When I declined to pressure Richard Lowery to modify his speech, the deans' approach shifted to suggestions that Lowery was impeding my ability to do my job, and that Lowery's association with me and the Salem Center was problematic. The deans insisted that something should be done about Lowery, Dean Burris telling me, "You have the power to have him not be attached to the center." (Lowery's contract with the center needs to be renewed annually, by both Dean Burris and me.) When I again resisted calls to discipline Lowery over his speech, Dean Mills told me, "I don't need to remind you that you serve at my pleasure," and stated that she did not care that I was the one who primarily raised money for the center.

9. In a late August meeting at Associate Dean Burris's office, Burris asked for my opinion about our previous conversation. I said I had felt threatened, to which Burris responded, "No, I wouldn't interpret it that way, he's [Lowery] hurting you." In another meeting at Burris's office, on or about October 17, Burris stressed the importance of civility in reminding me that he (Burris) is the one who must approve Lowery's compensation and ultimately oversees the Salem Center. Although he had just renewed Lowery's annual appointment, Burris told me that he might not approve Richard Lowery's appointment to the center in the future because of his speech critical of the administration.

10. From these exchanges with Titman, Mills, and Burris, I understood that they wanted me to ask Prof. Lowery to temper his political speech, and to convey to him that his relationship with the Salem Center was in danger if he did not do so. I also understood that Dean Mills' statement that I serve at her pleasure, following requests that I pressure Prof. Lowery to change his political speech, was a threat directed at me if I did not help bring about a change in Lowery's speech.

11. I relayed these conversations with Titman, Mills, and Burris to Prof. Lowery, as they requested and as they must have expected I would. However, I have made clear to Prof. Lowery that I support his right to express himself, and that I am not requesting that he change his speech in any way, for any reason.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 17, 2022.

_____
Carlos Carvalho