## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY<br><br>    PLAINTIFF,<br><br>v.<br><br>LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin,<br><br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:23-CV-00129-LY |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ERROR! BOOKMARK NOT DEFINED.

TABLE OF EXHIBITS ......................................................................................................... VI

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................................2

I.      Lowery is a tenured professor at the McCombs Business School that Burris
        reappointed as Associate Director of the Salem Center for Policy in
        September 2022. ...................................................................................................2

II.     Lowery suffered no consequences when he made disruptive public comments to
        undermine University operations. ......................................................................2

III.    Lowery misrepresents Defendants' speech and actions..................................3

ARGUMENT AND AUTHORITIES.........................................................................................4

I.      Lowery is Unlikely to Succeed on the Merits. ..................................................5

        A.      Lowery's claims suffer from two fatal jurisdictional defects............................6

                1.      Lowery's claim premised on his alleged fear that he won't be
                        reappointed or may suffer future harm is unripe..................................6

                2.      Lowery cannot create standing by voluntarily reducing his speech due
                        to an unreasonable fear of future harm..................................................7

        B.      Lowery has not suffered an adverse employment action due to his protected
                speech, nor is he in imminent danger of suffering one. ...................................8

                1.      Defendants' alleged statements are not adverse employment actions
                        under clear Fifth Circuit precedent. .......................................................8

                2.      Lowery's claim would fail even under *Burlington Northern*, which the
                        Fifth Circuit has not adopted..................................................................9

                        a.      Lillian Mills and Ethan Burris..................................................10

                        b.      Sheridan Titman .......................................................................12

                        c.      Madison Gove...........................................................................14

        C.      The injunction Lowery seeks would be an unconstitutional prior restraint on
                Defendants' speech. .......................................................................................15

II.     Lowery Will Not Suffer Irreparable Injury Without a Preliminary Injunction............16

**III.     The Equities and Public Interest Do Not Favor an Injunction. ................................ 17**

CONCLUSION ............................................................................................................................. 18

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraugh v. Altimus,*
   26 F.4th 298 (5th Cir. 2022) ............................................................................. 6

*Alexander v. United States,*
   509 U.S. 544 (1993) ......................................................................................... 15

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ........................................................................................... 7

*Benningfield v. City of Houston,*
   157 F.3d 369 (5th Cir. 1998) .......................................................................... 8, 9

*Breaux v. City of Garland,*
   205 F.3d 150 (5th Cir. 2000) ............................................................................. 9

*Brooks v. Houston Indep. Sch. Dist.,*
   86 F. Supp. 3d 577 (S.D. Tex. 2015) .............................................................. 15

*Burlington N. & Santa Fe Ry. v. White,*
   548 U.S. 53 (2006) ........................................................................................ 9, 10

*Carroll v. President & Commissioners of Princess Anne,*
   393 U.S. 175 (1968) ......................................................................................... 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................................... 7

*Colson v. Grohman,*
   174 F.3d 498 (5th Cir. 1999) ............................................................................. 9

*DeMarco v. Davis,*
   914 F.3d 383 (5th Cir. 2019) ........................................................................... 14

*DFW Metro Line Servs. v. Sw. Bell Tel. Co.,*
   901 F.2d 1267 (5th Cir. 1990) ......................................................................... 17

*Gibson v. Kilpatrick,*
   734 F.3d 395 (5th Cir. 2013) ............................................................................. 9

*Glass v. Paxton,*
   900 F.3d 233 (5th Cir. 2018) ............................................................................. 7

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ............................................................................... 16, 17

*Harrington v. Harris,*
    118 F.3d 359 (5th Cir. 1997) ........................................................................................ 9

*Johnson v. Halstead,*
    916 F.3d 410 (5th Cir. 2019) ........................................................................................ 9

*Kincheloe v. Caudle,*
    No. A-09-CA-010 LY, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009) ........................... 9

*Laird v. Tatum,*
    408 U.S. 1 (1972) ........................................................................................................ 7

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010) ................................................................................... 6, 7

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .................................................................................................... 6

*Marceaux v. Lafayette City-Parish Consol. Gov't,*
    731 F.3d 488 (5th Cir. 2013) ..................................................................................... 15

*Modica v. Taylor,*
    465 F.3d 174 (5th Cir. 2006) ....................................................................................... 8

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) .................................................................................................... 6

*Munaf v. Geren,*
    553 U.S. 674 (2008) .................................................................................................... 4

*Nixon v. City of Houston,*
    511 F.3d 494 (5th Cir. 2007) ................................................................................... 5, 6

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) .................................................................................................. 15

*Pickering v. Board of Ed. of Twp. High Sch. Dist. 205,*
    391 U.S. 563 568 (1968) ......................................................................................... 5, 11

*Pierce v. TDCJ,*
    37 F.3d 1146 (5th Cir. 1994) ....................................................................................... 8

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,*
    413 U.S. 376 (1973) .................................................................................................. 16

*Rankin v. McPherson,*
    483 U.S. 378 (1987)........................................................................................................6, 11

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985)............................................................................................................ 6

*Winter v. Nat'l Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)............................................................................................................... 4

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018)............................................................................................ 7

**Statutes**

42 U.S.C. § 1983...................................................................................................................5, 14

**TABLE OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| 1 | Lillian Mills Declaration |
| 2 | Ethan Burris Declaration |
| 3 | Sheridan Titman Declaration |
| 3a | August 14, 2022 Email Correspondence |
| 3b | August 22, 2022 Email Correspondence |
| 3c | September 24, 2022 Email Correspondence |
| 4 | Change in Rank Form |
| 5 | Dean's Evaluation |
| 6 | Texas Scorecard article, August 11, 2022 |
| 7 | Regents Rule 31004 |
| 8 | Regents Rule 60101 |
| 9 | HOP 3-2031 |
| 10 | UTS 138 |
| 11 | November 5, 2022 Academic Freedom Panel |
| 11a | November 5, 2022 Academic Freedom Panel – Transcript |
| 12 | November 5, 2022 The College Fix Article |
| 13 | October 21, 2022 Policy Ideas to Fix America's Universities |
| 13a | October 21, 2022 Policy Ideas to Fix America's Universities - Transcript |
| 14 | Texas A&M Original Complaint |
| 15 | HOP 2-2310 |
| 16 | Regents Rule 31008 |
| 17 | Lessons from the Frontlines of the University Wars |

| Exhibit Number | Description |
|---|---|
| 17a | Lessons from the Frontlines of the University Wars – Transcript |
| 18 | Joseph Bishop Declaration |
| 18a | August 24, 2022 Email Correspondence |
| 19 | Gabriela Maria Barake Declaration |
| 19a | Insider Higher Ed article, September 24, 2021 |
| 19b | The College Fix article, December 1, 2021 |
| 19c | Fox News article, February 18, 2022 |
| 19d | Campus Reform article, March 8, 2022 |
| 19e | The Texan article, April 18, 2022 |
| 19f | The Texas Tribune article, June 8, 2022 |
| 19g | The James G. Martin Center for Academic Renewal article, July 1, 2022 |
| 19h | Heterodox STEM article, August 5, 2022 |
| 19i | The College Fix article, August 5, 2022 |
| 19j | Heartland Daily News article, August 11, 2022 |
| 19k | Texas Scorecard article, August 11, 2022 |
| 19l | The College Fix article, August 11, 2022 |
| 19m | The College Fix article, August 12, 2022 |
| 19n | The College Fix article, November 5, 2022 |
| 20 | Richard Lowery Pay Change History |
| 21 | Custodian of Records Declaration |

**INTRODUCTION**

Plaintiff Richard Lowery, a tenured associate professor at the University of Texas at Austin ("The University" or "UT"), claims his First Amendment rights are being "chilled" despite not being sanctioned when he referred to UT President Jay Hartzell as a thief, grifter and liar; accused the organizers of a UT conference of knowingly inviting "F***ing communist" speakers who support murdering children; and called "people on the (UT) faculty council" "shameless and awful."

Nor was Lowery disciplined when he made other incendiary remarks. For example, Lowery referred to "finance undergraduates" as either "the smart ones" who reject certain ideologies or "the less smart ones" who "are completely brainwashed."

His only evidence to support this "chilling effect" is (i) an email from Titman on August 22, 2022, based on a complaint by one of the conference organizers who Lowery accused of inviting speakers who advocated murdering kids. Titman, head of the UT McCombs School of Business Department of Finance, forwarded the complaint and, in perhaps what was an understatement, noted to Lowery that "you don't seem to be making friends;" (ii) an alleged August 2022 conversation with Mills and Burris who supposedly said his "criticism" of school officials was "crossing the line;" and (iii) an alleged but disputed telephone conversation with Carlos Carvalho ("Carvalho"), who testified that "in late July or early August of 2022" he spoke with Titman who said "we need to do something about Richard."

But Carvalho (who is Lowery's superior) claims he resisted the pressure to do something about Richard. Indeed, Carvalho testifies that "I have made clear to Prof. Lowery that I support his right to express himself, and that I am not requesting that he change his speech in any way for any reason." Neither has the University.

There is no plausible threat to Plaintiff's employment (which is secured by tenure) and without that there is no chilling effect and therefore Plaintiff has not suffered injury sufficient to confer

1

standing and, in any event, his claims are not ripe. The remaining preliminary injunction factors are not met either. Plaintiff has not suffered any injury, and he is unlikely to suffer an irreparable injury if the case moves forward under the status quo. The equities do not favor granting the injunction. Plaintiff's lack of an injury, put this factor solidly in favor of denial of the requested injunction. Likewise, the public interest does not favor an injunction.

For all of these reasons, the Court should deny Plaintiff's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.   Lowery is a tenured professor at the McCombs Business School whom Burris reappointed as Associate Director of the Salem Center for Policy in September 2022.

Lowery is an Associate Professor in the Finance Department at McCombs. Lowery began as an Assistant Professor in 2009 and got promoted to Associate Professor with tenure, effective September 1, 2017. Exh. 4. Lowery often airs his conservative views in public, including criticisms of UT Austin and other universities, which he perceives as promotors of concepts that he disfavors.

Lowery has served as the associate director of the Salem Center for Policy since September 20, 2021. Notably, Burris renewed his appointment on September 19, 2022. Exh. 2, ¶¶ 6, 12. The Salem Center is a policy research center located within McCombs that was launched in 2020 and is "dedicated to helping students and business leaders better understand the costs, benefits and consequences of policy decisions." About Us, Salem Center (last visited Mar. 13, 2023.), https://salemcenter.org/about/. Carlos Carvalho is the Director of the Salem Center. One of its core missions is collaborating with the Civitas Institute, another recently created policy research institute at the University.

## II.   Lowery suffered no consequences when he made disruptive public comments to undermine University operations.

Lowery's Twitter posts and public comments have been disruptive and have undermined University officials' ability to carry out core University functions, including donor fundraising. For

2

example, he has openly accused the University President of being a "grifter" and a thief and publicly discouraged potential donors from giving money. Exh. 13a, pgs. 22–23; Exh. 6. He has spoken out against fundraising efforts by telling the public, "[i]f you like the work I am doing, please support it by NOT GIVING MONEY TO UNIVERSITIES." Online outlets in the past have reported such statements. Exh. 6. He has also called other speakers invited to campus "f***ing communists" who support murdering children. Complaint ¶ 34. And he has clarified that he will not collaborate with the Civitas Institute—a core mission of the Salem Center**.**

Defendants have not disciplined Lowery for exercising his free speech rights, and there is no evidence that they plan to do so in the future. Exh. 1, ¶¶ 5, 7–10; Exh. 2, ¶¶ 4–9, 11, 13–14; Exh. 3, ¶¶ 4, 6–7, 10–11; Exh 15, Handbook of Operating Procedures 2-2310. His tenured position as an associate professor is secure. Exh. 1, ¶ 5; Exh. 16. He received a raise of approximately $7,500 effective September 1, 2022. Exh. 2, ¶ 12; Exh. 20. Later that month, Burris reappointed him to the Salem Center without regard for his comments. Exh. 2, ¶ 12–13.

## III.   Lowery misrepresents Defendants' speech and actions.

Lowery complains of three alleged incidents that, in his view, threatened him because of his speech. But testimony shows that Lowery has mischaracterized and misrepresented those incidents and that no First Amendment violation has occurred or is imminent.

First, Lowery alleges that Mills and Burris conveyed threats to him through Carvalho in three meetings in August and October 2022, where Lowery was not present. Complaint ¶¶ 38–44. Defendants have testified they didn't make any threats, and Carvalho's selective description of the meetings is misleading. Mills and Burris met with Carvalho at Carvalho's request and discussed several topics. Exh. 1, ¶ 7; Exh. 2, ¶ 7. Although Mills and Burris expressed concerns about Lowery's speech, it was not about his viewpoints but rather that Lowery made factually incorrect statements and disparaged his colleagues. Exh. 2, ¶ 8. At no point did Mills or Burris urge Carvalho to "do something"

about Lowery, discipline him, or punish him. Nor did they threaten Carvalho in any way. Exh. 1, ¶¶ 8–9; Exh. 2, ¶¶ 8–11.

Second, Lowery alleges that Titman threatened him in an August 2022 email encouraging him to design a class for an upcoming semester that "is likely to be popular." Complaint ¶¶ 52–54. But this comment was not a threat; it was part of a series of communications between the two parties in which Lowery acknowledged difficulty designing classes that attracted McCombs students. Exh. 3, ¶¶ 7–8. The entire email string between Titman and Lowery—which Lowery omitted—further dispels any notion that Lowery felt threatened by Titman. When Titman explained that he was not threatening Lowery, Lowery clarified that he felt threatened by *another person's* criticisms of his statements—which undermines his litigation position that he felt threatened by *Titman's* email. Exh, 3b.

Third, Lowery complains that a non-Defendant McCombs employee asked the UT Police Department for event security following some of Lowery's tweets, which Lowery describes as a demand for "surveillance" of his speech. Complaint ¶¶ 56–59. But Lowery does not even allege that any Defendant was involved or that surveillance occurred. And to be clear, none did.

## ARGUMENT AND AUTHORITIES

A preliminary injunction is "an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). It may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Lowery fails at every stage.

First, he has no substantial likelihood of success. His claims are marred with jurisdictional defects (lack of standing and ripeness) and are meritless. Lowery has not suffered an adverse employment action; Defendants have not made any threat against Lowery, let alone a threat that would

4

chill a person of ordinary firmness; and the injunction Lowery seeks would constitute a prior restraint on Defendants' speech. Second, no irreparable injury would occur if the Court denied the injunction. There is no credible threat that Defendants will take adverse employment actions against Lowery in the future, much less imminently; Lowery is a tenured professor with six months remaining on his one-year appointment to the Salem Center. Finally, neither the equities nor the public interest favor a preliminary injunction.

## I.     Lowery is Unlikely to Succeed on the Merits.

Lowery filed suit under 42 U.S.C. § 1983, claiming that Defendants violated his First Amendment rights by retaliating against him for engaging in protected speech and threatening to retaliate against him for his speech. Complaint ¶¶ 84, 94. Section 1983 claims for speech-related employment retaliation require the plaintiff-employee to demonstrate that: (1) he suffered an adverse employment action; (2) he spoke as a citizen rather than as an employee and spoke on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the protected speech precipitated the adverse employment action. *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007).

"If a court determines that an employee is not speaking in his/her role as an employee, but rather as a citizen on a matter of public concern, a court proceeds to the *Pickering* balancing test and determines whether the interest of the government employer 'in promoting the efficiency of the public services it performs through its employees' outweighs the employee's interests, as a citizen, 'in commenting upon matters of public concern.'" *Nixon*, 511 F.3d at 498 (quoting *Pickering v. Board of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563 568, (1968)). "Pertinent considerations in this balancing test are 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are

necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

Lowery is unlikely to succeed because he cannot satisfy the above requirements. Moreover, his claim suffers from two fatal jurisdictional defects. His claim is unripe, and his self-inflicted "injury"—allegedly choosing to moderate his Twitter usage and similar activities—does not create standing because Defendants have neither retaliated against him for his speech nor threatened to do so.

### A.     Lowery's claims suffer from two fatal jurisdictional defects.

Article III standing requires plaintiffs to demonstrate (1) an injury, (2) a sufficient causal connection between the injury and the conduct complained of (*i.e.*, traceability), and (3) a likelihood that a favorable decision will redress the injury. *E.g.*, *Abraugh v. Altimus*, 26 F.4th 298, 302-03 (5th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). A lack of standing deprives the Court of subject-matter jurisdiction. *Abraugh*, 26 F.4th at 302-03.

Ripeness "is a component of subject-matter jurisdiction" that requires plaintiffs to bring justiciable claims. "If the purported injury is 'contingent on future events that may not occur as anticipated, or indeed may not occur at all' [then] the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

### 1.     Lowery's claim premised on his alleged fear that he won't be reappointed or may suffer future harm is unripe.

Lowery claims he fears Defendants will punish him by removing him from the Salem Center, thereby reducing his research opportunities and pay. Complaint ¶¶ 60–62, 64–66, 79. These claims are not ripe. As Lowery admits, Burris reappointed him as Associate Director of the Salem Center in September 2022—shortly after the meetings in August 2022 in which Lowery alleges that Defendants

threatened to remove him from that position. His term does not expire for another six months. Lowery cannot seek a preliminary injunction based on speculation of a possible event many months away. Speculative injuries "contingent on future events that may not occur as anticipated, or indeed may not occur at all," are "not yet justiciable." *Lopez*, 617 F.3d at 341.

### 2.     Lowery cannot create standing by voluntarily reducing his speech due to an unreasonable fear of future harm.

Generally, "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). One exception is that "government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury." *Id.* at 391. That exception is narrow, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Rather, self-censorship must be the product of objectively reasonable fear and not be "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

Moreover, when a plaintiff's allegation of harm from self-chilling relies upon a "chain of contingencies," then each link in the chain must be "certainly impending" to confer standing. *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). Even a "reasonable certainty" of future harm is insufficient. *Id.* at 242.

Lowery claims that he "felt compelled to self-censor his speech and advocacy" because he interpreted statements purportedly made by Defendants as "threats to reduce [his] pay, and strip him of his Salem Center affiliation." Plaintiff's Motion for Preliminary Injunction [Docket No. 8] (the "PI Motion") 13. Specifically, Lowery alleges that, in August 2022, "Burris [told] Carvalho, 'You have the power to have him not be attached to the center,' a reference to the fact that Burris and Carvalho

must both annually review Lowery's contract with the Salem Center." Complaint ¶40. He further alleges that, in October 2022, "[a]lthough he had just renewed Lowery's annual appointment, Burris told Carvalho that he might not approve Lowery's appointment to the center in the future because of his speech." Complaint ¶44.

As discussed below, Burris did not make either of those statements. But even taking Lowery's factual allegations as true, there would still be a chain of contingencies separating the purported statements from Lowery's feared harm of non-reappointment. First, Lowery would have to make even more incendiary statements than the ones he relies upon since they did not result in discipline. Second, Defendants would have to learn of those statements. Third, Lowery would have to seek reappointment for another term. Finally, Burris would have to decline to reappoint Lowery based on his purportedly disfavored speech. Lowery cannot show that each link in this chain is "certainly impending," especially when the reappointment decision is six months away. Lowery can thus point to no "certainly impending" threat of harm on which to base standing for his claims.

**B.**   **Lowery has not suffered an adverse employment action due to his protected speech, nor is he in imminent danger of suffering one.**

**1.**   **Defendants' alleged statements are not adverse employment actions under clear Fifth Circuit precedent.**

The first factor in the First Amendment retaliation analysis is whether the plaintiff has suffered an adverse employment action. *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006). In this context, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (quoting *Pierce v. TDCJ*, 37 F.3d 1146, 1149 (5th Cir. 1994)). The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Benningfield*, 157 F.3d at 376). Specifically, the Fifth Circuit has held that "false accusations, verbal reprimands, and

Case 1:23-cv-00129-DAE   Document 14   Filed 03/14/23   Page 16 of 26


investigations [are] not actionable adverse employment actions." *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999). Likewise, "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures do not rise to the level of" an adverse employment action. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). And "mere accusations or criticism," including "oral threats or abusive remarks," do not qualify as adverse employment actions. *Breaux*, 205 F.3d at 157-58 (citing *Harrington*, 118 F.3d at 366). This includes "[v]erbal threats of termination." *Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at * 16 (W.D. Tex. Oct. 16, 2009) (citing *Breaux*, 205 F.3d at 159-60), Lowery has not suffered a discharge, demotion, or any other action that the Fifth Circuit recognizes as an adverse employment action that could give rise to a retaliation claim. Instead, Lowery remains a tenured professor and Associate Director of the Salem Center, notwithstanding his numerous criticisms of University officials and policies.

### 2. Lowery's claim would fail even under *Burlington Northern*, which the Fifth Circuit has not adopted.

Recognizing that his claim fails under existing Fifth Circuit First Amendment precedent, Lowery suggests the Court should adopt the standard applicable in the Title VII retaliation context: "a 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" PI Mot. 16 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). Lowery admits that the Fifth Circuit has "not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases." *Id.* at 17 (quoting *Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013)); *see Johnson v. Halstead*, 916 F.3d 410, 422 n.5 (5th Cir. 2019) (noting that the Fifth Circuit has not adopted the *Burlington* standard in the First Amendment context). This Court cannot adopt a legal standard that conflicts with decades of binding precedent.

Moreover, even under *Burlington*, Lowery would still lose because Defendants' statements would not have dissuaded any reasonable faculty member in his position from engaging in protected speech.

Lowery cites three alleged threats. First, he claims Mills and Burris indirectly conveyed threats to him through Carvalho in a series of meetings with Carvalho in August and October 2022. Complaint ¶¶38–44. Second, Lowery alleges that Titman threatened him in an August 22, 2022, email stating: "It is probably in your interest to come up with a class for the Spring that is likely to be popular." Complaint ¶¶52–54; PI Mot. App. A at ¶¶46–49. Third, Lowery alleges that on August 24, 2022, McCombs employee Madison Gove expressed concern to the UT Police Department ("UTPD") about tweets made by Lowery. Complaint ¶¶56–59.

Mills and Burris testify that the threatening statements that Lowery alleges they made to Carvalho are inaccurately described by Carvalho or were never made at all. Titman's statement to Lowery urging him to find a more popular class topic to teach was not a threat; instead, it was part of an ongoing conversation with Lowery in which Lowery acknowledged that his classes were not attracting enough students. And Lowery's Complaint that Gove asked UTPD to "surveil" Lowery's speech fails as a matter of law for several reasons. Gove is not a defendant, and Lowery does not allege that Defendants Mills, Burris, or Titman had any personal involvement in Gove's request; Lowery does not allege that UTPD actually surveilled his speech (and indeed it is refuted by the Declaration of Joseph Bishop, Exh. 18); and Lowery only learned about Gove's request through a public information request months later, so he cannot plausibly claim to have been deterred by a request that he was not aware of.

### a. Lillian Mills and Ethan Burris

To the extent Mills and Burris spoke to Carvalho about Lowery's speech, it had nothing to do with his political or academic views, which Defendants have repeatedly invited Lowery to express.

Exh. 1, ¶¶ 3–5, 8–10; Exh. 2, ¶¶ 4–6, 8–11, 13–14; Exh. 3, ¶¶ 4–10. Instead, Mills and Burris expressed concern about Lowery's public statements asserting that University President Jay Hartzell is a thief and a liar, and his urging people not to donate to the University. Exh. 2, ¶ 7. Public statements defaming leaders and sabotaging fundraising efforts impede University operations.

Academic leaders at public universities do not violate a faculty member's First Amendment rights simply by voicing concern about the faculty member's public efforts to undermine university operations. This is because university administrators have an obligation and a right to preserve the efficient operation of university functions. *E.g.*, *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering* 391 U.S. 568–73) (recognizing "a strong state interest" in avoiding "[i]nterference with work, personnel relationships, or the speaker's job performance [that] can detract from the public employer's function" and explaining that factors in the Court's analysis include "whether the statement impairs . . . harmony among co-workers . . . or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise").

UT Austin and UT System policies reflect the importance of fundraising. One policy recognizes the need to "increas[e] financial support . . . through the appropriate assistance of donors," while another references the need to "maximize philanthropic support" from external sources. *See* Exh. 8, Regents Rule 60101; Exh. 9, HOP 3-2031. Another policy recognizes that "[c]ontributions from individuals, foundations, corporations, and other entities are vitally important to the fulfillment of the institution's mission and to the provision of high-quality educational opportunities." Exh. 10, UTS 138. Any interference with the University's efforts to increase donor support negatively impacts its operations and the public service it provides to its students and the larger community.

Thus, Lowery has no protected right to make statements that intentionally seek to undermine university operations, including its fundraising efforts. And even assuming arguendo that he does, administrators also have First Amendment rights—including the right to let a faculty member know

11

that his abrasive attacks are alienating others. Lowery cannot invoke the First Amendment to take away that right.

### b.   Sheridan Titman

After Lowery posted several "tweets" harshly criticizing the Environment Sustainability and Governance ("ESG") movement and its supporters, Titman received a forwarded email from Meeta Kothare, director of the McCombs School's Global Sustainability Leadership Institute ("GSLI"), discussing the tweets. One of Lowery's tweets complained that the Salem Center was criticized "for not being balanced enough or whatever, even though we invite f***ing communists who support the murder of the Romanov children to debate." Kothare expressed concern that Lowery's hostile tweets could invite violence at GSLI events promoting ESG. On August 22, 2022, Titman forwarded an anonymized version of Kothare's email to Lowery, stating:

> The following message was forwarded to me. You don't seem to be making friends.
> It is probably in your interest to come up with a class for the Spring that is likely to be popular.
> By the way, who are you claiming supports murder of the Romanov children?
> In any event, the appropriate response is to jointly sponsor a panel discussion on ESG.

Lowery replied to Titman that he considered Titman's response a "threat." Exh. 3b. In his declaration, Lowery clarified that he "interpreted Titman's reference to needing to have a popular class to imply that I might face a loss of pay or other disciplinary consequences if I continued criticizing GSLI and its events," and that "if Titman didn't believe my class was sufficiently popular I might face some sort of adverse employment action." Lowery Decl. ¶49.

Lowery's view of Titman's comment about class topics was objectively unreasonable. As the broader context of their conversation reveals, Titman's comment had nothing to do with Lowery's tweets about ESG, GSLI, or anything related to them. Instead, Titman simply reminded Lowery of his self-acknowledged need to design a class that would likely interest students. Lowery cannot

plausibly claim that the First Amendment prohibits a department chair from urging faculty members to create courses students want to take.

Tellingly, Lowery's declaration regarding Titman's August 22 email omits to mention that, eight days earlier, Titman had emailed Lowery to say: "We need to touch base regarding your teaching in the Spring. I'm concerned that you are not getting enough students." Exh. 3, ¶ 7; Exh. 3a. Titman's August 22 remark encouraging Lowery to teach a more popular class was a reference to Lowery's admitted difficulty in attracting students to his classes—an administrative problem unrelated to Lowery's tweets about GSLI or ESG.

Lowery also omits his subsequent discussions with Titman, which further debunks his claim that he perceived Titman's statement as a threat. After Lowery told Titman, "I consider this a threat," Titman quickly responded: "I'm certainly not making a threat. Is the editor of Jacobin a speaker at the sustainability event? I'm not seeing the connection?" Exh. 3, ¶ 8; Exh. 3b. Lowery replied, "*She* is making a threat, claiming that my pointing out an event is somehow fomenting violence. This is a serious attack on my right to make public comments." Exh. 3b (emphasis added).

Lowery's use of the female pronoun "she" suggests that he perceived Kothare's complaint about his ESG/GSLI tweets as the "threat," not Titman's suggestion about a popular class.[1] Thus, the email exchanges between Lowery and Titman that occurred both before and after the August 22 message that Lowery included as Exhibit P confirm that Titman's comment about Lowery's acknowledged need to choose class topics of greater interest to students was unrelated to Lowery's ESG tweets.

Lowery and Titman continued discussing ideas for class topics for Lowery without mentioning Lowery's views on ESG or other matters. In one exchange, after Lowery proposed "a seminar-style

---

[1] This conflicts with Lowery's sworn statement in this case.

class on financial institutions" built around two books that Lowery described as "accessible academic treatments of financial institutions, coming from both a historical and economic perspective," Titman responded: "This looks good. Do you have a way to promote the class so that you will get students?" Exh. 3c. Lowery replied: "Yes. I have some ideas for that." Exh. 3c.

These email conversations reveal that Titman's August 22 statement encouraging Lowery to come up with a class that is "likely to be popular" was not a threat, had nothing to do with Lowery's tweets or his political views, and was instead part of an ongoing discussion about the topic of a class that Lowery would teach in spring 2023, *a conversation intended to help Lowery*. No reasonable person in Lowery's position could interpret Titman's August 22 email as a threat related to Lowery's speech activities.

### c.   Madison Gove

The third purported "threat" Lowery alleges is an email from GLSI employee Madison Gove to UTPD Officer Joseph Bishop. Gove expressed concerns that Lowery's tweets about ESG could create safety concerns at an upcoming GLSI-hosted ESG event. Complaint ¶¶56–59; PI Mot. Ex. Q; Exh. 18; Exh. 18a.

A section 1983 plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019). But Gove isn't a defendant, and Lowery doesn't allege that Mills, Burris, or Titman had any personal involvement in Gove's communications with Bishop. So Lowery cannot count Gove's email as a threat from Defendants.

Lowery can't rely on Gove's email for other reasons. Even taking Lowery's claim about Gove at face value, he doesn't allege that UTPD surveilled his speech or took any other action in response to the request. And Officer Bishop's declaration confirms that he did not "surveil" Lowery's speech. Cite Bishop Decl.

14

Finally, Lowery acknowledges that he learned about Gove's email to Bishop when he obtained it through a public information request in October 2022—nearly two months after Lowery says he stopped publicly "tweeting" due to feeling threatened. Complaint ¶¶54–55. Lowery could not have reasonably felt threatened by a request he didn't know about until two months later. *See, e.g., Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 589 (S.D. Tex. 2015) ("[A]n action that the employee does not know about cannot dissuade that employee from making or supporting a charge of discrimination.").

**C.    The injunction Lowery seeks would be an unconstitutional prior restraint on Defendants' speech.**

Finally, Lowery is unlikely to succeed on the merits because the injunction he seeks is a prior restraint on the speech of others that is presumptively unconstitutional. He requests an injunction prohibiting Defendants from engaging in speech that the Court has not yet determined to be retaliatory or otherwise unlawful—including, for example, statements describing Lowery's speech (of whatever kind) as "uncivil." Complaint Prayer for Relief ¶ A. The First Amendment does not empower Lowery to obtain a court order threatening Defendants with contempt for engaging in speech that Lowery disfavors.

"Any prior restraint on expression comes . . . with a 'heavy presumption' against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (quoting *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175, 181 (1968)). "Court orders aimed at preventing or forbidding speech 'are classic examples of prior restraints.'" *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 493 (5th Cir. 2013) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973).

Neither Lowery's Complaint nor his PI motion specifies the wording of the injunction he seeks. But his Complaint clarifies that he seeks to suppress several types of Defendants' speech protected by the First Amendment. Lowery requests "[o]rders preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction" from, among other things, "threatening Lowery for protected speech"; "labeling his criticism as violent or uncivil"; and "asking any police agency to surveil Lowery's speech." Complaint Prayer for Relief ¶ A. Any such injunction would be chillingly broad—especially if issued before the Court has determined whether any of the statements Lowery complains about were unlawful. *Cf. Pittsburgh Press Co.*, 413 U.S. at 390 (upholding order prohibiting a newspaper from publishing male- and female-specific job advertisements where "the order will not have gone into effect before our final determination that the actions of Pittsburgh Press were unprotected").

## II.     Lowery Will Not Suffer Irreparable Injury Without a Preliminary Injunction.

A plaintiff seeking a preliminary injunction must show "an imminent threat of irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016). Lowery's PI motion devotes only three sentences to arguing irreparable harm, perfunctorily asserting that he "has been self-censoring since August 2022" in response to perceived threats and that a minimal loss of First Amendment freedoms constitutes irreparable injury. PI Mot. 19. But a party cannot manufacture a legal injury by choosing to self-censor in response to a perceived threat of speculative future harm. *See supra* Part I.A.2. "[I]nvocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Google*, 822 F.3d at 228.

Moreover, Lowery's claim that he is self-censoring rings hollow. In the weeks following the conduct he complains about, Lowery publicly appeared on two separate academic panels to discuss the issues he now says he cannot talk about. The videos and transcripts of those panels are attached

to this Response as exhibits 11, 11a, 13, and 13a. Coverage of the most recent panel was widespread, and Lowery features prominently in at least one story about the November panel, where he is quoted on his plan to give universities the "tobacco company treatment" so that "people turn[]" against universities the way they did tobacco companies. Exh. 12. Consistent with that strategy, and as discussed in that panel, Lowery has been in active litigation against another public university, Texas A&M, since September 10, 2022. Exh. 14.

Defendants have not taken any adverse employment action against Lowery, nor is there any imminent threat that they will do so. Lowery remains a tenured associate professor, and his tenure is protected under university policies. Exh. 15; Exh. 16. Burris reappointed Lowery to his position at the Salem Center less than six months ago, and there are still six months remaining in Lowery's one-year appointment. So even if Lowery's factual allegations about Burris were true, his fear that Burris will decline to reappoint him six months from now is too remote and speculative to warrant the extraordinary remedy of a preliminary injunction. Moreover, an injury involving money is not irreparable. *See, e.g.*, *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990). So the possibility that Lowery might be removed from a paid position is not an irreparable injury.

## III.   The Equities and Public Interest Do Not Favor an Injunction.

As demonstrated above, Lowery is not likely to succeed on the merits of his claims, which have jurisdictional defects that should preclude the Court from entering an injunction in any event. Accordingly, Lowery is wrong that denying a preliminary injunction would harm him. On the other hand, his requested injunction would be an unconstitutional prior restraint on speech that will interfere with Defendants' abilities to maintain the efficient operation of the University and McCombs.

The public has an interest in the efficient operation of its universities. And the public has an interest in courts refusing to enter orders that operate as prior restraints on protected speech. These

17

interests, combined with the lack of infringement of Lowery's First Amendment rights, strongly favor denying the requested preliminary injunction.[2]

**CONCLUSION**

The Court should deny Lowery's Motion for Preliminary Injunction.

Respectfully submitted,

JACKSON WALKER LLP

By:  */s/ Charles L. Babcock*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
100 Congress Ave., Suite 1100
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

---

[2] Proper application of sovereign immunity also serves the public interest, and as demonstrated in Defendants' Motion to Dismiss, Lowery's retaliation claim is barred by sovereign immunity. *See* Motion to Dismiss Part I.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

*/s/ Charles L. Babcock*

Charles L. Babcock