# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | Case No. 1:23-CV-00129-LY |
| | § | |
| LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin, | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. II

TABLE OF EXHIBITS ....................................................................................................... IV

INTRODUCTION ................................................................................................................ 1

BRIEF STATEMENT OF THE ISSUES BEFORE THE COURT ................................................... 3

BACKGROUND .................................................................................................................. 4

APPLICABLE STANDARDS OF REVIEW .............................................................................. 6

ARGUMENT AND AUTHORITIES ........................................................................................ 7

    I.    **Ripeness and Standing Defects Present Jurisdictional Bars to Lowery's Claims.** ................................................................................................. 7

        A.    **Lowery's claim that he fears speculative injuries in the future is not ripe.** ................................................................................................. 7

        B.    **Lowery cannot create standing by voluntarily reducing his speech based on an unreasonable fear of future harm.** ................................. 8

        C.    **Sovereign immunity bars Lowery's retaliation claim because he seeks retrospective relief to address threats from the past.** ............................. 9

    II.    **Lowery Fails To State a Claim Upon Which Relief Can Be Granted.** ............. 10

        A.    **The retaliation claim fails because Lowery has not suffered an adverse employment action.** ............................................................................ 10

        B.    **Lowery also fails to state a chilled-speech claim.** ................................. 12

CONCLUSION ................................................................................................................. 13

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraugh v. Altimus*,
  26 F.4th 298 (5th Cir. 2022) .................................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 6, 7

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ............................................................................................................... 8

*Barrera-Montenegro v. U.S. & Drug Enf't Admin.*,
  74 F.3d 657 (5th Cir. 1996) .................................................................................................... 6

*Benningfield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ................................................................................................ 10

*Bevill v. Fletcher*,
  26 F.4th 270 (5th Cir. 2022) ................................................................................................. 10

*Breaux v. City of Garland*,
  205 F.3d 150 (5th Cir. 2000) .......................................................................................... 10, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................... 8

*Colson v. Grohman*,
  174 F.3d 498 (5th Cir. 1999) ................................................................................................ 11

*Glass v. Paxton*,
  900 F.3d 233 (5th Cir. 2018) .................................................................................................. 8

*Harrington v. Harris*,
  118 F.3d 359 (5th Cir. 1997) ................................................................................................ 11

*Johnson v. Halstead*,
  916 F.3d 410 (5th Cir. 2019) ................................................................................................ 11

*Keenan v. Tejeda*,
  290 F.3d 252 (5th Cir. 2002) ................................................................................................ 12

*Kincheloe v. Caudle*,
  No. A-09-CA-010 LY, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009),
  *recommendation adopted* 2009 WL 10699745 (W.D. Tex. Dec. 7, 2009) ............................ 11

*Laird v. Tatum*,
    408 U.S. 1 (1972) ..................................................................................................8

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ................................................................................7

*Modica v. Taylor*,
    465 F.3d 174 (5th Cir. 2006) ..............................................................................10

*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) ................................................................................7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ..............................................................................................8

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) ................................................................................8

## Other Authorities

Federal Rule of Civil Procedure 12(b)(1) .............................................................6, 10

Federal Rule of Civil Procedure 12(b)(6) ..................................................3, 6, 10, 12

https://salemcenter.org/about/ ...................................................................................4

## TABLE OF EXHIBITS[1]

| Exhibit Number | Description |
|---|---|
| 1 | Lillian Mills Declaration |
| 2 | Ethan Burris Declaration |
| 3 | Sheridan Titman Declaration |
| 3a | August 14, 2022 Email Correspondence |
| 3b | August 22, 2022 Email Correspondence |
| 3c | September 24, 2022 Email Correspondence |
| 4 | Change in Rank Form |
| 6 | Texas Scorecard article, August 11, 2022 |
| 7 | Regents Rule 31004 |
| 11 | November 5, 2022 Academic Freedom Panel |
| 11a | November 5, 2022 Academic Freedom Panel – Transcript |
| 13 | October 21, 2022 Policy Ideas to Fix America's Universities |
| 13a | October 21, 2022 Policy Ideas to Fix America's Universities - Transcript |
| 14 | Texas A&M Original Complaint |
| 15 | HOP 2-2310 |
| 16 | Regents Rule 31008 |
| 19 | Gabriela Maria Barake Declaration |
| 20 | Richard Lowery Pay Change History |
| 21 | Custodian of Records Declaration |

---

[1] The exhibits cited in this Motion to Dismiss are a subset of, and bear the same exhibit numbers as, the exhibits filed in support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction, filed simultaneously with this motion.

**INTRODUCTION**

The University of Texas at Austin is a place where top-tier academics debate ideas daily in the pursuit of truth. As such, it is not surprising, or even unexpected, that part of that process includes ideas and comments that are controversial and even critical. But this case is not about a professor's pursuit of truth.

This is a case about a professor who withers at the idea of others criticizing or disagreeing with him. So much so, that after making a practice of pushing out public statements—best described as trolling his employer and his faculty colleagues—he has now sued over hypothetical repercussions that he imagines might take place at some future date because he has expressed his views. Contrary to Plaintiff Professor Richard's Lowery's imaginings, the University has a long history of sitting comfortably among a multitude of viewpoints—even when they generate criticism directed at the University and its leadership.

Instead of accepting that some people disagree with him or engaging them in productive academic debate, Lowery brings this suit.[2] The relief he seeks is varied and includes enjoining a decrease in pay and ending his affiliation with Salem Center—neither of which have been threatened. While his Complaint is heavy with hyperbole and platitudes about free speech, it lacks facts to establish standing. It also lacks any viable claims for relief. Defendants McCombs School of Business Dean Lilian Mills, Associate Dean Ethan Burris, and Finance Department Chair Sheridan Titman now move to dismiss this case.

As a tenured faculty member, Lowery is free to teach, research, and write about finance, his area of expertise, without interference. He also believes that saying inflammatory things on social media is a part of his job. He has claimed that "[University President] Hartzell's job was lying to [state

---

[2] This is the second lawsuit Lowery has filed in the last approximately six months. Lowery also has another active federal lawsuit against Texas A&M University. Exh. 14.

1

officials]," called guest speakers "f***ing communists" who support child murder, and referred to his fellow faculty members as "shameless and awful" people, *see* Complaint ¶¶ 11, 12, 24, 33, 34.

Defendants did not terminate, demote, or even discipline Lowery for making these public statements. Instead, Lowery has continued working as a tenured associate professor with an annual salary of $257,702, including a raise of $7,506 that took effect September 1, 2022. Exh. 20. Later that month, Burris reappointed Lowery as the Associate Director of the Salem Center, a role with a $20,000 stipend. Titman invited Lowery to engage in an academic debate with his opponents. And the McCombs School of Business sponsored an event where Lowery gave a speech denouncing the University.

Unable to point to an adverse employment action, Lowery tries to make benign acts seem nefarious. He fixates on an email exchange with Titman, three management conversations that he was not involved in, and an email from a non-defendant UT employee asking UT police to provide security for an event that he did not attend. Lowery—an outspoken, tenured professor—claims that these mundane acts terrified him so much that he stopped his public speech altogether. Lowery launches two First Amendment claims from that questionable premise: (1) a self-chilling claim and (2) a retaliation claim. They both fail.

To begin, his claim that someone might harm him in the future (such as by removal from the Salem Center or by a reduction in pay or research opportunities) because of his hypothetical future speech, *e.g.,* Complaint ¶¶ 60–62, 64–66, 79, is speculative and unripe.

Next, Lowery's allegation that he feels chilled by statements purportedly said to others does not establish standing. He instead must show that his decision to self-chill was the product of government action that would likely deter a person of ordinary firmness from exercising their First Amendment rights. Lowery cannot meet that standard, so he lacks standing.

Moreover, Lowery's retaliation claim is barred by sovereign as it seeks to vindicate a retrospective injury (alleged critism in the past) and he fails to alleges an ongoing violations of federal law (he has not suffered an ongoing harm such as demotion or pay reduction because of his speech).

Further, Lowery doesn't state a justiciable claim under Rule 12(b)(6). His retaliation claim fails because criticism, the most generous characterization of his allegations, isn't an adverse employment action under binding Fifth Circuit precedent. And Defendants' purported statements would not chill a person of ordinary firmness from speaking. For these reasons, the Court should dismiss this suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### BRIEF STATEMENT OF THE ISSUES BEFORE THE COURT

1. **Courts cannot decide unripe cases.** If a claim is contingent on future events that may not occur, it is not ripe for adjudication. Relying on contingent events, Lowery asserts that he *might* not be reappointed to the Salem Center in *September* because of his potential *future* speech. Should the Court dismiss the claim as being unripe?

2. **A plaintiff cannot create** standing by self-censoring his speech based on unreasonable fears of potential harm. Lowery is a tenured faculty member. Defendants have not terminated, demoted, or disciplined Lowery for his speech, nor have they threatened to do so. Does Lowery lack standing because he decided to chill his speech out of an unreasonable fear of Defendants?

3. Sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state. Claims brought against state officials in their official capacities are treated as claims against a state itself. To avoid sovereign immunity, a plaintiff must sue a state official to seek prospective relief to redress an ongoing violation of federal law. Here, Lowery was not terminated, demoted, or disciplined (meaning there is no ongoing harm to his job to enjoin). He instead is claiming that Defendants violated his rights by threatening him in the *past*. Has Lowery failed to avoid sovereign immunity by only seeking retrospective relief to address a past wrong?

4. An employee must allege an adverse employment action to claim retaliation under the First Amendment. Under Fifth Circuit precedent, demotions, refusals to hire, refusals to promote, and reprimands are adverse employment actions, but criticism, verbal threats, and abusive remarks are insufficient. Lowery alleges that Defendants criticized him and made implicit threats through a third party. Does his retaliation claim fail because he has not alleged an adverse employment action?

5. A chilled-speech claim requires a plaintiff to allege that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protected speech. Lowery has not received an adverse employment action, and his fear of

3

future harm relies on a speculative chain of events. Has Lowery failed to show that a person of ordinary firmness in his position would have stopped speaking publicly?

**BACKGROUND**

Lowery joined the faculty of the McCombs School of Business in 2009 as an Assistant Professor in the Finance Department. He received a promotion to Associate Professor with tenure in 2016. Exh. 4, Change in Rank. Tenure "denotes a status of continuing appointment," HOP 2-2010, and thus assures faculty members that they may research and teach on controversial subjects.

The Salem Center is a policy research center located within McCombs that was launched in 2020 and is "dedicated to helping students and business leaders better understand the costs, benefits and consequences of policy decisions." About Us, Salem Center (last visited Mar. 13, 2023), https://salemcenter.org/about/. Carlos Carvalho is the Director of the Salem Center, and Lowery has served as Associate Director since September 20, 2021. Lowery's role as Associate Director is a yearlong administrative appointment subject to renewal at the beginning of each academic year.

In recent years, Lowery has frequently and publicly voiced his disdain for UT Austin and other universities, which he perceives as promotors of concepts he disfavors. His public comments are far afield of his expertise and undermine core University functions, including donor fundraising. He has openly accused the current university president of being a "grifter" and a thief, and he has publicly discouraged potential donors from giving money to the University or McCombs. Exh. 13a at pgs. 22–23; Exh. 6, Texas Scorecard article, August 11, 2022. Specifically, he has spoken out against fundraising efforts by telling the public, "[i]f you like the work I am doing, please support it by NOT GIVING MONEY TO UNIVERSITIES." Online outlets in the past have reported such statements. Exh. 6, Texas Scorecard Article, August 11, 2022. And he has clarified that he will not collaborate with the Civitas Institute—a core mission of the Salem Center.

Defendants have not disciplined Lowery for exercising his First Amendment rights, and there is no evidence that they plan to do so in the future. Exh. 1, ¶¶ 5, 7–10; Exh. 2, ¶¶ 4–9, 11, 13–14; Exh.

4

3, ¶¶ 4, 6–7, 10–11; Exh 15, Handbook of Operating Procedures 2-2310. His tenured position in the McCombs School is secure. Exh. 1, ¶ 5; Exh. 16, Regents Rule 31008. He was reappointed to his job at the Salem Center in September 2022—shortly after making controversial comments that he now claims he felt threatened by Defendants for making. Exh. 2, ¶ 2. That same month, he received a raise to his annual salary of $257,702. Exh. 2, ¶ 12; Exh. 20. And in October and November, he gave public speeches denouncing the University at an event sponsored by the McCombs School. Exh. 11a, Academic Freedom Panel – Transcript; Exh. 13a Policy Ideas to Fix America's Universities – Transcript. All these events occurred *after* he allegedly perceived Defendants were threatening him for his controversial public statements described above.

Despite not being terminated, demoted, or disciplined, Lowery now complains of three incidents that he perceives as involving threats against him for his speech.

First, Lowery alleges that Mills and Burris conveyed threats to him through Carvalho in three meetings in August and October 2022, where Lowery was not present. Complaint ¶¶ 38–44. Mills and Burris didn't make these threats, and Carvalho's selective description of the meetings is misleading. Mills and Burris met with Carvalho at Carvalho's request and discussed several topics. Exh. 1, ¶ 7; Exh. 2, ¶ 7. Although Mills and Burris did express concerns about Lowery's conduct, their concern was not about the subject matter or the viewpoints; instead, it was that Lowery made factually incorrect statements, disparaged his colleagues, and interfered with the University's business functions. Exh. 2, ¶ 8. Moreover, at no point did Mills or Burris direct or urge Carvalho to "do something" about Lowery, discipline him, or punish him. Nor did they threaten Carvalho, implicitly or explicitly. Exh. 1, ¶¶ 8–9; Exh. 2, ¶¶ 8–11.

Second, Lowery alleges that Titman threatened him in an August 2022 email encouraging him to design a class for an upcoming semester that "is likely to be popular." Complaint ¶¶ 52–54. But this comment was no threat—it was part of a series of communications between the two in which

5

Lowery acknowledged difficulty designing classes that attracted McCombs students. Exh. 3, ¶¶ 7–8. The entire email exchange—parts of which Lowery selectively omitted in his filing—further dispels any notion that Lowery felt threatened by Titman. When Lowery expressed that he felt threatened and Titman responded that he was not threatening Lowery, Lowery responded by clarifying that he felt threatened by *another person's* criticisms of his statements—which undermines his litigation position that he felt threatened by *Titman's* email. Exh. 3b.

Third, Lowery complains that a non-Defendant McCombs employee asked an officer with the UT Police Department for event security following some of Lowery's tweets, which Lowery describes as a demand for "surveillance" of his speech. Complaint ¶¶ 56–59. But Lowery does not allege that any Defendant was involved or that UTPD engaged in surveillance.

Because of the criticisms outlined in his Complaint, Lowery claims he was so afraid for his *tenured* position and future appointment to the Salem Center that he had to censor his speech. But no reasonable professor would have reacted that way, and Lowery has not experienced an adverse employment action. Accordingly, the Court should dismiss the lawsuit.

## APPLICABLE STANDARDS OF REVIEW

Defendants first move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When deciding a motion under Rule 12(b)(1), a court may rely upon the Complaint alone; the Complaint supplemented by undisputed facts in the record; or the Complaint supplemented by undisputed facts in addition to the Court's resolution of disputed facts. *See Barrera-Montenegro v. U.S. & Drug Enf't Admin.*, 74 F.3d 657, 659 (5th Cir. 1996).

Defendants also move to dismiss for failure to state a claim under Rule 12(b)(6). This analysis hinges upon whether the plaintiff pled a "plausible" (as opposed to merely a "possible") claim for relief; the Court asks whether the plaintiff asserted "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

6

662, 678 (2009). And if "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**ARGUMENT AND AUTHORITIES**

Lowery claims that Defendants Mills, Burris, and Titman violated his First Amendment rights by retaliating against him for engaging in protected speech and threatening to retaliate against him for his speech in the future, thereby chilling his speech. Complaint ¶¶ 84, 94. But those claims are jurisdictionally barred for lack of ripeness and standing.

**I.      Ripeness and Standing Defects Present Jurisdictional Bars to Lowery's Claims.**

**A.      Lowery's claim that he fears speculative injuries in the future is not ripe.**

Ripeness "is a component of subject-matter jurisdiction" that requires plaintiffs to bring justiciable claims. "If the purported injury is 'contingent on future events that may not occur as anticipated, or indeed may not occur at all' [then] the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

Lowery claims he fears Defendants will punish him for his speech by removing him from his position at the Salem Center, which he says would reduce his research opportunities and pay. Complaint ¶¶ 60–62, 64–66, 79. This claim is not ripe. As Lowery admits, Burris reappointed him as Associate Director of the Salem Center in September 2022—shortly after the meetings in August 2022 in which Lowery alleges that Defendants threatened to remove him from that position. His term does not expire for another six months, and whether Lowery will be reappointed is presently unknown. Such a claim is not yet justiciable and thus falls outside the Court's subject-matter jurisdiction. *See, e.g.*, *Monk v. Huston*, 340 F.3d 279, 283 (5th Cir. 2003) (suit over landfill permit application was unripe where the "application may or may not be granted, and the plaintiffs may or may not be harmed").

**B. Lowery cannot create standing by voluntarily reducing his speech based on an unreasonable fear of future harm.**

Article III standing requires Lowery to demonstrate (1) an injury, (2) a sufficient causal connection between the injury and the conduct complained of (*i.e.*, traceability), and (3) a likelihood that a favorable decision will redress the injury. *E.g.*, *Abraugh v. Altimus*, 26 F.4th 298, 302-03 (5th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). A lack of standing deprives the Court of subject-matter jurisdiction. *Abraugh*, 26 F.4th at 302-03.

Generally, "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). One exception is that "government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury." *Id.* at 391. That exception is narrow, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Rather, self-censorship due to fear of future punishment requires that the fear be objectively reasonable and not "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

When a plaintiff's allegation of harm from self-chilling relies upon a "chain of contingencies," then each link in the chain must be "certainly impending" to confer standing. *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). Even a "reasonable certainty" of future harm is insufficient. *Id.* at 242.

Here, Lowery claims that he felt compelled to self-censor his speech because he interpreted statements purportedly made by Defendants to Carvalho as threats to reduce his pay and strip him of his Salem Center affiliation. Specifically, Lowery alleges that, in August 2022, "Burris [told] Carvalho, 'You have the power to have him not be attached to the center,' a reference to the fact that Burris and

8

Carvalho must both annually review Lowery's contract with the Salem Center." Complaint ¶ 40. He further alleges that, in October 2022, "[a]lthough he had just renewed Lowery's annual appointment, Burris told Carvalho that he might not approve Lowery's appointment to the center in the future because of his speech." Complaint ¶ 44.

Given the circumstances, Lowery's fear of non-reappointment is not objectively reasonable. Burris did not make either of the above-quoted statements. But even taking Lowery's factual allegations as true for standing purposes, no reasonable person would view Burris's purported statements, made to another person, as a bona fide threat of non-reappointment.

Further, the non-reappointment that Lowery fears is not "certainly impending because there would still be a chain of contingencies separating Burris's purported statements from Lowery's feared harm. For that harm to materialize, Lowery would have to continue making statements that Defendants purportedly disfavor; Defendants would have to learn of those statements; Lowery would have to choose to seek reappointment for another term; and Burris would have to decide not to reappoint Lowery because of Lowery's purportedly disfavored speech. Lowery cannot show that each link in this chain is "certainly impending,"—particularly when the reappointment decision is six months away. Lowery cannot point to a certainly impending threat of harm to shore up his standing.

### C. Sovereign immunity bars Lowery's retaliation claim because he seeks retrospective relief to address threats from the past.

Sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state. *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341 (5th Cir. 1996) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). Under the *Ex parte Young* exception to sovereign immunity, a party can sue state officials to seek prospective relief to redress an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 167–68 (1908); *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 518 (5th Cir. 2017). Lowery's retaliation claim fails to avoid sovereign immunity.

9

As opposed to a demotion, termination, or formal discipline that goes into an employee's file and thereby presents ongoing harms, Lowery claims he was threatened in the past. If those threats even occurred as he alleges, they stopped occurring in late 2022. There is nothing ongoing about those alleged past threats and this Court certainly cannot issue retrospective relief to undo them. Sovereign immunity therefore bars the retaliation claim.

Lowery was not terminated, demoted, or disciplined, so there is no ongoing harm to his job to enjoin. He instead is claiming that Defendants violated his rights by threatening him in the *past*. That is not a claim for which sovereign immunity can be circumvented.

## II.   Lowery Fails To State a Claim Upon Which Relief Can Be Granted.

To the extent the Court determines that any of the claims survive Rule 12(b)(1), the Court should dismiss them under Rule 12(b)(6).

### A.   The retaliation claim fails because Lowery has not suffered an adverse employment action.

To state a First Amendment retaliation claim, Lowery must establish that (1) he suffered an adverse employment action, (2) he engaged in the speech as a citizen rather than as an employee and spoke on a matter of public concern, (3) his interest in commenting on matters of public concern outweighs the government employer's interests in maintaining efficient operations and provision of public services, and (4) the protected speech motivated the employer's adverse action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006); *see also Bevill v. Fletcher*, 26 F.4th 270, 275-76 (5th Cir. 2022).

In this context, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (quoting *Pierce v. TDCJ*, 37 F.3d 1146, 1149 (5th Cir. 1994)). The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Benningfield*, 157 F.3d at 376). "The reason for not expanding the list of adverse

employment actions is to ensure that § 1983 does not enmesh federal courts in 'relatively trivial matters.'" *Id.* (quoting *Dorsett v. Bd. of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991)).

Specifically, the Fifth Circuit has held that "false accusations, verbal reprimands, and investigations [are] not actionable adverse employment actions." *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999). Likewise, "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures do not rise to the level of" an adverse employment action. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "[M]ere accusations or criticism," even including "oral threats or abusive remarks," do not qualify as adverse employment actions. *Breaux*, 205 F.3d at 157-58 (citing *Harrington*, 118 F.3d at 366). And as this Court found in a previous case, "[v]erbal threats of termination" are even insufficient. *Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at * 16 (W.D. Tex. Oct. 16, 2009) (citing *Breaux*, 205 F.3d at 159-60), *recommendation adopted*, 2009 WL 10699745 (W.D. Tex. Dec. 7, 2009).

Lowery has not suffered any action that the Fifth Circuit recognizes as an adverse employment action. As his evidence demonstrates, Lowery has sharply criticized officials and policies and remains a tenured professor and Associate Director of the Salem Center. This is dispositive of his claim.

Recognizing that his claim fails under existing Fifth Circuit First Amendment precedent, Lowery asks this Court to ignore binding precedent and apply the *Burlington Northern* standard applicable in the Title VII retaliation context. Lowery admits that the Fifth Circuit has never used the *Burlington Northern* standard in the First Amendment retaliation context. *See Johnson v. Halstead*, 916 F.3d 410, 422 n.5 (5th Cir. 2019). This Court cannot adopt a legal standard that conflicts with binding precedent.

Moreover, even under the *Burlington* standard Lowery urges, he still loses because the "threats" alleged wouldn't dissuade a reasonable faculty in his position from speaking. *See infra* Part II.B.

### B.  Lowery also fails to state a chilled-speech claim.

To establish a chilled-speech claim, Lowery must show that (1) he engaged in protected activity, (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) these adverse actions were substantially motivated against his exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). As shown below, a person of ordinary firmness would not be chilled from engaging in protected speech by Defendants' purported actions. So this claim fails under Rule 12(b)(6).

Lowery cites three occasions on which he was allegedly threatened. First, he claims Mills and Burris indirectly conveyed threats to him through Carvalho in a series of meetings with Carvalho in August and October 2022. Complaint ¶¶ 38–44. Second, Lowery alleges that Titman threatened him in an August 22, 2022, email stating: "It is probably in your interest to come up with a class for the Spring that is likely to be popular." Complaint ¶¶ 52–54. Third, Lowery alleges that on August 24, 2022, McCombs employee Madison Gove expressed concern to the UT Police Department about tweets made by Lowery. Complaint ¶¶ 56–59.

The meetings between Mills, Burris, and Carvalho included management discussions about the operation of the Salem Center. Lowery does not allege that he was present at those meetings or that Mills or Burris spoke threateningly to him. Lowery also does not allege that Defendants have taken any action against him that qualifies as an adverse employment action under Fifth Circuit precedent. And while Lowery claims that Burris threatened not to reappoint him as Associate Director of the Salem Center, he admits that Burris reappointed him in September 2022. A reasonable person in Lowery's position—a tenured professor recently reappointed to his position in the Salem Center— would not feel cowed into silence by the purported statements Lowery attributes to Mills and Burris.

Titman's email to Lowery urging him to find a more popular class topic to teach was not a threat related to Lowery's tweets about GSLI and ESG, as Lowery perceived. Nothing in the statement

12

refers to those subjects or Lowery's opinions about them (or anything else). A reasonable person would have taken Titman's note at face value: it is in a professor's interest to teach popular classes because such a professor is more likely to find career success than a professor that teaches courses that don't interest students.

Lowery's Complaint that Gove asked UTPD to "surveil" Lowery's speech fails as a matter of law for several reasons. Gove is not a Defendant. Lowery does not allege that Mills, Burris, or Titman was personally involved in Gove's request. Lowery does not allege that UTPD surveilled him. And he only learned about Gove's request through a public information request months later, so he cannot plausibly claim to have been deterred by a request he was unaware of.

The bottom line: None of this would dissuade a reasonable person from speaking about their political views.

## CONCLUSION

The Court should grant the motion and dismiss Plaintiff's Complaint.

        Respectfully submitted,

        JACKSON WALKER LLP

By: */s/ Charles L. Babcock*
    Charles L. Babcock
    Texas State Bar No. 01479500
    cbabcock@jw.com
    Joel R. Glover
    Texas State Bar No. 24087593
    jglover@jw.com
    Javier Gonzalez
    Texas State Bar No. 24119697
    jgonzalez@jw.com
    1401 McKinney Street, Suite 1900
    Houston, Texas 77010
    (713) 752-4200 – Phone
    (713) 752-4221 – Fax

    Matt Dow
    Texas State Bar No. 06066500
    mdow@jw.com
    Adam W. Aston
    Texas State Bar No. 24045423
    aaston@jw.com
    100 Congress Ave., Suite 1100
    (512) 236-2056 – Phone
    (512) 691-4456 – Fax

    ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 14, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

              */s/ Charles L. Babcock*
              Charles L. Babcock