UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br><br>     *Plaintiff*,<br><br>v.<br><br>LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin,<br><br>     *Defendants*. | Case No. 1:23-cv-129-LY |

PLAINTIFF'S OPPOSED MOTION FOR EXPEDITED DISCOVERY

Local Rule 7(G) Certification

Plaintiff's counsel conferred with defense counsel by email regarding the expedited discovery requested in this motion. Defense counsel claimed he could not respond further to the request for expedited discovery as his client was on spring break out of the country. Given the matter's urgency, Plaintiff's counsel indicated that he would file the motion to avoid further delay while the motion for preliminary injunction is pending.[1] Plaintiff's counsel consider this motion to be opposed.

Introduction

Plaintiff Richard Lowery respectfully requests expedited discovery in support of his motion for preliminary injunction. Doc. #8. The discovery sought will potentially assist the Court in resolving factual disputes about whether UT administrators threatened Lowery, and whether UT President Jay Hartzell asked that they do so. Lowery seeks the following expedited discovery:

1. Production of emails and ephemeral messages (texts) sent to or from Jay Hartzell, Lillian Mills, Ethan Burris, Sheridan Titman, Nancy Brazzil, or Meeta Kothare, concerning Lowery's speech, directly or indirectly, dated between June 1, 2022, and November 1, 2022, to be produced as soon as possible and in advance of early depositions; and

---

[1] Plaintiff's counsel also asked to schedule the Rule 26(f) discovery planning conference. To-date, that conference has not been scheduled or completed.

2. Leave to conduct targeted expedited discovery in the form of five depositions—of Hartzell, Mills, Burris, Titman, and Kothare—lasting no more than three hours each, to occur before May 1, 2023.

FACTUAL BACKGROUND

Plaintiff Lowery has been an outspoken critic of UT President Jay Hartzell and of the university's ideological direction. *See* Doc. #8-06–8-14. Plaintiff theorizes that, at Hartzell's direction, the defendant officials initiated a campaign to silence Lowery's public speech by threatening his career; in particular, by threatening his affiliation with the Salem Center, which is renewable annually and not subject to tenure protections. *See* Docs. #8 at 15-25; #8-05; #8-01 at 3; #8-02 at 14. Central issues in this case are whether Jay Hartzell asked subordinate officials to silence Lowery and whether they threatened Lowery to get him to stop criticizing Hartzell in public.

Defendants have mostly denied threatening Lowery in any way. *See* Doc. #14 at 8. "Defendants have not disciplined Lowery for exercising his free speech rights, and there is no evidence that they plan to do so in the future." *Id.* at 10. The Defendants have all submitted declarations which largely dispute the factual claims made by both Lowery and independent witness Carlos Carvalho. *See* Doc. #14-01–14-03. "Mills and Burris testify that the threatening statements that Lowery alleges they made to Carvalho are inaccurately described by Carvalho or were never made at all." Doc. #14 at 10.

Specifically, Defendant Mills claims that she has never "threatened" Lowery and believes his rendition of the events "create a false and misleading impression of the actions . . . taken by [UT]." Doc. #14-1 at 2-3. Mills confirms having spoken with Carvalho, but notes that her meeting "did not involve the subject matter or political ideas expressed by [Lowery]." *Id.* at 4. She claims she has never asked Carvalho to "work with" Lowery regarding his speech, nor has labeled Lowery "problematic" and in need of "discipline." *Id.* Mills neither confirms—nor denies—that she told Carvahlo that "I don't need to remind you that you serve at my pleasure."

Defendant Burris likewise asserts that Lowery's account of the facts creates a misleading impression and that neither he nor Mills have "threatened" or "pressured" Lowery to censor his speech. Doc. #14-2 at 2-3. He claims not to recall whether he said that Lowery's speech "crossed the line" or whether Mills said she "did not care whether Carvalho was the one who primarily raised money for the center." *Id.* at 3-4. Burris adds that, after his meeting with Carvalho, he clarified with Carvalho that what was "perceived as a threat was intended as constructive criticism." Doc. #14-2 at 4. He maintains that there was no "directive or mandate for Dr. Carvalho to discipline or censure Dr. Lowery," *id.*, leaving himself room to claim that he was only making suggestions. Burris does not address whether Dean Mills ever told Carvahlo that "I don't need to remind you that you serve at my pleasure," a statement that most reasonable people would interpret as a threat.

Titman fails to recall multiple conversations he had with Lowery. *See* Doc. #14-3 at 3. He does not recall the discussion he had with Carvalho in late July or August

4

2022, nor does he recall saying that Mills and Hartzell were upset with Lowery about his political advocacy. *Id.* Specifically, he does not recall whether he told Carvalho that both Mills and Hartzell were upset about Lowery's speech. *Id.*

None of the Defendants' declarations mention any conversations with Hartzell, nor do they mention whether Hartzell, or an intermediary acting on his behalf, ever asked them to silence Lowery for his public criticism of Hartzell or of the university's ideological direction. Nor do Defendants, in their declarations or elsewhere, address whether any UT officials asked Madison Gove to request that the police surveil Lowery's public speech, or discussed the issue with Dean Mills or others outside GSLI.

Further relevant facts are set forth in the argument section below.

ARGUMENT

This Court should allow for targeted early discovery in this matter because there is a factual dispute about two central issues in this case that are highly relevant to the motion for preliminary injunction: (1) whether Jay Hartzell was unhappy about Lowery's speech and asked the Defendants to silence Lowery; and (2) whether the Defendants, acting on that request or of their own volition, threatened not to re-new Lowery's affiliation with the Salem Center if his speech continued to embarrass and annoy President Hartzell. Targeted early production of documents and depositions of selected key players will help assist the Plaintiff in making his case and assist the Court in evaluating the likelihood of success on the merits.

Federal Rules of Civil Procedure 34(b) and 26(d) allow a party to seek expedited discovery, and the Fifth Circuit permits such discovery in certain circumstances. *Netchoice v. Paxton*, No. 1:21-cv-840-RP, 2021 U.S. Dist. LEXIS 253993, at *5 (W.D. Tex. Oct. 22, 2021) (citing *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501 (5th Cir. 1982)). Expedited discovery can occur even before the Rule 26(f) conference in order to determine the extent of the plaintiff's alleged injuries and thus the scope of preliminary injunctive relief. *Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3-08-cv-398-B, 2008 U.S. Dist. LEXIS 20036, at *3 (N.D. Tex. Mar. 13, 2008) (citation omitted).

Courts in this district generally use the "good cause standard" to determine whether a party is entitled to conduct expedited discovery. *See, e.g.*, *Netchoice*, 2021 U.S. Dist. LEXIS 253993, at *6; *Stockade Cos., LLC v. Kelly Rest Grp., LLC*, No. 1:17-cv-143-RP, 2017 U.S. Dist. LEXIS 94097, at *5 (W.D. Tex. June 19, 2017). The "good cause standard" considers (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose of the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Netchoice*, 2021 U.S. Dist. LEXIS 253993, at *6 (citing *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011)). "[G]ood cause typically exists where 'the need for expedited discovery outweighs the prejudice of the responding party.'" *Elargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La. 2016) (quoting *BKGTH Prods., LLC v. Doe*, No. 13-5310, 2013 U.S. Dist. LEXIS 140924, at *4 (E.D.

La. Sept. 30, 2013)). The burden of showing good cause is on the party requesting expedited discovery, and the subject matter related to the requests should be narrowly tailored in scope. *Netchoice*, 2021 U.S. Dist. LEXIS 253993, at *6 (citing *St. Louis Grp.*, 275 F.R.D. at 240).

Courts have found that the presence of information exclusively within the opposing parties' control weighs in favor of finding "good cause." *See, e.g.*, *Amos v. Taylor*, No. 4:20-cv-7-DMB-JMV, 2020 U.S. Dist. LEXIS 183502, at *29 (N.D. Miss. Aug. 26, 2020) and UT and its witnesses are exclusively in possession of the information that Lowery seeks in this motion.

"Expedited discovery is particularly appropriate . . . because of the expedited nature of the injunctive proceedings." *Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) (citations omitted). Courts have routinely granted expedited discovery motions "in cases involving challenges to constitutionality of government action." *Id.* (citations omitted). This Court should similarly do so here.

### A.   Early discovery could help confirm that President Hartzell asked for Lowery to be silenced

Credible evidence suggests that UT President Jay Hartzell wanted Lowery silenced. First, it is human nature for powerful people to get annoyed when they are publicly criticized by subordinates. Second, Carlos Carvalho has declared that Titman told him Hartzell and Mills were upset about Lowery's public speech. Doc. #8-02 at 3. Third, Lowery has also submitted a new declaration indicating that Titman also told him directly that Hartzell was unhappy about Lowery's speech and wanted something done. Lowery Dec. in Supp. at 2. Fourth, Defendants have so far

7

been completely silent about whether Hartzell ever talked to them about Lowery or his speech. And Hartzell's declaration is conspicuously absent.

Limited depositions of the key players will help determine whether such conversations took place and what was said about Lowery. If the President of UT expressed displeasure with Lowery's statements and asked that something be done about it, that would obviously confirm a theory of Lowery's case and be highly probative of his likelihood of success on the merits. If such a request was relayed by phone or in-person, then deposition testimony is the most efficient and effective way to establish such a fact.

Moreover, given that Hartzell is the former Dean of the McCombs School of Business, it is not surprising that Hartzell is known to have texted with Sheridan Titman (and possibly others) about UT business, and may have also possibly texted about Lowery and his speech. *See* Lowery Dec. in Support, at 2. Moreover, identifying, collecting, and producing emails and text communications from six custodians, on a finite topic, for a five-month period, should not be either time-consuming or burdensome for UT, especially with the assistance of highly resourced outside counsel.

If any records indicate that these key players discussed Lowery or his speech, that could be highly probative of his likelihood of success on the merits.

**B.     Depositions will help to determine the contours of what the Defendants actually said to Carvalho about Lowery**

Defendants mostly deny certain threatening comments were made, or in the least that they were taken out of context, including during crucial conversations

8

with Carlos Carvalho. Docs. #14 at 10-11, 14; #14-1 at 2-4; #14-2 at 2-3; #14-3 at 3. In addition, the Defendants' lack of details and inability to recall certain statements should be probed through deposition questioning. Fleshing out the record of what really happened will assist this Court in evaluating the credibility of key witnesses and ruling on Lowery's motion for preliminary injunction. It would also help to fill-in the gaps left by the incomplete documentary evidence and Defendants' declarations. The ability to ask follow-up questions is a powerful tool for discovering evidence and cutting through evasions and quibbling about terminology.

### C. Early discovery would help determine whether UT officials other than Madison Gove asked for Lowery's speech to be surveilled by police

Defendants have argued that Lowery has not linked Madison Gove's request that UT police surveil Lowery's speech to any of the named Defendants. Doc. #14 at 21. Yet, Gove clearly states that "*we* are more worried about the people he reaches than him." Doc. #8-19 (emphasis added). Copied on the email were the GSLI Director Kothare and several other UT administrators. Doc. #8 at 14; Doc. #8-19. Defendants note that Lowery has not alleged that they were involved in the surveillance request (Doc. #14 at 17), but Defendants do not actually allege themselves that they were not involved with it or were unaware of it. Moreover, we do not know whether GSLI Director Meeta Kothare asked Gove to contact UTPD and surveil Lowery or whether she had any conversations with Hartzell, Mills, Burris or Titman about Lowery and his speech or involving the police. Targeted

9

early discovery could help Lowery establish such a connection, with relatively minimal burden on UT.

## CONCLUSION

The Court should grant Lowery's motion for expedited discovery.

Respectfully submitted,

*s/Endel Kolde*
Endel Kolde
Stephanie M. Brown
State Bar No. 24126339
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
sbrown@ifs.org

Dated: March 16, 2023

*s/Michael E. Lovins*
Michael E. Lovins
State Bar No. 24032555
LOVINS | TROSCLAIR, PLLC
1301 S. Cap. Of Texas
Building A Suite 136
Austin, Texas 78746
Tel: 512.535.1649
Fax: 214.972.1047
michael@lovinslaw.com

*Attorneys for Richard Lowery*