**Exhibit 1**

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY, | |
| *Plaintiff*, | |
| v. | |
| LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin, | Case No. 1:23-cv-129-DAE |
| *Defendants*. | |

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................... 1

ARGUMENT ....................................................................................................... 2

   I.   THIS COURT HAS ARTICLE III JURISDICTION OVER AN ONGOING LEGAL
      CONTROVERSY ....................................................................................... 2

      A.   Lowery's claims are ripe because he is being harmed today.................... 2

      B.   Lowery has standing to challenge threats that were targeted to
          get him to self-censor speech on matters of public concern ..................... 3

      C.   Sovereign immunity does not bar a claim for prospective relief
          even if it is partly based on officials' past conduct ..................................... 8

   II.   LOWERY HAS STATED VIABLE CLAIMS OF CHILLED SPEECH AND
      RETALIATION ......................................................................................... 11

      A.   Lowery has stated a viable chilled-speech claim .................................... 11

      B.   Lowery has stated a viable retaliation claim ......................................... 12

      a.   *Breaux is no longer good law* ................................................................ 12

      b.   *Defendants have already removed part of Lowery's job duties by*
          *preventing him from commenting as a citizen-scholar on university*
          *affairs* .................................................................................................... 15

CONCLUSION ................................................................................................... 16

TABLE OF AUTHORITIES

**Cases**

*Alston v. Spiegel,*
 988 F.3d 564 (1st Cir. 2021) ................................................................... 13

*Benison v. Ross,*
 765 F.3d 649 (6th Cir. 2014) .................................................................. 13

*Breaux v. City of Garland,*
 205 F.3d 150 (5th Cir. 2000) ......................................................... passim

*Brister v. Faulkner,*
 214 F.3d 675 (5th Cir. 2000) .................................................................. 10

*Burlington N. & Santa Fe Ry. v. White,*
 548 U.S. 53 (2006) .................................................................................. 13

*Constantine v. Rectors & Visitors of George Mason Univ.,*
 411 F.3d 474 (4th Cir. 2005) .................................................................. 13

*Cooksey v. Futrell,*
 721 F.3d 226 (4th Cir. 2013) .................................................................... 5

*Coszalter v. City of Salem,*
 320 F.3d 968 (9th Cir. 2003) .................................................................. 14

*DePree v. Saunders,*
 588 F.3d 282 (5th Cir. 2009) .................................................................. 14

*Founding Church of Scientology, Inc. v. Dir., FBI,*
 459 F. Supp. 748 (D.D.C. 1978) ............................................................... 4

*Freedom from Religion Found., Inc. v. Abbott,*
 955 F.3d 417 (5th Cir. 2020) .................................................................... 8

*Gahagan v. United States Citizenship & Immigration Servs.,*
 911 F.3d 298 (5th Cir. 2018) .................................................................. 14

*Gibson v. Kilpatrick,*
 734 F.3d 395 (5th Cir. 2013) .................................................................. 15

iii

*Glass v. Paxton*,
   900 F.3d 233 (5th Cir. 2018) ................................................................. 8

*Hous. Cmty. Coll. Sys. v. Wilson*,
   142 S. Ct. 1253 (2022) ....................................................................... 12

*Iancu v. Brunetti*,
   139 S. Ct. 2294 (2019). ................................................................... 6, 7

*Idaho* v. *Coeur d' Alene Tribe of Idaho*,
   521 U.S. 261 (1997) .......................................................................... 9

*Jackson v. Wright*,
   No. 4:21-CV-00033, 2022 U.S. Dist. LEXIS 8684 (E.D. Tex. 2022)............ passim

*Johnson v. Halstead*,
   916 F.3d 410, 421 (5th Cir. 2019) ........................................................ 14

*Kessling v. Ohio State Univ.*,
   No. 2:20-cv-1719, 2022 U.S. Dist. LEXIS 211191 (S.D. Ohio Nov. 21,
   2022)........................................................................................... 16

*Levin v. Harleston*,
   966 F.2d 85 (2d Cir. 1992)............................................................... 5, 12

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ...................................................................... 2

*Matal v. Tam*,
   137 S. Ct. 1744 (2017) ...................................................................... 7

*Matrisciano v. Randle*,
   569 F.3d 723 (7th Cir. 2009) ............................................................. 13

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) ..................................................................... 12

*People for the Ethical Treatment of Animals, Inc. v. Banks*,
   No. 4:20-cv-02913, 2022 U.S. Dist. LEXIS 158855 (S.D. Tex. Sep. 2, 2022)........ 7

*Sassone v. Quartararo*,
   598 F. Supp. 2d 459 (S.D.N.Y. 2009) ................................................... 16

iv

*Socialist Workers Party v. Attorney General*,
    419 U.S. 1314 (1974) ................................................................. 4

*Specht v. City of New York*,
    15 F.4th 594 (2d Cir. 2021) ...................................................... 13

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) .......................................... 3, 11, 12

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ................................................................. 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................... 3

*Taylor v. Haugaard*,
    360 F. Supp. 3d 923 (D.S.D. 2019) .......................................... 16

*Trump v. New York*,
    141 S. Ct. 530 (2020) ................................................................. 2

*Verizon Md. Inc. v. PSC*,
    535 U.S. 635 (2002) ............................................................. 9, 10

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) ..................................................... 3

## Other Authorities

*12 Moore's Federal Practice - Civil § 57.22* (2023) ....................................... 2

*15 Moore's Federal Practice - Civil § 101.71* (2023) ..................................... 3

*15 Moore's Federal Practice - Civil § 101.79* (2023) ..................................... 2

Michael Dolich, *Alleging a First Amendment "Chilling Effect" to Create a
    Plaintiff's Standing: A Practical Approach,* 43 Drake L. Rev. 175 (1994)...... 4, 11

*Papasan v. Allain*,
    478 U.S. 265 (1986) ................................................................... 9

SPEECH FIRST, *University of Texas: Case Settlement Summary* (last visited
    March 27, 2023) https://speechfirst.org/wp-
    content/uploads/2018/12/Settlement-statement.pdf ............................................ 11

INTRODUCTION

The First Amendment protects the right of citizens and public employees to criticize government officials, including top administrators at the University of Texas. Plaintiff Richard Lowery has standing to bring his chilled-speech and retaliation claims because he has an ongoing controversy with his employer about his ability to publicly criticize UT's officials and ideological direction. Defendants' claims that they never threatened Lowery ring hollow because they are continuing to threaten him during this litigation by labeling his viewpoints "disruptive" and "disparaging," terms loaded with practical meaning for his employment status.

Lowery has stated plausible claims. To grant Defendants' motion would invite university officials to stifle whistleblowers and other internal critics, by threatening them with adverse employment actions. Richard Lowery should not have to choose between his right to speak and risking his livelihood or Salem Center affiliation.

STATEMENT OF FACTS

For purposes of Defendants' motion to dismiss, the salient facts are set forth in Lowery's Complaint. Doc. #1. Those need not be re-visited in detail here. To summarize, Lowery alleges that Defendants responded to his public criticism of UT's President Jay Hartzell and the ideological direction of UT by attempting to silence him. *Id.* at 4-20. Specifically, they threatened Lowery's affiliation with the Salem Center, which is renewable annually. *Id.* at 6, 12-16. Citing pushback against Lowery's views, Defendant Titman also conveyed that Lowery needed to have a

1

popular class in the spring. *Id.* at 16. In response, Lowery began self-censoring his criticisms of UT and stopped making public statements or posting his opinions on Twitter. *Id.* at 18-19.

Further relevant allegations are discussed in the brief below.

ARGUMENT

When considering a motion to dismiss, this Court should accept the allegations in Lowery's complaint as true. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019). Contrary to Defendants' assertions, (1) Lowery's claims are ripe; (2) self-censorship is a cognizable harm; (3) Lowery seeks appropriate prospective injunctive and declaratory relief; (4) Lowery has a viable chilled-speech claim; and (5) Lowery has a viable retaliation claim. This Court should deny Defendants' motion to dismiss.

I.  THIS COURT HAS ARTICLE III JURISDICTION OVER AN ONGOING LEGAL CONTROVERSY

A.  Lowery's claims are ripe because he is being harmed today

Ripeness doctrine precludes consideration of claims that are dependent on contingent future events. *Trump v. New York*, 141 S. Ct. 530, 535 (2020). But allegations of threatened injury that are of an immediate impact present a ripe and justiciable controversy. *12 Moore's Federal Practice - Civil § 57.22* (2023). And the doctrine of ripeness is applied more loosely in the First Amendment context because of the potential chilling effect of speech restrictions. *15 Moore's Federal Practice - Civil § 101.79* (2023).

2

As Defendants acknowledge, Lowery claims harm by virtue of their threat to remove his Salem Center affiliation due to his speech. Doc. #1 at 17-18 (¶¶ 60-63); Doc. #15 at 7. Lowery's claim is not contingent on the implementation of that threat in the future – rather, he is claiming that that the threat is causing him to self-censor today. As explicated further in I.B., *infra,* in considering the harm of self-censorship, a plaintiff should not be required to speak-first-and-be-punished before vindicating his rights.

> B. Lowery has standing to challenge threats that were targeted to get him to self-censor speech on matters of public concern

Defendants appear to recognize that "government action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury." Doc. #15 at 13 (quoting *Zimmerman v. City of Austin,* 881 F.3d 378, 389 (5th Cir. 2018)). This amounts to a concession that Lowery has standing.

Standing and ripeness are related, but different doctrines. *15 Moore's Federal Practice - Civil § 101.71* (2023). "Whereas ripeness addresses *when* the suit should be brought, standing addresses *who* may bring the suit." *Id.*

Both the Supreme Court and Fifth Circuit have recognized standing to bring pre-enforcement challenges to speech restrictions where there is a credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-61 (2014) (collecting Supreme Court cases); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31, 335 (5th Cir. 2020) ("This court has repeatedly held, in the pre-enforcement context, that chilling a plaintiff's speech is a constitutional harm adequate to satisfy the

injury-in-fact requirement") (cleaned up); *see also Jackson v. Wright,* No. 4:21-CV-00033, 2022 U.S. Dist. LEXIS 8684, at *16-17 (E.D. Tex. Jan. 18, 2022) (collecting Fifth Circuit cases). "It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Speech First,* 979 F.3d at 330-31.

To be sure, Lowery is not challenging a statute or written policy that explicitly restricts speech. Rather, he is challenging Defendants' actions seeking to prevent him from expressing his opinions in public. Doc. #1 at 18-19 (¶ 66). And officials' threats or informal policy can burden speech just as much as a formal written proscription.

A justiciable chilling effect may arise from any government conduct, and not just from actions that are regulatory, proscriptive, or compulsory in nature. For example, a proposed FBI surveillance of a student political convention presented a justiciable claim that it might dissuade potential attendees from participating. *Socialist Workers Party v. Attorney General*, 419 U.S. 1314, 1318-19 (1974) (Marshall, J., as circuit justice); *see also Founding Church of Scientology, Inc. v. Dir., FBI,* 459 F. Supp. 748, 760-61 (D.D.C. 1978) (religious group had alleged justiciable claim regarding government use of informants and infiltrators); Michael Dolich, *Alleging a First Amendment "Chilling Effect" to Create a Plaintiff's Standing: A Practical Approach,* 43 Drake L. Rev. 175, 176 (1994).

Accordingly, the Eastern District of Texas recently found that a state university professor stated a viable chilled-speech claim where administrators had

4

investigated and essentially froze his involvement with an academic journal he had created, owing to a controversial article. *Jackson*, 2022 U.S. Dist. LEXIS 8684, at *19-20. Specifically, the plaintiff had defended an influential music theorist from charges of racism, by suggesting that one such critic might be anti-Semitic, igniting a public backlash. *Id.* at *4-5.

The court recognized that there "was no unequivocal policy proscribing his intended conduct," but found that the administrator's "implicit policy" of creating a stagnant journal arguably proscribed plaintiff's intended speech. *Id.* at *19-20. Moreover, the plaintiff had stated a First Amendment injury even in the absence of an explicit threat that disciplinary charges would be brought against him if he continued to express his views. *Id.* at *24-25. "It is the chilling effect on free speech that violates the First Amendment, and it is plain that an implicit threat can chill as forcibly as an explicit threat." *Id.* (quoting *Levin v. Harleston*, 966 F.2d 85, 89-90 (2d Cir. 1992)); *see also Cooksey v. Futrell,* 721 F.3d 226, 236-37 (4th Cir. 2013) (blogger chilled when "told, in effect, that he would remain under the watchful eye of [a] State Board").

Similarly, in *Levin v. Harleston,* the Second Circuit found that a university president's criticisms of a professor's speech and suggestion that it might constitute "conduct unbecoming" were sufficient to credibly chill speech, even in the absence of an explicit threat of discipline. 966 F.2d at 89-90. "It is not fatal that Harleston never explicitly stated that disciplinary charges would be brought if Levin continued to voice his views." *Id.*

But Lowery's standing to challenge Defendants' threats is even more robust, because Defendants' threats to Lowery's career were explicit. Defendants wanted "to do something about Richard" because powerful people at UT were upset about Lowery's political advocacy. Doc. #1 at 12–14 (¶¶ 35–53). And they did. They threatened to end Lowery's affiliation with the Salem Center, which would cost him his stipend, access to research opportunities, and personally meaningful work. *Id.* at 13–14 (¶¶ 38–43). For good measure, they also threatened Carvalho's role as Executive Director of the Salem Center, lest he fail to facilitate their efforts to get Lowery to "tone it down." *Id.* at 14 (¶ 41).

Furthermore, Defendants should not be rewarded for maintaining some sort of unwritten, implicit "civility code" that restricts faculty from criticizing UT, its officials, or ideological direction. An unwritten code threatens to chill speech even more than a written one, because its meaning is even more subjective. Defendants Mills and Burris claimed that Lowery's speech was "crossing the line" (Doc. #1 at 13 (¶ 39), but the location of that line is unknown to Lowery. Similarly, in an email discussion about Lowery's speech on Twitter, Defendant Titman stated that he didn't think "rude comments" were acceptable. *Id.* at 15 (¶ 49). But rude comments are protected speech. State officials cannot discriminate against ideas that offend. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019).

Moreover, Defendants are doubling down on their threats by aggressively asserting in their briefing that Lowery was "disruptive," "disparaging," and had "defamed" UT officials. Doc. #14 at 2 ("Lowery's Twitter posts and public comments

6

have been disruptive"), 3 ("Although Mills and Burris expressed concerns about Lowery's speech, it was not about his viewpoints but rather that Lowery made factually incorrect statements and disparaged his colleagues"),[1] 11 ("Public statements defaming leaders and sabotaging fundraising efforts impede University operations"); Doc. #15 at 6 ("He also believes that saying inflammatory things on social media is a part of his job"), 10 ("…Lowery made factually incorrect statements, disparaged his colleagues, and interfered with the University's business functions").

It is curious that Defendants simultaneously claim that they did not threaten Lowery, while also laying the groundwork for disciplinary action. It is unclear what the point of labeling his comments as "disparaging" or "disruptive" is except to suggest that his speech is unworthy of legal protection. Defendants' argument appears to be that they could discipline Lowery if they wanted to. This aggressive legal strategy confirms that UT wants Lowery kept quiet. *See People for the Ethical Treatment of Animals, Inc. v. Banks*, No. 4:20-cv-02913, 2022 U.S. Dist. LEXIS 158855, at *18-19 (S.D. Tex. Sep. 2, 2022) (characterizing plaintiff's comments as "spam" and policy violations make it reasonable to expect that defendant university will attack plaintiff's speech again); *see also Freedom from Religion Found., Inc. v.*

---

[1] Defendants' use of the term "disparage" is a euphemism for "offensive." By using this term, they admit to discriminating based on viewpoint. "[A]s the Court made clear in *Tam*, a law disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *Iancu,* 139 S. Ct. at 2300–01 (citing *Matal v. Tam,* 137 S. Ct. 1744, 1751 (2017)).

*Abbott,* 955 F.3d 417, 425 (5th Cir. 2020) (controversy was ongoing where officials had "not retracted their previous statement to FFRF that future applications for the relevant display will be denied"). It is apparent from the briefing that Defendants have a problem with Lowery's speech – they are openly saying so.[2]

Finally, Defendants' reliance on *Glass v. Paxton*, 900 F.3d 233, 239-40 (5th Cir. 2018), is misplaced. That case involved a campus-carry law that the plaintiff, a UT professor, claimed was causing her to self-censor because she was afraid an unidentified "religious conservative" or "open libertarian" student might become incited by a classroom debate and draw a firearm. *Id.* But the plaintiff did not offer any specifics, and the court found her claims too contingent to confer standing. *Id.* at 242.

In contrast, Lowery has been specific both as to the harm and the wrongdoers. In particular, he has alleged that Defendants Mills and Burris will follow through on their threat not to renew Lowery's affiliation with the Salem Center. Doc. #1 at 18 (¶¶ 61–66). As a result, Lowery has standing to bring his claims.

C. Sovereign immunity does not bar a claim for prospective relief even if it is partly based on officials' past conduct

Defendants mistakenly claim that Lowery's retaliation claims "fails to avoid sovereign immunity" because there "is nothing ongoing about those alleged past

---

[2] Defendants further show a pre-occupation with Lowery's viewpoints by mentioning that he has a lawsuit pending against another university and attaching the complaint. Doc. #15 at 6 (n.2); #15-9. This is further evidence of viewpoint discrimination.

8

threats and this Court certainly cannot issue retrospective relief to undo them." Doc. #15 at 14–15. But Lowery's self-censorship is ongoing and Defendants have doubled down on their threats in their briefing, where they aggressively characterize his speech as disruptive and unworthy of legal protections.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Idaho* v. *Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (cleaned up). Lowery's claims of chilled speech and retaliation easily meet this test. He claims that his self-censorship is ongoing and he has requested only prospective injunctive and declaratory relief to prevent future threats, or the implementation of past threats. Doc. #1 at 20 (¶ 67), 24–25 (prayer for relief). Lowery has made official capacity claims only and his retaliation claim is not an end-run around sovereign immunity to obtain damages from the state. *Cf. Papasan v. Allain,* 478 U.S. 265, 278 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant"). Lowery seeks protection, not compensation. To be sure, the fact of retaliation in the recent past is relevant to the present controversy, but the relief being requested is all prospective.

In *Verizon,* the Supreme Court was untroubled by the fact that Verizon sought declaratory relief for past actions. 535 U.S. at 646.

> As for Verizon's prayer for declaratory relief: That, to be sure, seeks a declaration of the *past*, as well as the *future*, ineffectiveness of the Commission's action, so that the past financial liability of private parties may be affected. But no past liability of the State, or of any of its commissioners, is at issue. It does not impose *upon the State* a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

*Id.* (cleaned up; emphasis in original).

Just so here. A declaration that Defendants previously retaliated against Lowery for his outspoken criticism is relevant to the present controversy and would dovetail with an injunction and serve to head off similar transgressions in the future. *See Steffel v. Thompson,* 415 U.S. 452, 469-70 (1974) ("[A] favorable declaratory judgment may valuable to plaintiff though it cannot make an unconstitutional statute disappear" where leaf-letters had been previously arrested and threatened with arrest under statute) (citations omitted); *Brister v. Faulkner*, 214 F.3d 675, 680-81 (5th Cir. 2000) (declaratory relief upheld where "plaintiffs were seriously interested in disobeying the university's policy prohibiting non-students from distributing leaflets on campus"). Particularly where speech rights are concerned, this Court should err on the side of allowing Lowery's claims to proceed.

II.   LOWERY HAS STATED VIABLE CLAIMS OF CHILLED SPEECH AND RETALIATION

A.   Lowery has stated a viable chilled-speech claim

Even inchoate threats can chill speech. In *Speech First,* the Fifth Circuit found standing[3] to challenge a UT policy that governed "rude," "uncivil," "harassing," or "offensive" speech. 979 F.3d at 322, 337. Similarly, Lowery should be allowed to proceed with his pre-enforcement challenge against UT's unwritten proscription of "rude," "disparaging," "uncivil," and "dangerous" comments and comments that "cross the line" as-applied to his pointed criticism of UT's leaders and their policies. UT's officials should not be allowed to achieve through secret, unwritten rules, what they could not achieve through their now-discredited policies in the recent past. *See* SPEECH FIRST, *University of Texas: Case Settlement Summary* (last visited March 27, 2023) https://speechfirst.org/wp-content/uploads/2018/12/Settlement-statement.pdf ("The school has removed the provision in its internet policy that prohibited sending 'rude or harassing correspondence,' and will not reinstate it").

In *Jackson v. Wright,* the inchoate threat was the implicit policy of creating a stagnant journal. 2022 U.S. Dist. LEXIS 8684, at *19-20; *see also* Dolich, *supra* p. 10 at 176 ("[A]n official action may abridge First Amendment rights without directly proscribing a protected activity. This is the so-called 'chilling effect'").

> The harm from which Plaintiff continues to suffer constitutes, at a minimum, chilled speech. Specifically, Plaintiff can no longer publish scholarship in the Journal that he considers a trademark of his life's

---

[3] While *Speech First* was decided on standing grounds, its analysis is still persuasive when assessing the viability of this claim under Rule 12(b)(6).

11

work, and if he took action to publish the work that is currently "on ice," he would face negative consequences imposed by UNT officials.

*Jackson,* 2022 U.S. Dist. LEXIS 8684, at *19-20.

Similarly, in *Levin,* the Second Circuit upheld a finding "that the threat of discipline implicit in President Harleston's actions was sufficient to create a judicially cognisable chilling effect on Professor Levin's First Amendment rights." 966 F.2d at 89-90.

Lowery's claim is no less viable than those stated by the plaintiffs in *Jackson, Speech First,* and *Levin.* Defendants' Rule 12(b)(6) motion should be denied.

### B.  Lowery has stated a viable retaliation claim

#### a.  *Breaux is no longer good law*

In addition to a forward-looking claim to prevent the ongoing chilling of his speech, Lowery also presents a separate retaliation claim, asking that this Court enjoin Defendants from making good on their past threats and declaring that it is unconstitutional to threaten him for speaking on public issues. It is well accepted that the First Amendment prohibits state officials from taking "'retaliatory actions' after the fact for having engaged in protected speech." *Hous. Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

The Supreme Court has yet to decide definitively just how adverse an action must be in order to make out a viable free-speech retaliation claim. *Id.* at 1261-62. But in the Title VII context, a "plaintiff must show that a reasonable employee

12

would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). And the majority of circuits apply some variation of this test in First Amendment retaliation cases. *See Alston v. Spiegel*, 988 F.3d 564, 575 (1st Cir. 2021) ("[T]he pertinent question here is whether [the employee's] action constituted the kind of action that would deter a reasonably hardy individual from exercising his constitutional rights."); *Specht v. City of New York*, 15 F.4th 594, 604 (2d Cir. 2021) (citation omitted) ("[A]n adverse employment action is one that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."); *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (citing *Burlington Northern*, 548 U.S. at 68) ("To demonstrate that he has suffered an adverse action, a plaintiff must show that the action would chill or silence a person of ordinary firmness from future First Amendment activities."); *Matrisciano v. Randle*, 569 F.3d 723, 730 (7th Cir. 2009) (requiring a plaintiff to show that "he suffered a deprivation likely to deter free speech"); *Couch vs. Bd. of Trs. Of the Mem. Hosp.*, 587 F.3d 1223, 1238 (10th Cir. 2009) (citing *Burlington Northern* to find that the appropriate standard is whether "specific actions would deter a reasonable person from exercising his First Amendment rights"); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) ("[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a

13

person of ordinary firmness from the exercise of First Amendment rights");
*Coszalter v. City of Salem*, 320 F.3d 968, 970 (9th Cir. 2003) (the "reasonably likely
to deter test" means "an adverse employment action is an act that is reasonably
likely to deter employees from engaging in constitutionally protected speech");
*Suppan vs. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (using "deter a person of
ordinary firmness" standard).

Historically, the Fifth Circuit maintained a rather cramped view of what may
qualify as adverse employment action for purposes of free speech retaliation,
holding that mere threats are insufficient. *Breaux v. City of Garland*, 205 F.3d 150,
159 (5th Cir. 2000). But a Supreme Court decision can implicitly overrule Fifth
Circuit decisions, depending on the context. *Gahagan v. United States Citizenship &
Immigration Servs.*, 911 F.3d 298, 302-03 (5th Cir. 2018) ("Sometimes a Supreme
Court decision involving one statute implicitly overrules our precedent involving
another statute").

Notably, *Burlington Northern* was decided in 2006, six years after *Breaux.* 548
U.S. 53. The Fifth Circuit itself has several times since acknowledged that the
question of what qualifies as an adverse employment action in the First
Amendment context is now open. *See Johnson v. Halstead,* 916 F.3d 410, 421 n.5
(5th Cir. 2019) (it is not clearly established whether *Burlington's* standard applies
to retaliation for protected speech); *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir.
2009). "[T]his court has not yet decided whether the *Burlington* standard for
adverse employment actions also applies to First Amendment retaliation cases…"

14

*Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013), *judgment vacated on other grounds,* 573 U.S. 942, 134 S. Ct. 2874 (2014).

The Fifth Circuit's opinions in *Halstead, Gibson,* and *DePree* implicitly recognize *Breaux*'s obsolescence. The more reasonable *Burlington Northern* standard thus governs free-speech retaliation cases, as it does in the eight circuits that have confronted the issue. It also does not make sense that fundamental constitutional rights would enjoy less protection from retaliation than statutory (Title VII) rights.

After all, were it legal to retaliate against unwanted speech by threatening someone's pay or job, censorial officials would do so (as they have here), reasonably calculating that most employees would rather keep quiet than take the chance. Defendants' threats achieved exactly what they had hoped: they silenced Lowery's noisy criticisms. Under *Burlington Northern*'s common-sense test, Defendants' threats to reduce Lowery's pay and end his Salem Center affiliation suffice to constitute adverse actions for purposes of free-speech retaliation. Lowery is not overreacting.

> b. *Defendants have already removed part of Lowery's job duties by preventing him from commenting as a citizen-scholar on university affairs*

Even if the *Breaux* standard applies, Defendants' actions have already denied him the benefit of full enjoyment of his academic freedom as guaranteed by UT's rules, which provide that "[w]hen the faculty member speaks or writes as a citizen, he or she should be free from institutional censorship or discipline[,]" and that faculty has a duty to "use their expertise to benefit society." Doc. #14-7 at 2 (Sec. 3,

Sec. 4.4). Proponents of DEI or ESG are not threatened by their deans for promoting their views on Twitter or in other online fora. Effectively, Defendants have already taken an ultimate adverse employment action against Lowery by removing his ability to comment on university affairs and participate in public intellectual life on a basis equal to his peers'. *See Breaux,* 205 F.3d at 159 (some benefit must be denied or some negative consequence must impinge on a plaintiff's employment).

As in *Jackson,* where the district court found that it was sufficient that the plaintiff was "de facto removed from the Journal in retaliation for the symposium's criticisms of Professor Ewell," 2022 U.S. Dist. LEXIS 8684, at *46, Defendants have curtailed Lowery's academic freedom and barred him from fulfilling his full role as a professor who is guaranteed the right to speak as a citizen. *See also Kessling v. Ohio State Univ.,* No. 2:20-cv-1719, 2022 U.S. Dist. LEXIS 211191, at *52-53 (S.D. Ohio Nov. 21, 2022) (viable speech retaliation claim for threat to withdraw academic appointment, restriction of privileges, and reassignment of duties); *Taylor v. Haugaard,* 360 F. Supp. 3d 923, 931 (D.S.D. 2019) (lobbyist granted TRO when legislative leader banned her from chamber floor for critical speech); *Sassone v. Quartararo,* 598 F. Supp. 2d 459, 466 (S.D.N.Y. 2009) ("diminished job responsibilities" form basis of an adverse employment action).

## Conclusion

This Court should deny Defendants' motion to dismiss.

16

Respectfully submitted,

  Dated: March 28, 2023

 *s/Endel Kolde*
Endel Kolde
Stephanie M. Brown
State Bar No. 24126339
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
sbrown@ifs.org

 *s/Michael E. Lovins*
Michael E. Lovins
State Bar No. 24032555
LOVINS |TROSCLAIR, PLLC
1301 S. Cap. Of Texas
Building A Suite 136
Austin, Texas 78746
Tel: 512.535.1649
Fax: 214.972.1047
michael@lovinslaw.com

*Attorneys for Richard Lowery*

17