UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY,<br>    *Plaintiff,*<br><br>v.<br><br>LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin,<br>    *Defendants.* | § § § § § § § § § § § § § § § § | CASE NO. 1:23-cv-00129-DAE |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................................iii

Introduction ......................................................................................................................................1

I.    The Court should dismiss for lack of subject-matter jurisdiction because there is nothing to adjudicate, and no future conduct for it to enjoin.................................................1

    A.    Lowery's unfounded speculation about imagined future consequences is both undermined by actual events and insufficient to ripen his claim to satisfy Article III. ........................................................................................2

    B.    Lowery's complaints amount to subjective chill, which is not enough for an injury-in-fact under binding precedent in *Laird* and *Zimmerman*..........................3

    C.    Lowery cannot circumvent sovereign immunity because he can point to only past conduct with no credible threat of violation of federal law or future harm. ........................................................................................6

II.    Even if the Court has jurisdiction, it should still dismiss Lowery's suit for failure to state a claim on which relief can be granted. ..........................................................................6

    A.    Lowery's retaliation claim fails because he has not suffered an adverse employment action. ........................................................................................7

    B.    Lowery fails to state a chilled-speech claim. ..................................................9

CONCLUSION ..................................................................................................................................10

## Table of Authorities

Page(s)

**Cases**

*Benningfield v. City of Houston*,
 157 F.3d 369 (5th Cir. 1998) ...................................................................................................... 7

*Bevill v. Fletcher*,
 26 F.4th 270 (5th Cir. 2022) ........................................................................................................ 7

*Breaux v. City of Garland*,
 205 F.3d 150 (5th Cir. 2000) ................................................................................................... 7, 8

*Burlington N. & Santa Fe Ry. v. White*,
 548 U.S. 53 (2006) .................................................................................................................. 8, 9

*Colson v. Grohman*,
 174 F.3d 498 (5th Cir. 1999) ................................................................................................... 7, 8

*Constantine v. Rectors & Visitors of George Mason Univ.*,
 411 F.3d 474 (4th Cir. 2005) ...................................................................................................... 9

*Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*,
 587 F.3d 1223 (10th Cir. 2009) .................................................................................................. 9

*Fairchild v. Liberty Indep. Sch. Dist.*,
 597 F.3d 747 (5th Cir. 2010) ...................................................................................................... 3

*Harrington v. Harris*,
 118 F.3d 359 (5th Cir. 1997) ................................................................................................... 7, 8

*Houston Cmty. Coll. Sys. v. Wilson*,
 142 S.Ct. 1253 (2022) ................................................................................................................. 5

*Jackson v. Wright*,
 No. 4:21-CV-00033, 2022 WL 179277 (E.D. Tex. Jan. 18, 2022) .................................... 3, 6, 10

*Keenan v. Tejada*,
 290 F.3d 252 (5th Cir. 2002) .............................................................................................. 4, 6, 9

*Laird v. Tatum*,
 408 U.S. 1 (1972) .............................................................................................................. 3, 5, 6

*Levin v. Harleston*,
 966 F.2d 85 (2d Cir. 1992) ............................................................................................. 4, 5, 6, 10

*Lopez v. City of Houston*,
 617 F.3d 336 (5th Cir. 2010) ...................................................................................................... 2

*Matrisciano v. Randle*,
    569 F.3d 723 (7th Cir. 2009), *abrogated on other grounds*, *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) ................................................................................ 9

*Modica v. Taylor*,
    465 F.3d 174 (5th Cir. 2006) .................................................................................................. 7

*Nunez v. City of Los Angeles*,
    147 F.3d 867 (9th Cir. 1998) .................................................................................................. 9

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ................................................................................................................ 6

*Pierce v. TDCJ-ID*,
    37 F.3d 1146 (5th Cir. 1994) .................................................................................................. 7

*Pool v. City of Houston*,
    978 F.3d 307 (5th Cir. 2020) .................................................................................................. 3

*Smith v. Plati*,
    258 F.3d 1167 (10th Cir. 2001) .............................................................................................. 4

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ............................................................................................ 3, 10

*Stinger v. Whitley*,
    943 F.3d 715 (5th Cir. 2020) .................................................................................................. 2

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................................................................ 2

*Va. Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011) ................................................................................................................ 6

*Verizon Md. Inc. v. PSC*,
    535 U.S. 635 (2002) ................................................................................................................ 6

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) .............................................................................................. 3, 5

### Other Authorities

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 6, 9

## Introduction

Lowery is a tenured professor who sued the University alleging that University Officials threatened to end his affiliation with an academic center due to what he describes as his "controversial" views. He has now been reappointed twice to annual terms at that academic center following those supposed threats, including just this month. Yet Lowery still claims that he is being targeted because of his speech. And he claims he has chilled his own speech since August 2022, but his active speaking schedule following the start of this alleged self-chilling belies that claim as well.

At base, Lowery complains that the academic freedom he is afforded and the free speech he enjoys at the University should not run both ways. Lowery believes that he can complain about the University, call its leadership liars and grifters, call other colleagues "shameless and awful," and insult the student body, but not face even mild criticism in return. Lowery asks the Court to build him an echo chamber because he cannot tolerate the marketplace of ideas. It should not give in to that request.

Lowery's complaints about the University do not create an Article III case or controversy. Lowery's alleged injuries either have not occurred (and are exceedingly unlikely to occur) or were self-inflicted from subjective (rather than objectively reasonable) self-chilling. Nor do his perceived injuries qualify for the *Ex parte Young* exception to sovereign immunity and the Eleventh Amendment. Moreover, even if he had a justiciable case that could survive Rule 12(b)(1), his legal complaint cannot survive the low bar of Rule 12(b)(6) because nothing in his complaint, taken as true, amounts to a viable First Amendment claim against the UT Defendant-Officials Mills, Burris, and Titman.

Either way, this Court should grant Defendants' Motion (Dkt. 15) and dismiss this case in its entirety.

**I.     The Court should dismiss for lack of subject-matter jurisdiction because there is nothing to adjudicate, and no future conduct for it to enjoin.**

Lowery's Response (Dkt. 43) does nothing to change that this Court lacks subject-matter jurisdiction for three reasons: (A) lack of ripeness; (B) no injury; and (C) and sovereign immunity.

1

**A. Lowery's unfounded speculation about imagined future consequences is both undermined by actual events and insufficient to ripen his claim to satisfy Article III.**

That "Lowery does not believe he is free to continue express his views openly" is not enough to make his claim ripe. Dkt. 1 ¶60 (cited by Dkt. 43 at 3). Nor are his unsubstantiated "fears" about the Salem Center. Dkt. 1 ¶¶61–62 (cited by Dkt. 43 at 3). But it is on these allegations alone that Lowery rests his argument that his complaints are ripe. Dkt. 43 at 3. For one, his complaints stem from thin-skinned subjective chill, which is not an adequate injury-in-fact that would support bringing a claim now. *See infra*, Part I.B. And "[f]or a threatened future injury to satisfy the imminence requirement [for a ripe injury], there must be at least a substantial risk that the injury will occur." *Stinger v. Whitley*, 943 F.3d 715, 720 (5th Cir. 2020). But his supposed injuries are "contingent on future events that may not occur as [Lowery has] anticipated." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).

Indeed, they have not occurred; and intervening facts show just how unlikely the imagined future occurrence is. *See id.* Shortly after Defendants' alleged chilling conduct in August 2022, *see* Dkt. 1 ¶¶38–42, Burris—the official who allegedly made threatening comments to Carvalho (not Lowery) about the Salem Center—promptly "renewed Lowery's annual appointment" at the Salem Center. *Id.* ¶43. And Lowery's appointment was just renewed for another year again in August 2023. Lowery's purported fear of being removed from the Salem Center has proven unfounded. On top of that, Lowery received a raise at the beginning of the 2022-23 academic year. Ex. 20. Lowery's complaint boils down to a subjective fear that at some unknown future date (at least a year away) his contract may not be renewed (assuming he seeks a renewal). That is speculation—not a substantial risk of injury—so it fails to meet Article III. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Lowery cannot rely on the Salem Center allegation to secure standing, only on his self-inflicted subjective chill. As shown below, that allegation fails under U.S. Supreme Court and Fifth Circuit precedent.

2

### B. Lowery's complaints amount to subjective chill, which is not enough for an injury-in-fact under binding precedent in *Laird* and *Zimmerman*.

Even when a plaintiff claims First Amendment chill, "Article III standing retains rigor . . ." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). No doubt "government action that chills speech without prohibiting it can give rise to a constitutionally cognizable injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). But recognizing this uncontroversial principle does nothing to improve Lowery's claim to standing. *Contra* Dkt. 43 at 3.

To begin, Lowery's relaxed standing theory is inapplicable here. He cites cases about *pre-enforcement* challenges to *laws and rules* that punish potentially protected conduct, *see, e.g.*, Dkt 43 at 3–4 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020)). And Lowery's relaxed standing theory comes from the principle "that people should not have to expose themselves 'to actual arrest or prosecution' in order to challenge a law that infringes on speech." *Pool v. City of Houston*, 978 F.3d 307, 311 (5th Cir. 2020). No similar real-world consequence exists here. He was just reappointed to the Salem Center, and a year ago he received the same reappointment on top of a raise for his tenured position with the University. Ex. 20 There are no financial or similarly concrete injuries. So the only purported injury is his self-imposed chill. Because that self-censoring injury comes from Lowery's own subjective perception of feeling chilled—not a credible threat of enforcement—there is no cognizable injury.

Compare this to Lowery's favored case, *Jackson v. Wright*, No. 4:21-CV-00033, 2022 WL 179277 (E.D. Tex. Jan. 18, 2022). There, the district court found that "continued banishment from" an academic journal, so that plaintiff "c[ould] no longer publish scholarship in the Journal that he consider[ed] a trademark of his life's work, and if he took action to publish the work that is currently 'on ice' he would face negative consequences imposed by [university] officials," *id.* at *6–7, amounted to chilled speech. No such action, or even threatened action, has taken place here. Or take Lowery's

3

other key case, *Levin v. Harleston*, where a university created alternate class sections for the plaintiff for "conduct unbecoming," using language from the disciplinary provision for faculty. 966 F.2d 85, 88–90 (2d Cir. 1992). Here, by contrast, Lowery has not been relegated to teaching "shadow classes"; instead, he was *encouraged* to design a popular class so that he might reach *more* students. Dkt. 1, ¶52. And Lowery does not and cannot claim a similar disciplinary threat using anything resembling disciplinary language. Unlike the plaintiffs in his cited cases, Lowery has faced no tangible harm. Indeed the facts undermine that any such a harm is likely, considering his raise and two reappointments to the Salem Center.

That leaves his allegations about threatened harm. Lowery's allegations come into two categories: what he alleges was actually said (but not done)—and how Lowery *felt* about what he alleges was said. Lowery's subjective feelings are irrelevant, however; rather, the test is whether a person of ordinary firmness would feel chilled. *Keenan v. Tejada*, 290 F.3d 252, 259–60 (5th Cir. 2002) (quoting *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)) ("The focus ... is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.").[1]

The *facts* actually alleged show mere criticism—not any adverse *actions*. To begin, most of the alleged statements were made not to Lowery but to his colleague, Carvalho. *See, e.g.*, Dkt. 1, ¶36 ("Defendant Titman told Carvalho"), ¶39 ("Mills *advised* Carvalho") (emphasis added), ¶40 ("telling Carvalho"). In any event, the alleged statements are all innocuous or were made by persons other than Defendants. Plaintiff alleges that Defendants said:

- To Carvalho: "We need to do something about Richard . . . [can we] ask him to tone it down?" Dkt 1 ¶36;

---

[1] As Lowery has correctly noted, a university is a place for rigorous debate and challenging ideas. But under Lowery's theory of standing, practically any critical statement could serve as the basis for a lawsuit asking a court to referee the debate in classes and around campus. Such a scenario would not encourage the robust exchange of views that universities strive to provide.

- To Carvalho: "work with Richard [Lowery]" about "crossing the line" in his criticism of school officials. *Id.* ¶39;
- To Lowery: "You don't seem to be making friends. It is probably in your interest to come up with a class for the Spring that is likely to be popular . . . In any event, the appropriate response is to jointly sponsor a panel discussion on ESG" *Id.* ¶52.

Indeed, the third statement—which Titman made in an email to Lowery—*encouraged more speech* by expressing a desire for Lowery to design a popular class and engage in public debate with the organization he often aggressively criticized.

But even casting these statements in the most nefarious light possible, these statements are not threats because they lack any consequence, explicit or implied. *See Zimmerman*, 881 F.3d at 390 ("'[T]o confer standing, allegations of chilled speech or self-censorship must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'"). Mere criticisms from colleagues that lack any threat of discipline[2] are nothing like the actions taken and the disciplinary standards invoked in *Levin*, 966 F.2d at 89. The critical statements that Lowery alleges Defendants made are the equivalent of "a mere frown from a supervisor," which "no one would think . . . constitutes a sufficiently adverse action to give rise to an actionable First Amendment claim." *Houston Cmty. Coll. Sys. v. Wilson*, 142 S.Ct. 1253, 1261 (2022).

That leaves Lowery's allegations about how he says he *felt*. But Lowery's feelings are not enough to satisfy the exception, to general rule against self-inflicted injury, for First Amendment chill. *See Zimmerman v. City of Austin*, 881 F.3d at 389–90. That exception is narrow, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Lowery's subjective feeling that

---

[2] Perhaps aware of his inadequate pleading, Lowery tries to point to legal briefing for a new source of chilling action. *See* Dkt. 43 at 6–7. UT Officials "aggressive legal strategy" of accurately describing his speech as disruptive and factually incorrect, and while also viewing his reactions to sue over mild criticism as churlish, is not disciplinary action or anything like that.

he perceived a threat in Defendants' alleged statements of mild criticism., *see* Dkt. 1 ¶53, does not create a cognizable cause of action under *Laird* or *Tejada*.

### C. Lowery cannot circumvent sovereign immunity because he can point to only past conduct with no credible threat of violation of federal law or future harm.

Under *Ex parte Young*, a federal court may "command[] a state official to do nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). Declaring past acts to be unconstitutional or ultra vires is retrospective relief and impermissible in an *Ex parte Young* suit. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). But Lowery points to only past conduct—statements from summer 2022. And Lowery does not dispute the several *actions* taken by Defendants since then—including two reappointments and a pay raise—that have been beneficial to him.

Lowery tries to avoid this problem by noting that his relief is a prospective injunction and declaration. To support that claim, he cites *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002). But *Verizon* focused on a prospective request for relief where a Federal Communications Commission order was rendered in the past but continued to apply in the future. *Id.* 646. Here there is no ongoing conduct or action that has continuing effect. For example, Lowery's point might have force if Defendants had removed from him from his position at the Center or required him to teach alternative classes, and those decisions had continuing effects into the future. *Cf. Jackson*, 2022 WL 179277, at *6; *Levin*, 966 F.2d at 88–90. But nothing like that occurred, much less is continuing.

## II. Even if the Court has jurisdiction, it should still dismiss Lowery's suit for failure to state a claim on which relief can be granted.

If the Court determines that it has jurisdiction over either claim, it still should dismiss. As discussed in the Motion (Dkt 15 at 10–13), the Court should dismiss any remaining claims under Rule 12(b)(6) because Defendants have not taken any adverse employment action to constitute retaliation,

nor does the test for "chilling" speech assumes a plaintiff of ordinary firmness, not one who is overly sensitive.

### A. Lowery's retaliation claim fails because he has not suffered an adverse employment action.

As explained in the Motion (Dkt. 15 at 10), First Amendment retaliation claims involve these elements: (1) the employee-plaintiff suffered an adverse employment action; (2) the plaintiff engaged in speech as a citizen, rather than as an employee, and spoke on a matter of public concern; (3) the plaintiff's interest in speaking outweighs the employer's interest in maintaining efficient operations; and (4) the protected speech motivated the adverse employment action. *E.g.*, *Bevill v. Fletcher*, 26 F.4th 270, 275–76 (5th Cir. 2022); *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006). The adverse employment actions on which elements one and four are founded are "discharges, demotions, refusals to hire, refusals to promote, and [formal] reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (quoting *Pierce v. TDCJ-ID*, 37 F.3d 1146, 1149 (5th Cir. 1994)). And the Fifth Circuit has refused to expand that list to things like "false accusations, verbal reprimands, and investigations," *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999), "criticism . . . oral threats or abusive remarks," *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000), or "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

Lowery cannot point the Court to any adverse employment action that he has suffered. Lowery has not been demoted or discharged, nor has he even been reprimanded for any of his speech. Quite the contrary: in September 2022—one or two months after the incidents described by Lowery allegedly occurred—Burris reappointed Lowery to his position at the Salem Center. Dkt. 1 at ¶43. Unable to fit his complaint about being criticized into recognized retaliation, he tries to cast the criticism as a reduction in job duties. Dkt. 43 at 15–16. But he cannot identify any specific job duty that Defendants

have eliminated or prevented him from performing. Lowery does not allege that he has been reassigned or is no longer able to teach classes, attend faculty meetings, publish his academic research, or, serve at the Salem Center. He has not alleged that because none of those things have happened. Instead, he is left with allegations that he suffered mere criticism from his colleagues.[3]

In exclusively relying on criticisms, he must ask this Court to abandon the *Breaux* "adverse employment action" test in employee-speech cases in favor of the *Burlington Northern* test from the Title VII context. Dkt. 43 at 13. But Lowery does not identify any courts within the Fifth Circuit that have adopted his proposed standard. And he asks the Court to ignore *Breaux* and *Colson*, in which the Fifth Circuit expressly declined to expand the list of actionable adverse employment actions to include "criticism [or] oral threats," *Breaux*, 205 F.3d at 158, or "verbal reprimands," *Colson*, 174 F.3d at 511. Moreover, the mildly critical statements Lowery alleges fall far short of the "investigations," *Colson*, 174 F.3d at 511, and completed "decisions concerning teaching assignments . . . administrative matters, and departmental procedures," *Harrington*, 118 F.3d at 365, that the Fifth Circuit has consciously chosen not to include within the list of actionable adverse employment actions despite acknowledging that some unincluded actions may have a chilling effect, *Breaux*, 205 F.3d at 157. Thus, it is not just the *Breaux* case that the Court would be effectively overruling if it embraced Lowery's theory of adverse employment action. This Court should reject Lowery's invitation to do what the Fifth Circuit has declined to do.

Even if the Court adopted Lowery's proposed standard from *Burlington*, Lowery would not meet that standard. The *Burlington* standard would require him to show an action that would dissuade a reasonable worker from making or supporting a charge of discrimination. *See* Dkt. 43 at 18 (quoting

---

[3] Perversely, Lowery requests relief in the form of a prior restraint on Defendants' speech, including an injunction prohibiting them from describing any of Lowery's speech as "uncivil." See Dkt. 1 at Prayer (injunctive relief request).

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). Both *Burlington* and other circuits apply an objective standard of whether a reasonable person of ordinary firmness would be deterred in their speech. *See id.* (gathering standards). In some cases it was undisputed that the deterring conduct had occurred. *See, e.g.*, *Matrisciano v. Randle*, 569 F.3d 723, 730 (7th Cir. 2009), *abrogated on other grounds*, *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). And those that did analyze the issue found conduct more aggressive than the UT Officials' vanilla words would not deter a reasonable person of ordinary firmness—particularly when competing speech is involved. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("All he has shown is that he was bad-mouthed and verbally threatened. It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation."); *see also Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238 (10th Cir. 2009) (legitimate investigation would not deter reasonable person) (cited by Dkt. 43 at 13–14); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500–01 (4th Cir. 2005) (criticism led to failing grade was legitimate deterrent) (same). This objective standard is fatal to Lowery, because no person of reasonable firmness would be deterred by the comments allegedly made here, which even fail to rise to "bad-mouthing." *See Nunez*, 147 F.3d at 875.

Accordingly, Lowery's retaliation claim should thus be dismissed under Rule 12(b)(6).

### B. Lowery fails to state a chilled-speech claim.

A plaintiff bringing a chilled-speech claim must demonstrate that (1) he engaged in protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that speech activity; and (3) these adverse actions were substantially motivated by his exercise of constitutionally protected conduct. *E.g.*, *Kennan v. Tejada*, 290 F.3d at 258.

Lowery points to *zero* factual allegations in his response for the basis of his chilled speech claim. *See* Dkt. 43. Rather he merely states his "claim is no less viable than those stated by the plaintiffs

9

in *Jackson*, *Speech First*, and *Levin*." Dkt. 43 at 12. As explained above, neither *Jackson* nor *Levin* provide any help for Lowery; rather, they show that concrete consequences and credible threats are required to make a chilled-speech claim viable. *See supra* at 3.

That leaves *Speech First*, which is also inapplicable. There, a university policy contained a clear threat of "'punitive sanctions' all the way up to 'criminal prosecution,'" 979 F.3d 319 at 333, for categories of speech such as "incivility" and "bias," *id.* at 332. But here there is no proscription or potential sanction for Lowery's speech—or any policy that he can point to. While his colleagues allegedly criticized Lowery—using their own First Amendment rights to engage with Lowery's own provocative exercise—the First Amendment does not elevate Lowery above criticism. And without that right to be free from criticism, there is no corresponding cause of action that Lowery has stated.

## Conclusion

This Court should dismiss for lack of subject matter jurisdiction because Lower has no injury to point to and sovereign immunity bars his claims for past conduct. In the alternative, the Court should dismiss Lowery's complaint for failure to state a claim on which relief can be granted.

Respectfully submitted,

JACKSON WALKER LLP

By: */s/ Charles L. Babcock*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
Cody Lee Vaughn
Texas State Bar No. 24115897
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 15, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

                                                     */s/ Charles L. Babcock*
                                                     Charles L. Babcock