UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 1:23-cv-00129-LY |
| § | |
| LILLIAN MILLS, in her official capacity § | |
| as Dean of the McCombs School of Business § | |
| at the University of Texas at Austin; ETHAN § | |
| BURRIS, in his official capacity as Senior As- § | |
| sociate Dean for Academic Affairs of the § | |
| McCombs School of Business at the Univer- § | |
| sity of Texas-Austin; and CLEMENS § | |
| SIALM, in his official capacity as Finance De- § | |
| partment Chair for the McCombs School of § | |
| Business at the University of Texas-Austin, § | |
| § | |
| *Defendants.* § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
PRIVILEGE LOG AND DISCOVERY RESPONSES**

**INTRODUCTION**

For the dispute over Lowery's RFP responses this Court need only decide whether Lowery's speech, including communications to "at least ten" other academics, is relevant to Lowery's claim that he is too scared of criticism to speak out. Or, if it is related to Defendants' defense that he is indeed speaking out. Either way, if Lowery's speech is relevant to his free speech claim, then Lowery should have to produce evidence of that speech.

For the dispute over the privilege log, this Court need only decide whether subject lines such as "DEI stuff at UT-Austin" and "UT-Austin" self-evidently show enough so that Defendants and the Court can "test[ ] the merits of the privilege claim," specifically whether the email was about a legal opinion. *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695, 697 (5th Cir. 2017). If these subject lines are insufficient,[1] then Lowery needs to produce a privilege log that allows Defendants and the Court to test the asserted privilege.

**I.    Lowery's communications that show whether or not he is actually self-censoring are relevant to his claim that he is self-censoring and whether he has suffered an actual injury and if Defendants have caused that injury—elements of standing and his claim.**

According to Lowery, his claims are about his "speech criticizing UT, its policies, president, allocation of public money, and ideological direction." Dkt. 64-2 (Lowery Decl.) ¶16; *see also* Dkt. 1 (Complaint) at 20 (describing his right to criticize UT). And the parties agree, his surviving claim is for his self-chilling of said speech. *See* Dkt. 64 (Lowery's Response) at 6; *see also* Dkt. 51 (Order on Motion to Dismiss) at 16. Also the parties agree that Defendants "challenge[] this Court's subject matter jurisdiction," relevant here is standing, and assert Lowery has no claim for a self-chilled speech

---

[1] Again, Defendants understand the privilege assertion for emails with subject lines such as "Lowery case update," *see* Dkt. 62 (Defendants' Motion to Compel) at 5 n1. So the document titles that "discuss topics such as declarations, local counsel, service of process, and the drafts of the complaint" are not at issue, *contra* Dkt. 64 (Lowery's Response) at 10.

retaliation claim.[2] *Id.* So the parties agree on the relevant claims and defenses. *See* Rule 26(b)(1) ("relevant to any party's claim or defense").[3]

The disagreement, then, is whether Lowery's communications to "at least ten other academics," Dkt. 64 (Lowery Response) at 10, and others—about: (RFP 6) his "'speech' (as [he] use[s] that term in the Complaint and PI)"; (RFP 7) his "position at the Salem Center"; (RFP 13) "presentations [he] gave"; and (RFP 29) his presentation and communications with the Hillsdale Global Liberty Institute[4]—are relevant to his claims that he is too scared to speak out. Indeed, "[a]ctual chill is required" for a First Amendment chill claim. *Netflix, Inc. v. Babin*, No. 22-40786, 2023 WL 8714856, at *10 (5th Cir. Dec. 18, 2023) (citing *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002)). The volume and content of speech could show Lowery's "injuries, such as they are, do not rise to the level of a constitutional violation" because he continues to express the same views, even if in an echo chamber. *See Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (granting summary judgment on claim where plaintiff described his phone call with defendants as "very scary," "threatening," and "scary," but apparently felt free not only to speak to a reporter, but to speak frankly and express his views).

---

[2] To keep the claim analytically clear, a self-chilling claim is a mere subspecies of a retaliation claim. *See, e.g.*, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (giving elements of retaliation claim) (cited by Dkt. 51 (Order on Motion to Dismiss) at 25). The difference between Lowery's dismissed retaliation claim and his live self-chill retaliation claim, is that the former requires an actual adverse employment action, while the latter is about Defendants' alleged threats of future actual adverse action. *Compare* Dkt. 51 (Order on Motion to Dismiss) at 24 (alleged threat is not an adverse employment action for a vanilla retaliation claim) *with id.* at 25 (threats are enough for self-chill subspecies). In the latter self-chill subspecies of cases, "mere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment," rather there must be a credible threat of discharge or some other similar action. *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997); *see also Deeren v. Anderson*, 72 F.4th 229, 235 (7th Cir. 2023) ("negative comments" were insufficient to raise fact issue on summary judgment on retaliation claim in circuit where threats can be a retaliatory action).

[3] Any reference to the old standard is inconsequential. The RFPs and Motion to Compel have always sought only documents relevant to Lowery's claim. *See, e.g.*, Dkt. 62 (Defendants' Motion to Compel) at 6 ("Here, Lowery complains he is self-chilling his speech . . . [i]n RFPs 6, 7, 13, and 29 Defendants [] seek to discover Lowery's speech and evidence of self-censorship.").

[4] Defendants are only seeking to compel documents related to Lowery's claims and Defendants' defenses, so communications related to Lowery's "speech criticizing UT, its policies, president, allocation of public money, and ideological direction," the Salem Center, his alleged self-censorship, etc.

The communications could also be probative of whether Defendants' criticisms caused Lowery's self-censorship. While "[t]he focus, of course, is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled," "[n]evertheless, [Lowery]'s persistence in maintaining [his message] offers some evidence that [Defendants' criticisms] did not prevent such []⁵ speech." *See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). Similarly, it is relevant to whether Lowery has suffered an actual injury rather than a non-actionable, self-inflicted one. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) for the proposition that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm").

"In the Fifth Circuit, a party who opposes its opponent's request for production [must] show specifically how . . . each [request] is not relevant." *Baker v. Walters*, 652 F. Supp. 3d 768, 778 (N.D. Tex. 2023) (quotation omitted but alterations original) (cited by Dkt. 64 (Lowery's Response) at 4). For RFPs 6 and 7, Lowery just states the "Hanania emails are not even responsive: they are neither 'related to [Lowery's] "speech"' nor 'related to [his] position at the Salem Center.'" Dkt. 64 (Lowery's Response) at 6 (quoting RFPs 6 and 7). But Lowery's position has been that his appearance on the Hanania podcast sparked Defendants' scrutiny of his speech. *See, e.g.*, Dkt. 1 (Complaint) ¶¶ 23, 39. Communications and emails with Hanania, as they relate to Lowery's speech and position at the Salem Center, are directly tied to the factual allegations in Lowery's complaint and his claim. Given Lowery's narrow view of relevance, the statement that the emails are nonresponsive is not persuasive.

Next, for RFPs 13 and 29 regarding to Lowery's presentations, Lowery responds there is no need for the documents because it is "not contested" that Lowery spoke at the Hillsdale Conference and a Stanford Conference. Dkt. 64 (Lowery's Response) at 6. That's not how this works. It is "not contested" that Lowery spoke at these events, which makes the documents relevant. *See supra*, at 2. The Court should order him to produce all material related to the Hillsdale and Stanford Conference.

---

⁵ *Plati* uses the word "private" here not in contrast to accessible but in contrast to state-owned. Defendants accept Lowery's stipulation that none of his claims have to do with private speech. The dispute is over what counts as "private."

For example, Lowery has conceded that at the "De-Wokification" event he "criticize[d] the UT administration and its policies," Dkt. 62-5 (Lowery's RFP responses) at 6, the exact speech that Lowery says this lawsuit is about. Dkt. 64-2 (Lowery Decl.) ¶16 (Lowery attesting his claims are about his "speech criticizing UT, its policies, president, allocation of public money, and ideological direction."). Lowery's only difference is that this occurred in "private" with an unknown number of people behind closed doors. Lowery offers no reason or authority why this speech is private or what legal significance it is that Lowery only seeks to speak in echo chambers.

## II. Lowery manufactures burdens from requests Defendants did not serve.

Lowery bases his burden analysis on the claim that Defendants "want[] to see all his conversations with various dissident academics, including his nearly daily Signal messages with Carlos Carvalho on matters unrelated to this case." Dkt. 64 (Lowery's Response) at 1; *see also id.* at 5, 7. Setting aside that Defendants are not moving to compel any request related to Carvalho, Defendants **are not** seeking any and every email or message. Rather each request is limited to (RFP 6) his "'speech' (as [he] use[s] that term in the Complaint and PI)"; (RFP 7) his "position at the Salem Center"; (RFP 13) "presentations [he] gave"; and (RFP 29) his presentation and communications with the Hillsdale Global Liberty Institute.

Lowery offers no argument about why this limited set of discovery would be burdensome, only to imagined broader requests. Still, Lowery's counsel, as "a member of the Sedona Conference Working Group", Dkt. 64-1 (Kolde Decl.) at ¶2, is likely familiar with using search protocols to reduce the burden and produce emails with mutually agreed keywords from the Complaint and request. *See* The Sedona Conference, *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 164 (2018). And in any event, after Lowery's manual review, which he apparently has already done—further limiting the burden—Lowery claims "none of the[] emails" related to RFP 13 "have anything to do with [his] claims" in his lawsuit, Dkt. 64-4 (Lowery Decl.) ¶8. But that is little comfort to Defendants because of Lowery's and his counsel's overly narrow view of relevance. *Compare supra* at 2 *with* Dkt. 64 (Lowery's Response) at 5–6.

Finally, that leaves Lowery's association privilege claim, which is now merely a "factor" in the proportionality analysis. *See id.* at 8. Any concerns about third-party privacy can be resolved with the standard Western District of Texas Protective Order that Defendants' counsel proposed.[6]

### III. Lowery's privilege log remains lacking because it is not obvious from subject lines such as "DEI stuff at UT-Austin" and "UT Austin", as Lowery claims, that the emails are privileged.

Lowery's privilege log arguments are also non-responsive. Lowery claims "supplementation is unnecessary, because Lowery's logs, as a whole, already show that these communications were primarily made for the purposes of legal advice and litigation preparation." Dkt. 64-4 (Lowery Response) at 10. He then points to "document titles [that] repeatedly discuss topics such as declarations, local counsel, service of process, and the drafts of the complaint." *Id.* But as Defendants made clear, they can figure out the privilege for such entries like "RE: UT case: draft complaint for your review." Dkt. 62 (Defendants' Motion) at 5 n.1. Rather it is emails with subject lines "DEI stuff at UT-Austin" and "UT-Austin" that aren't obviously about legal advice. *See id.* at 5 (focusing on such emails). If Lowery is now willing to supplement those and similar entries (e.g., "Fwd: UT case: PR for Lawsuit"), as Defendants requested, then that should resolve this issue.

### CONCLUSION

Because Lowery's response changes little from his positions in the meet-and-confer, which depart from the Rules of Civil Procedure, this Court should compel a supplemented privilege log, and responsive documents to RFPs 6, 7, 13, and 29.

---

[6] Despite no legal right to any redaction of the identity of the untenured attendee to the De-Wokification Summit, *see* Dkt. 64-2 (Lowery Decl.) ¶28, Defendants do not care about the identity of the untenured attendee, so redacting the name would solve the issue.

|  | Respectfully submitted, |
|---|---|
|  | JACKSON WALKER L.L.P. |
| By: | /s/ Matt Dow |

Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 3, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

                                              */s/ Matt Dow*
                                              Matt Dow