UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br><br>*Plaintiff*,<br><br>v.<br><br>LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and SHERIDAN TITMAN, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin,<br><br>*Defendants*. | Case No. 1:23-cv-129-LY |

DECLARATION OF RICHARD LOWERY
IN SUPPORT OF PLAINTIFF'S RESPONSE AND CROSS-MOTION RE: KAMM SUBPOENA

I, Richard Lowery, declare the following:

1. I am an adult and competent to make this declaration. Its content is based on my personal knowledge.

2. I am a faculty member in the Finance Department at the McCombs School of Business at UT-Austin.

1

3. I am aware that through the discovery process, my lawyers uncovered that Kelly Kamm sent an email in July 2022 to the UT compliance office about my appearance on Richard Hanania's podcast, where I criticized Jay Hartzell and other UT administrators.

4. Prof. Kamm is in the same department as me, but we have only a passing acquaintance. I would estimate that I have had less than a half-dozen direct, personal interactions with her, ever. To the best of my recollection, those were cordial and superficial. We have never argued about the ideological direction of UT or any other topic and she has always been polite to my face.

5. I have never collaborated with Kelly Kamm on any research project or other matter and she is not affiliated with the Salem Center or the work of the center. I cannot think of why she would have any reason to use her personal email to email about the Salem Center or me in particular, other than issues relevant to this case, such as my speech, which we now know she sent an email about.

6. She has never told me that she disagrees with my opinions on matters of public importance and frankly, I don't care if she does. It also doesn't bother me if she makes a good-faith complaint about any suspected violation of UT policy, as long as it's truly a good-faith complaint.

7. But it does bother me if she is weaponizing the UT compliance office process to censor my speech about matters of public importance, especially if someone put her up to it or suggested that she make such a complaint. UT has already been sued

2

once over its speech policies, and it looks like UT just took its policy off the books and continued to enforce it against disfavored speakers, like me.

8. I do not know if Kelly Kamm is connected to any of the other people who denounced my Tweets, articles and podcast interview, but I think it's reasonable for me to want to find out.

9. I do think that she is acquainted with Laura Starks, who is a longtime member of the Finance Department and its former chair. Starks is also part of UT's Global Leadership Sustainability Initiative (GLSI), a group whose events I have criticized on Twitter.

10. It is possible that Kamm is acquainted is Meeta Kothare, a UT administrator who has tried to keep me from tweeting about GLSI events to elected officials and others and who was complicit in asking the UT police to investigate my tweets. As emails previously filed in this case show, Prof. Kothare and Starks have communicated about my speech before, attempting to label it "unsafe." I would not put it past either of them to cook up a fake complaint against me in order to get me to tone it down, or to encourage someone like Kelly Kamm to file such a complaint.

11. I do not know if that's what they did here, but I do want to find out if Kelly Kamm communicated with either of them about me or my speech, including my appearance on the Hanania podcast.

12. It is also possible that Kamm discussed her planned email to the UT compliance office with other UT administrators or people connected to them. It is

3

not uncommon for UT administrators to send intermediaries to do their dirty work for them. I want to see if that happened here.

13. If such emails are disclosed, that could help to prove what I have been saying, that there was a concerted campaign to silence me because certain people didn't like what I was saying and who I was reaching.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this date, January 5, 2024.

_____
Richard Lowery