UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br><br>　　Plaintiff,<br><br>v.<br><br>LILLIAN MILLS, *et al.*,<br><br>　　Defendants. | Case No. 1:23-cv-00129-DAE |

**PLAINTIFF'S BRIEF IN SUPPORT OF CROSS-MOTION TO COMPEL COMPLIANCE WITH KAMM SUBPOENA**

**RULE CV-7(G) STATEMENT**

Plaintiff conferred in good faith with counsel for Kelly Kamm via telephone on January 2, 2024 in an effort to resolve their disputes, but were unable to come to an agreement.

## INTRODUCTION

Plaintiff Richard Lowery has argued from the early days of this lawsuit that University of Texas officials were hiding something. Subsequent developments keep proving him correct.

UT has repeatedly resisted providing information about the events leading up to Defendant Mills and Burris's campaign to pressure Lowery to censor his speech, including whether anyone directed, or even suggested, that the Defendants act against Lowery because he was saying things they did not want others to hear.

In April 2023, Defendants Mills and Burris each submitted a false deposition on written question (DWQ) answer, asserting that UT President Jay Hartzell never texted them about Lowery during the summer of 2022. But on December 8, 2023, we learned the truth, although only part of it.

From those same DWQ answers, we also learned that someone had anonymously denounced Lowery via an email to the UT compliance office in July 2022, although UT refused to provide Lowery a copy of that denunciation until regular discovery commenced. Having later learned that the email originated from mccombsprof@yahoo.com, Lowery's counsel subpoenaed Yahoo for the account registration information, uncovering in December 2023 that UT professor Kelly Kamm's public-facing phone number was used to verify the Yahoo account.

So, Lowery's lawyers sent Kamm a targeted subpoena, via UT's lawyers (who stepped in to represent her), requesting only emails concerning Lowery, "his appearance on the Richard Hanania podcast, or any Tweet or online article authored by Lowery, that are associated with the email account: mccombsprof@yahoo.com or any other personal email account [of Kelly Kamm's]." Acting on Kamm's behalf, UT lawyer's objected at the last possible moment and filed a facial motion to quash, without providing any evidence of burden.

1

UT's obstructive behavior points to a cover up. UT's employee, Kelly Kamm maintains that her emails have nothing to do with UT's campaign to silence Lowery's speech. If that is true, Kamm can easily demonstrate it; she could devote 20 minutes, maybe an hour to electronic searching through her personal email accounts and then sign a sworn declaration stating that nothing responsive to the subpoena exists.

That UT's employee is unwilling to even search her personal emails suggests strongly that there is something in them that will damage UT's case—and that UT and its lawyers already know this. Perhaps Kamm coordinated her denunciation with other UT employees, or perhaps she was encouraged by Defendants, Hartzell, or their intermediaries to denounce Lowery because that would provide a pretext for them to move against Lowery. Indeed, UT administrator Jeff Graves forwarded the anonymous denunciation to Mills and Burris on August 9, 2022, only four days after Hartzell also texted Mills and Burris about Lowery. Three days later, Mills and Burris met with Carlos Carvahlo and sought to tamp down Lowery's speech.

This Court should deny Kamm's motion to quash and instead compel her to comply with the subpoena fully and on an expedited basis.[1]

---

[1] This cross-motion was originally filed as part of Plaintiff's response to Kamm's motion to quash her subpoena. *See* Dkt. 66, 69. The Clerk's office filed a deficiency notice (Dkt. 70) citing to Administrative Policies and Procedures Section 3g, allegedly because Plaintiff's filing (Dkt. 69) contained "multiple pleadings." We are hereby complying with the Clerk's directive and re-filing our cross-motion as a separate motion. The motion to quash and cross-motion to compel compliance to the Kamm subpoena are nevertheless inextricably intertwined motions and should be considered together. They rely on the same arguments and evidence.

## FACTS AND BACKGROUND

The essential facts of this case are by now known to the Court and were recently covered in pending motions before the Court. Dkt. 60 at 4-7; Dkt. 68 at 5-7; *see also* Dkt. 1. In the interest of brevity, Lowery will not duplicate those recitations.

Of particular relevance to this motion is the role of Kelly Kamm, a UT faculty member who was not previously identified as a key player in this case. Lowery Dec. ¶¶ 3-4. Kamm turns out to have been the source of the anonymous email complaining about Lowery's appearance on the Hanania podcast. Lowery Dec. ¶ 3; Kolde Dec. ¶¶ 2-8; Exs. A, B. What remains unknown is whether Kamm is linked to any previously known key players such as Defendants, Jay Hartzell, Nancy Brazzil, Richard Flores, Meetha Kothare, Justin Dyer, Laura Starks, or any of their known associates. Lowery Dec. ¶¶ 8-12. Lowery, understandably, wants to find out. Lowery Dec. ¶¶ 6-8, 13.

During early discovery, Mills and Burris testified in DWQ answers that, on August 9, 2022, UT's Chief Compliance Officer, Jeff Graves, forwarded an anonymous complaint email to them which accused Lowery of violating the university's standards of ethics and respect during a podcast interview that Lowery gave in mid-July. Dkt. 31-2 at 4; Dkt. 31-3 at 4; Ex. A. Graves asked Mills and Burris to review the podcast as a personnel issue, but Burris had already watched part of the podcast a few days earlier. *See* Dkt. 31-3 at 4. Mills and Burris, however, met in person "on or around August 9, 2022" to discuss "how Dr. Lowery impaired the [UT] Salem Center's operations," how "to stop [Lowery] urging his supporters not to donate money to UT" through his public speech, and "how to address such expectations with Lowery's supervisor at the Salem Center, Professor Carlos Carvalho." Dkt. 31-2 at 4; Dkt. 31-3 at 4. Three days later, Mills and Burris met

3

with Carvalho, to pressure him, as discussed above. Dkt. 8-1, ¶¶ 43-45, 58; Dkt. 8-2, ¶¶ 6-11.

Burris' and Mills' own testimonies strongly imply that the then-anonymous complaint played some role in catalyzing UT's silencing of Lowery—a complaint UT now admits Kelly Kamm wrote. *See* Dkt. 66 at 7. As a result, once Lowery received a copy of the email during discovery, he subpoenaed Yahoo for information about the sender account: mccombsprof@yahoo.com. Kolde Dec. ¶¶ 5-6. On December 11, 2023, Yahoo responded that an unknown person created this account on the evening of July 27, 2022—shortly before the anonymous complaint was sent—using a particular verified phone number.. Kolde Dec. ¶ 7-8; Ex. B. Plaintiff quickly determined that this was Kelly Kamm's public-facing phone number, for she openly lists it on her UT faculty website. Kolde Dec. ¶ 8; https://perma.cc/3WYV-5H3C. Plaintiff contacted counsel for UT on December 11, to determine if they would accept a subpoena on Kamm's behalf, which they agreed to do only on December 18. *Id.* Although Kamm is not a party, Defendants' counsel filed a facial motion to quash her subpoena on January 2, 2022. Dkt. 66.

## ARGUMENT

I. KAMM FAILS TO MEET HER HEAVY BURDEN TO QUASH THIS SUBPOENA

The Federal Rules command nonparties "to produce documents, electronically stored information, or tangible things" required by a subpoena and threatens contempt if they disobey. FED. R. CIV. P. 45(a)(1)(D), (g). Courts "must quash or modify a subpoena that . . . subjects a person to *undue burden*," FED. R. CIV. P. 45(d)(3)(iv) (emphasis added), but quashing is "an extraordinary measure that is usually inappropriate absent extraordinary circumstances." *Medina v. Schnatter*, No. 1-22-CV-498-LY, 2022 U.S. Dist. LEXIS 106547, at *4 (W.D. Tex. June 15, 2022). "Generally, modification of a subpoena is preferable to quashing it outright."

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818, 821 (5th Cir. 2004) (reversing district court's quashing of overbroad subpoena and narrowing subpoena instead).

Moreover, the burden of proof on a motion to quash rests on Kamm, the person objecting to the subpoena. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475 (5th Cir. 2022); *see also Wiwa*, 392 F.3d at 818 (moving party must demonstrate "that compliance with the subpoena would be unreasonable and oppressive") (internal quotation omitted). The movant must "state with specificity the grounds for objecting" and "whether any responsive materials are being withheld." *Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 593 (N.D. Tex. 2017). Additionally, the movant "must show how the requested discovery is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Hoeflein v. Crescent Drilling & Prod.*, No. SA-19-CV-01194-FB, 2020 U.S. Dist. LEXIS 241474, at *8 (W.D. Tex. Dec. 23, 2020). Thus, nonparties like Kamm who seek to quash a subpoena outright bear a "heavy burden," *Williams v. City of Dallas*, 178 F.R.D. 103, 109–110 (N.D. Tex. 1998), requiring (1) specific allegations of burden and (2) the submission of evidence supporting those allegations. Kamm has supplied neither.

    II.    KAMM'S FACIAL MOTION CONTAINS BOILERPLATE OBJECTIONS, UNSUPPORTED BY EVIDENCE OF UNDUE BURDEN

UT's lawyers, acting for Kamm, seek to quash her subpoena exclusively on facial grounds. *See* Dkt. 66. "General or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)." *Total Rx Care*, 318 F.R.D. at 593. Yet, Kamm does not submit any declaration, affidavits, or other evidence (beyond the text of the subpoena itself) and does not attempt to make a particularized showing that compliance would burden her in any special way. *See* Dkt. 66. She never states—let

5

alone, *demonstrates with evidence*—how many responsive documents are withheld, how long it would take to gather these, how expensive a search would be, or why complying with her ordinary court duties would "harass" her. *See id.* at 6. This Court should reject Kamm's invitation to stand established case law on its head and presume burden, based on speculation.

Courts modify or quash subpoenas after detailed evidence of excessive costs in time or money. *See, e.g., Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (not quashing despite evidence that compliance "would require at least sixty hours of work" and cost around $50,000); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, No. 1-15-CV-134 RP, 2016 U.S. Dist. LEXIS 6972, at *6 (W.D. Tex. Jan. 21, 2016) (no undue burden despite affidavit stating search would require "use of fork lifts" and "weeks of man hours"); *Williams*, 178 F.R.D. at 112 (modifying after proof that compliance would cost approximately $9000).

Contrary to her legal burden, Kamm offered *no* evidence of time or expense. Instead, according to Kamm, the "substantial burden" is that "she must search through private communications to potentially turn them over." *Id.* at 7. Put another way, Kamm asserts that the subpoena is unreasonable and oppressive simply because it is a subpoena.[2]

### III. THE CHALLENGED SUBPOENA SEEKS A PARTICULARIZED GROUP OF DOCUMENTS, WITH A NARROW SUBJECT MATTER AND TIME PERIOD

The subpoena at issue focused on a highly specific category of documents related to Lowery's chilled speech claim. Moreover, the mccombsprof@yahoo.com account has only existed since July 2022, and as to any older personal accounts, Lowery's

---

[2] Kamm also suggests that, because the First Amendment protects anonymity in some situations, some unnamed privilege protects her emails about Lowery, now that she is no longer anonymous. *See* Dkt. 66 at 7-8. But Kamm provides no legal authority supporting her proposition.

6

complaint only mentions his speech from Dec. 2021 onward. Indeed, Lowery and Kamm barely have any contact and Kamm is not involved with his work or the Salem Center. Lowery Dec. ¶¶ 4-6. It would be surprising if there were more than a handful of emails about Lowery in her accounts.

Courts find overbreadth when a subpoena seeks "all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless of date; the requests are not particularized; and the period covered by the requests is unlimited." *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 706–707 (N.D. Tex. 2017) (cleaned up). In contrast, the Kamm subpoena only seeks communications "concerning Richard Lowery, his appearance on the Richard Hanania hosted podcast, or any Tweet or online article authored by Lowery" and only if those communications were associated with one of Kamm's email account, including her mccombsprof@yahoo.com account. Dkt. 66-1 at 2. These topics are self-evidently relevant to Lowery's claim and the assertion that Kamm would not know what to look for or where to search is difficult to take seriously. Perhaps she should start with the search term "Lowery" and search all of her non-kelly.kamm@mccombs.utexas.edu accounts.

Furthermore, the subpoena sought documents from a narrow time frame, as its topics and context revealed. The earliest tweet or public writing referenced in the complaint was published on December 21, 2021. *See* Dkt. 1, ¶ 11. Lowery appeared on the Hanania podcast in July 2022. *Id.*, ¶ 23. And, according to Yahoo, Kamm only created her mccombsprof@yahoo.com account on July 27, 2022 and logged into it most recently on September 3, 2023—a period of barely over a year. Kolde Dec. ¶ 6; Exs. A, B.

The language and context of the subpoena, therefore, specified a limited time frame of approximately two years—from December 2021 until the present—a length

7

of time that is not unduly burdensome under Fifth Circuit precedent. *See, e.g., Edgefield Holdings v. Gilbert*, No. 3:17-mc-74-N-BN, 2018 U.S. Dist. LEXIS 34239, at *40 (N.D. Tex. Mar. 2, 2018) (upholding subpoena for five years of records); *In re Investigation of Bay Ingram*, No. 12-431, 2012 U.S. Dist. LEXIS 185984, at *14 (E.D. La. Feb. 29, 2012) (upholding subpoena for six years of records); *Stogner v. Sturdivant*, No. 10-125-JJB-CN, 2011 U.S. Dist. LEXIS 107571, at *21 (M.D. La. Sep. 21, 2011) (upholding subpoena for ten years of records). If, however, Kamm's lawyers did not understand this time frame, Lowery can stipulate that no communications need be produced from any of her personal accounts if they were dated before December 21, 2021.

    IV.    KAMM'S PERSONAL EMAILS ABOUT LOWERY COULD CONNECT HER TO KEY PLAYERS IN THIS CASE

Lowery is entitled to probe whether Kamm's responsive emails show that UT employees worked together to chill his public speech because they did not like what he was saying. It does not matter if such communications happened before or after Lowery began self-censoring, or were known to Lowery at that time or not. If Kamm emailed with others about Lowery's speech, those emails are discoverable, and could serve to corroborate Lowery's claim that he feared consequences, that there was a campaign to silence him, as well as his own prior testimony, and Carlos Carvalho's testimony.[3] *See* Dkt. 1 at 2. And although they are not yet named as Defendants (and may never be), Lowery also pointed out that others—such as Meeta Kothare and Laura Starks—were involved in the campaign to get him to stop tweeting. *See*

---

[3] *See, e.g., Muslow v. La. State Univ.*, No. 22-30585, 2023 U.S. App. LEXIS 22501, at *26 (5th Cir. Aug. 24, 2023) (corroborating evidence may support objectively reasonable belief); *Jianhui Sun v. Barr,* 754 F. App'x 294, 295 (5th Cir. 2019) (asylum applicants may offer corroboration of objective reasonable fear)..

8

*id.*, ¶¶ 30, 45-51, 56; Lowery Dec. ¶¶ 8-12 Indeed, it is likely that Starks and Kamm know each other. Lowery Dec. ¶¶ 9.

"For purposes of the undue burden test, relevance [of subpoenas] is measured according to Fed. R. Civ. Pro. 26(b)(1)." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). Material must be produced if it is "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Leonard*, 38 F.4th at 489 (subpoenaed information relevant if it "bears on, or [] reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party") (internal quotation omitted).

Kamm's emails are relevant even if Lowery did know of them when he began self-censoring and even if they post-date Lowery's self-censoring, because they may reveal who was involved in this campaign of silencing, how and why this campaign began, and what public speech by Lowery angered UT. As discussed above, Kamm's anonymous complaint seems to have, in part, catalyzed other UT officials into pressuring Carvalho and Lowery. *See* Dkt. 31-2 at 4; Dkt. 31-3 at 4. Moreover, although Kamm's counsel claim that there are no responsive emails between Kamm and any defendant, they refused to tell us if Kamm emailed about Lowery with Meeta Kothare, Laura Starks, Richard Flores, Nancy Brazzil, or any other employee connected to UT administrators. Kolde Dec. ¶ 11; Lowery Dec. ¶ 12. And this effort to block access to Kamm's emails should be viewed in the context of UT's wider effort to starve Lowery of information that is relevant to his claim. *See* Dkt. 68.

V. KAMM'S EMAILS CANNOT BE OBTAINED FROM ANY OTHER SOURCE

Lowery cannot learn the information contained in Kamm's emails from UT's official emails or any other reasonably available source because they are Kamm's personal email accounts, which, absent evidence to the contrary, only she has direct access to. Moreover, public employees should not be allowed to circumvent the

9

discovery process by using private email accounts to plan, discuss, or coordinate censorship with other public employees.

Courts may quash nonparty subpoenas when "the party seeking the information can *easily* obtain the same information without burdening the nonparty." *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) (emphasis added). However, parties may use third party subpoenas to acquire information available elsewhere, if it "more convenient, less burdensome, or less expensive" to obtain the information from that third party. *In re Exxon Valdez*, 142 F.R.D. 380, 382 (D.D.C. 1992); *see also Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 702 n.2 (E.D. Mich. 2021) (denying motion to quash third party subpoena, although defendants also possessed information, as "obtaining relevant information from third parties better ensures the discovery is full and complete").

In this case, Lowery has no other easily accessible source for information in Kamm's emails. Kamm's own lawyers maintain that UT itself only possesses "4-5" of the emails responsive to the subpoena (those Kamm sent to UT as "mccombsprof"). Kolde Dec. ¶ 13. And her lawyers have provided no information about how many more responsive emails exist. *See id*; Dkt. 66 at 8. Kamm—not Lowery—bears the burden of demonstrating the subpoena is oppressive. *Wiwa*, 392 F.3d at 818. Lowery subpoenaed all Kamm's emails concerning Lowery from her personal accounts, not her UT account, precisely because only she has access to the accounts.

## Conclusion

This Court should grant Lowery's cross-motion to compel Kamm to produce the communications demanded by the subpoena.

| Respectfully submitted, | Dated: January 8, 2024 |
|---|---|
| *s/Endel Kolde* | *s/Michael E. Lovins* |
| Endel Kolde | Michael E. Lovins |
| Washington Bar No. 25155 | Texas Bar No. 24032555 |
| Courtney Corbello | LOVINS | TROSLCAIR, PLLC |
| Texas Bar No. 24097533 | 1301 S. Cap. Of Texas |
| INSTITUTE FOR FREE SPEECH | Building A Suite 136 |
| 1150 Connecticut Ave., NW | Austin, Texas 78746 |
| Suite 801 | Tel: (512) 535-1649 |
| Washington, D.C. 20036 | Fax: (214) 972-1047 |
| Tel: (202) 301-1664 | michael@lovinslaw.com |
| Fax: (202) 301-3399 | |
| dkolde@ifs.org | |
| ccorbello@ifs.org | |

*Counsel for Richard Lowery*

11