**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| RICHARD LOWERY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | Case No. 1:23-CV-00129-DAE |
| | § | |
| LILLIAN MILLS, in her official capacity | § | |
| as Dean of the McCombs School of | § | |
| Business at the University of Texas at | § | |
| Austin; ETHAN BURRIS, in his official | § | |
| capacity as Senior Associate Dean for | § | |
| Academic Affairs of the McCombs School | § | |
| of Business at the University of Texas- | § | |
| Austin; and CLEMENS SIALM, in his | § | |
| official capacity as Finance Department | § | |
| Chair for the McCombs School of | § | |
| Business at the University of Texas- | § | |
| Austin, | § | |
| | § | |
| DEFENDANTS. | § | |

**NON-PARTY KELLY KAMM'S REPLY BRIEF IN SUPPORT OF HER OPPOSED**
**MOTION TO QUASH AND FOR PROTECTION FROM PLAINTIFF'S SUBPOENA TO**
**PRODUCE DOCUMENTS**

Non-party Dr. Kelly Kamm respectfully submits this reply brief in support of her motion

seeking a protective order quashing the subpoena served on December 18, 2023.

## INTRODUCTION

Plaintiff Richard Lowery seeks documents from non-party Kelly Kamm that, if they exist,

either: (1) would be irrelevant to his self-chilled-speech claim or (2) are documents he has not even

attempted to show could not be obtained from Defendants. Worse, he does so in spite of already

having obtained from Defendants both (1) the entirety of Kamm's email communications related to

the anonymously reported concerns about one of Lowery's video podcasts with Richard Hanania and

(2) testimony that Defendants have never spoken to Kamm about Lowery's speech. Indeed,

Defendants did not know the identity of the anonymous email writer until Lowery obtained that

information from Yahoo. *See* Dkt. 69 at 1 (Lowery's response stating that he exposed Kamm as the anonymous emailer). And after Lowery filed his response to Kamm's motion to quash last week,[1] Defendants timely provided additional discovery responses confirming, once again, that there is no coordinated University effort to silence Lowery. Lowery's insistence that Kamm be compelled to comply with the subpoena in the face of all of this shows that his purpose is to punish Kamm for submitting an anonymous report about his appearance on the Hanania podcast, rather than to obtain relevant discovery that will help resolve this case. The Court should quash the subpoena.

## ARGUMENT

Kamm's motion demonstrated that the subpoena seeks irrelevant documents having nothing to do with Lowery's self-chilled-speech claim, is overbroad, is unbound by any time limitation,[2] and is too imprecise to command compliance. *See generally* Dkt. 66. It thus imposes an "undue burden." *E.g.*, *Pinn v. Consumer Credit Couns. Found., Inc.*, 2023 WL 7288745, *3, Case No. 1:23-mc-0974 (W.D. Tex. Nov. 3, 2023) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *Rembrandt Patent Innovations v. Apple, Inc.*, 2015 WL 4393581, *1, No. 1:15-cv-438 (W.D. Tex. July 15, 2015) (also citing *Wiwa*). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818; *id.* (articulating the factors to be considered in the undue-burden analysis). And "the question of undue burden on a non-party requires a court to balance the subpoena's benefits and burdens, and 'calls upon the court to consider whether the information *is*

---

[1] Lowery also filed a motion to compel Kamm's compliance with the subpoena earlier this week. Defendants' response to that motion is due on January 16, 2024.

[2] Lowery is wrong that the subpoena provides a "narrow" or "specified" "time frame" of approximately two years. Dkt. 69 at 7–8. It demands any written communication from any Kamm email account "concerning Richard Lowery" with no time qualifier. It is not the case that "Kamm's lawyers did not understand [the] time frame," Dkt. 69 at 7–8, rather, Lowery's subpoena did not include one.

*necessary and unavailable from any other source.'" Rembrandt*, 2015 WL 4393581, at *1 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004)) (emphasis added).

Unable to meet those standards, Lowery can only resort once again to spinning a conspiracy theory that the discovery process has already debunked. Specifically, Lowery demands that Kamm be "compel[led] to comply with the subpoena fully and on an expedited basis" because "[p]erhaps Kamm coordinated her denunciation with other UT employees, or perhaps she was encouraged by Defendants, [President] Hartzell, or their intermediaries to denounce Lowery because that would provide a pretext for them to move against Lowery." Dkt. 69 at 2; *see also, e.g., id.* at 9. If Lowery's conspiracy theory had any factual basis, he could prove its existence through ordinary discovery methods. Instead, Defendants' discovery responses have already disproven Lowery's theory.

1.      *Any relevant document could be obtained from Defendants, so discovery must proceed through them.*

Lowery has one claim remaining in this case: a self-chilled-speech claim against three University officials. To prevail, he must show that he chilled his own speech in August 2022 based upon an objectively reasonable fear of imminent harm, *i.e.* that Defendants would have retaliated against him had he continued to speak. Any communications relevant to that claim thus must involve Defendants and would be obtainable from them.[3] Lowery's demand for Kamm's private communications with anyone she may have communicated with about Lowery seeks irrelevant (and thus unnecessary, *see Rembrandt*, 2015 WL 4393581, at *1) documents. Similarly, Lowery's demand that Kamm be required to search all of her email accounts (including personal accounts) for irrelevant documents imposes an undue burden when Kamm neither has nor had any authority over Lowery in

---

[3] Clemens Sialm was automatically substituted for Sheridan Titman as an official-capacity Defendant after he succeeded Titman as Chair of the Finance Department in September 2023. *See* Fed. R. Civ. P. 25(d). However, Lowery's Complaint does not allege wrongdoing on Sialm's part or even mention Sialm. Thus, references herein to "Defendants" should be understood to exclude Sialm to the extent they are referring to Lowery's allegations concerning Mills, Burris, and Titman.

his tenured position or his position at the Salem Center and thus could not possibly have given Lowery an objectively reasonable fear of retaliation.

### 2. *Discovery has already debunked Lowery's conspiracy theory.*

Lowery tells the Court he needs discovery from Kamm because "perhaps she was encouraged by Defendants," Dkt. 69 at 2, and "what remains unknown is whether Kamm is linked to any previously known key players such as Defendants," *id.* at 2–3. He is wrong. And when Lowery argues that "Burris' and Mills' own testimonies strongly imply that the then-anonymous complaint played some role in catalyzing UT's silencing of Lowery," *id.* at 3, he is misleading the Court. Burris and Mills both testified that they "did not respond" when they were made aware of the anonymous email. Dkt. 31-2 at 4 (Mills); Dkt. 31-3 at 4 (Burris). And when asked to provide the names of "anyone other than Jay Hartzell" who communicated with them "concerning anything Richard Lowery said during his appearance on the Richard Hanania (CSPI podcast" or "anything that Richard Lowery wrote in any online medium," neither Mills nor Burris listed Kamm. Dkt. 31-2 at 3–4 (Mills); Dkt. 31-3 at 3–4 (Burris). Thus when Lowery filed his response to Kamm's motion, he already knew that Kamm had not communicated with Mills or Burris about Lowery's speech.

Defendants had also already produced the entirety of the email communications regarding Lowery that involve Kamm's anonymous email account. See **Ex. A** (UT-Lowery-000138–139); **Ex. B** (UT-Lowery-005307). That production confirmed that Kamm made no other written communications regarding Lowery using the anonymous email account. As a result, Lowery has all relevant communications from the Kamm controlled anonymous email account (making it unnecessary to require her to produce them a second time), and the contents of those documents make clear that Kamm's anonymous email account played no role in a conspiracy to silence Lowery.

3.      *Written discovery completed since Lowery filed his response further confirms that his subpoena is unnecessary and should be quashed.*

After Lowery filed his response to Kamm's motion to quash, Defendants' answers to Lowery's Fourth Set of Interrogatories became due, and Defendants timely answered. *See* **Ex. C** (Defendants' Amended Objections and Responses). Lowery asked in Interrogatory 17: "For the time period from June 1, 2022 to September 1, 2022, please state whether and when Kelly Kamm had an oral conversation with Laura Starks, Nancy Brazzil, Jay Hartzell, Meetha Kothare, Sheridan Titman, Lillian Mills, Ethan Burris, Alti Aydogan, or Andres Almazan concerning Richard Lowery or his speech and summarize the content of any conversation." And Defendants' response for each of those nine individuals, including Defendants, was "No." *See* **Ex. C** at 4. That response further confirmed that Kamm is not a "key player" in this case, and that she has not authored any communications that could be relevant to whether Lowery maintained an objectively reasonable fear that Defendants would retaliate against him for his public speech.

***

If Lowery's true purpose in issuing the subpoena was to determine whether Kamm has written communications beyond the anonymous email from July 27, 2022, that could be relevant to his self-chilled-speech claim against Defendants, then by now Lowery should be satisfied that she does not.[4] But if his purpose was instead to harass Kamm for anonymously criticizing his public speech, then the Court should not help him accomplish that goal. In the event that Lowery does not withdraw the subpoena and instead moves forward with his motion to compel compliance at the hearing scheduled for February 12, 2024, the Court should grant Kamm's motion to quash.

---

[4] Lowery has scheduled depositions of Mills, Burris, and Titman before the February 12 hearing on this motion. Those depositions will provide further opportunities, without burdening Kamm, for Lowery to pursue his theory that those individuals conspired with Kamm to silence Lowery.

**PRAYER**

For these reasons, and the reasons articulated in Kamm's motion, the Court should quash Lowery's subpoena served on Dr. Kelly Kamm on December 18, 2023, and enter a protective order relieving Kamm of any requirement to comply with that subpoena.

Respectfully submitted,

JACKSON WALKER L.L.P.

By:  */s/ Joel R. Glover*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
100 Congress Ave., Suite 1100
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR NON-PARTY
KELLY KAMM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

_/s/ Joel R. Glover_

Joel R. Glover