## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | Case No. 1:23-CV-00129-DAE |
| | § | |
| LILLIAN MILLS, in her official capacity | § | |
| as Dean of the McCombs School of | § | |
| Business at the University of Texas at | § | |
| Austin; ETHAN BURRIS, in his official | § | |
| capacity as Senior Associate Dean for | § | |
| Academic Affairs of the McCombs School | § | |
| of Business at the University of Texas- | § | |
| Austin; and CLEMENS SIALM, in his | § | |
| official capacity as Finance Department | § | |
| Chair for the McCombs School of | § | |
| Business at the University of Texas- | § | |
| Austin, | § | |
| | § | |
| DEFENDANTS. | § | |

## NON-PARTY KELLY KAMM'S RESPONSE IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO COMPEL COMPLIANCE WITH KAMM SUBPOENA

Non-party Dr. Kelly Kamm respectfully submits this response in opposition to Plaintiff's

Cross-Motion to Compel Compliance with Kamm Subpoena ("Cross-Motion," Dkt. 71).

## INTRODUCTION

Plaintiff Richard Lowery seeks documents from non-party Kelly Kamm that, if they exist,

either: (1) would be irrelevant to his self-chilled-speech claim or (2) are documents he has not even

attempted to show could not be obtained from Defendants.[1] Worse, he does so in spite of already

having obtained from Defendants both (1) the entirety of Kamm's email communications related to

---

[1] Dr. Kelly Kamm is a Distinguished Senior Lecturer at the McCombs School of Business; she is not part of the Dean's leadership team and has no connection to the University's central administration. Lowery acknowledges that he and Kamm "barely have any contact" and that she "is not involved with his work or the Salem Center." Cross-Motion at 7 (citing Lowery Decl. ¶¶4–6).

the anonymously reported concerns about one of Lowery's video podcasts with Richard Hanania and (2) testimony that Defendants have never spoken to Kamm about Lowery's speech. Indeed, Defendants did not know the identity of the anonymous email writer until Lowery obtained that information from Yahoo. *See* Dkt. 69 at 1 (Lowery's response to the motion to quash stating that he exposed Kamm as the anonymous emailer). After Lowery filed his response to Kamm's motion to quash the subpoena last week, Defendants timely provided additional discovery responses confirming, once again, that there is no coordinated University effort to silence Lowery. And his depositions of Mills and Burris are upcoming later this month (Titman has already been deposed), giving him yet additional opportunities to pursue his theory that Kamm conspired with Defendants to silence Lowery. Thus, Lowery does not need to impose discovery burdens on Kamm to obtain the information he seeks.

Lowery's insistence that Kamm be compelled to comply with the subpoena in the face of all of this shows that his purpose is to punish Kamm for submitting an anonymous report about his appearance on the Hanania podcast—imposing a burden on non-party Kamm *is the entire point of this subpoena*—rather than to obtain relevant discovery related to Lowery's self-chilled-speech claim that will help resolve this case. The Court should deny the motion to compel, grant Kamm's motion for protection, Dkt. 66, and quash the subpoena.

## ARGUMENT

Kamm's motion to quash and for protection demonstrated that the subpoena seeks irrelevant documents having nothing to do with Lowery's self-chilled-speech claim, is overbroad, is unbound by any time limitation,[2] and is too imprecise to command compliance. *See generally* Dkt. 66. In an attempt

---

[2] Lowery is wrong that the subpoena provides a "narrow" or "specified" "time frame" of approximately two years. Dkt. 71 at 7–8. It demands any written communication from any Kamm email account "concerning Richard Lowery" with no time qualifier. It is not the case that "Kamm's lawyers did not understand [the] time frame," Dkt. 71 at 7–8, rather, Lowery's subpoena did not include one.

to reduce the Court's burden to read duplicative pleadings, Kamm incorporates her motion, Dkt. 66, and her reply brief in support of her motion, Dkt. 74, herein by reference.

The subpoena was issued to a non-party who has no supervisory or other control over Lowery's tenured academic position or his role at the Salem Center and seeks documents that, even if they exist, have no relevance to whether Lowery has self-chilled and, if so, whether that was due to an objectively reasonable fear of retaliation. The subpoena thus imposes an "undue burden." *E.g.*, *Pinn v. Consumer Credit Couns. Found., Inc.*, 2023 WL 7288745, *3, Case No. 1:23-mc-0974 (W.D. Tex. Nov. 3, 2023) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *Rembrandt Patent Innovations v. Apple, Inc.*, 2015 WL 4393581, *1, No. 1:15-cv-438 (W.D. Tex. July 15, 2015) (also citing *Wiwa*). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818; *id.* (articulating the factors to be considered in the undue-burden analysis). And "[t]he question of undue burden on a non-party requires a court to balance the subpoena's benefits and burdens, and 'calls upon the court to consider whether the information *is necessary and unavailable from any other source.*'" *Rembrandt*, 2015 WL 4393581, at *1 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004)) (emphasis added).

Unable to meet those standards, Lowery can only resort to spinning a conspiracy theory that the discovery process has already debunked. Specifically, Lowery demands that Kamm be "compel[led] to comply with the subpoena fully and on an expedited basis" because "[p]erhaps Kamm coordinated her denunciation with other UT employees, or perhaps she was encouraged by Defendants, [President] Hartzell, or their intermediaries to denounce Lowery because that would provide a pretext for them to move against Lowery." Dkt. 71 at 2; *see also, e.g., id.* at 9. If Lowery's conspiracy theory had any factual basis, he could prove its existence through ordinary discovery methods. Instead, Defendants' discovery responses have already disproven Lowery's theory—they

show that no Defendant has communicated with Kamm about Lowery or his speech—and confirm that Lowery's continued pursuit of this discovery against Kamm is intended to harass Kamm rather than inform the parties and Court of information relevant to this case.

## I.    The Subpoena Fails the *Wiwa* Factors.

When analyzing whether a subpoena to a non-party presents an undue burden courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. And "the question of undue burden on a non-party requires a court to balance the subpoena's benefits and burdens, and 'calls upon the court to consider whether the information is necessary and unavailable from any other source.'" *Rembrandt*, 2015 WL 4393581, at *1 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004)).

*First*, Lowery seeks documents that are not relevant (factor 1), and Lowery does not need them (factor 2). Lowery has one claim remaining in his case: whether he reasonably self-chilled his speech beginning in August 2022 out of a fear of retaliation by three named University officials.[3] To prevail, he must show that he chilled his own speech in August 2022 based upon an objectively reasonable fear of imminent harm, *i.e.* that Defendants would have retaliated against him had he continued to speak. Any communications relevant to that claim thus must involve Defendants and would be obtainable from them.

---

[3] Clemens Sialm was automatically substituted for Sheridan Titman as an official-capacity Defendant after he succeeded Titman as Chair of the Finance Department in September 2023. See Fed. R. Civ. P. 25(d). However, Lowery's Complaint does not allege wrongdoing on Sialm's part or even mention Sialm. Thus, references herein to "Defendants" should be understood to exclude Sialm to the extent they are referring to Lowery's allegations concerning Mills, Burris, and Titman.

Discovery obtained from Defendants in this case has already disproven Lowery's theory that Kamm was involved in a conspiracy to silence Lowery.[4] And when Lowery argues that "Burris' and Mills' own testimonies strongly imply that the then-anonymous complaint played some role in catalyzing UT's silencing of Lowery," Dkt. 71 at 4, he is misleading the Court. Burris and Mills both testified that they "did not respond" when they were made aware of the anonymous email. Dkt. 31-2 at 4 (Mills); Dkt. 31-3 at 4 (Burris). And when asked to provide the names of "anyone other than Jay Hartzell" who communicated with them "concerning anything Richard Lowery said during his appearance on the Richard Hanania (CSPI podcast" or "anything that Richard Lowery wrote in any online medium," neither Mills nor Burris listed Kamm. Dkt. 31-2 at 3–4 (Mills); Dkt. 31-3 at 3–4 (Burris). Lowery thus already knows that Kamm has not communicated with Mills or Burris about Lowery's speech.

Defendants have also already produced the entirety of the email communications regarding Lowery that involve Kamm's anonymous email account. See **Ex. A** (UT-Lowery-000138–139); **Ex. B** (UT-Lowery-005307). That production confirmed that Kamm made no other written communications regarding Lowery using the anonymous email account. As a result, Lowery has all relevant communications from the Kamm-controlled anonymous email account (making it unnecessary to require her to produce them a second time), and the contents of those documents make clear that Kamm's anonymous email account played no role in a conspiracy to silence Lowery.

Moreover, after Lowery filed his response to Kamm's motion to quash, Defendants' answers to Lowery's Fourth Set of Interrogatories became due, and Defendants timely answered. *See* **Ex. C** (Defendants' Amended Objections and Responses). Lowery asked in Interrogatory 17: "For the time

---

[4] Lowery tells the Court he needs discovery from Kamm because "perhaps she was encouraged by Defendants," Dkt. 71 at 2, and "what remains unknown is whether Kamm is linked to any previously known key players such as Defendants," *id.* at 2–3.

period from June 1, 2022 to September 1, 2022, please state whether and when Kelly Kamm had an oral conversation with Laura Starks, Nancy Brazzil, Jay Hartzell, Meetha Kothare, Sheridan Titman, Lillian Mills, Ethan Burris, Alti Aydogan, or Andres Almazan concerning Richard Lowery or his speech and summarize the content of any conversation." And Defendants' response for each of those nine individuals, including Defendants, was "No." *Id.* at 4. That response further confirmed that Kamm is not a "key player" in this case, and that she has not authored any communications that could be relevant to whether Lowery maintained an objectively reasonable fear that Defendants would retaliate against him for his public speech.[5]

Lowery's demand for Kamm's private communications with anyone she may have communicated with about Lowery seeks irrelevant (and thus unnecessary, *see Rembrandt*, 2015 WL 4393581, at *1) documents. Similarly, Lowery's demand that Kamm be required to search all of her email accounts (including personal accounts) for irrelevant documents imposes an undue burden when Kamm neither has nor had any authority over Lowery in his tenured position or his position at the Salem Center—Kamm cannot possibly have given Lowery an objectively reasonable fear of retaliation, so to the extent they would even exist, her private emails are not relevant and Lowery does not need them.

**Second**, the subpoena's deficiencies warrant denial of the motion to compel: the subpoena is too broad (factor 3), too imprecise (factor 5), and carries no time limitation (factor 4). Facial overbreadth can alone establish an undue burden. *Wiwa*, 392 F.3d at 818. This subpoena, seeking completely irrelevant documents, the production of which would implicate competing First

---

[5] Lowery's motion suggests that Kamm's communications with non-defendants who may never become defendants, such as Meeta Kothare and Laura Starks could be relevant because they could connect Kamm to key players in this case. Cross-Motion at 8–9. Lowery is wrong about his "key players" theory of relevance, but in any event the answer to Interrogatory 17 confirms that no such communications occurred.

Amendment rights of a non-party, overbroad and the motion to compel should be denied on this basis alone. The subpoena is too imprecise because it demands written communications "concerning Richard Lowery" without making clear whether any communication that does not mention his name must be included (for example, if an email mentioned "Salem Center" would it "concern" Lowery?) The subpoena's demand from documents "concerning Richard Lowery" carries no time limitation (either explicit or implied); and even the concession in Lowery's motion that documents before December 2021 need not be produced, Dkt, 71 at 8, does not cure the defect that the subpoena seeks documents far beyond the timeframe of any relevant communications for a self-shilled speech claim that centers entirely on a few alleged events in July and August 2022.

*Third*, the issuance of the subpoena as well as Lowery's publicizing in his pleadings that Kamm was the anonymous emailer shows that Lowery intends to burden Kamm because of her anonymous speech. Requiring her to comply with this unnecessary subpoena to search for irrelevant documents would only further the substantial and unnecessary burden (factor 6) imposed on Kamm. Compliance with this subpoena would impose burdens on Kamm's rights: she must search through private communications to potentially turn them over to a colleague who has no litigation need for them, but seeks them anyway, and her exercise of her own First Amendment rights has been weaponized against her. The anonymous email that served as the basis for Lowery's subpoena was the type of email that the University receives and keeps confidentially so that faculty who wish to do so may maintain their anonymity while raising legitimate concerns to Compliance. Lowery has now turned the ability to submit an anonymous communication about the University into an invitation to have other faculty members demand to see private communications merely because they do not like your anonymous comments. The Court should reject Lowery's attempt to go down that path. *E.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) (A "decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the

freedom of speech protected by the First Amendment."); *Justice for All v. Faulkner*, 2004 WL 3957872, *10–*11, Civ. Case No. 02-ca-630 (W.D. Tex. March 3, 2004) (recognizing the "longstanding protection" of anonymous speech).

## II.    Lowery Continues To Pursue Discovery From Defendants That Would Uncover His Theory Without Burdening Kamm.

If Lowery's true purpose in issuing the subpoena was to determine whether Kamm has written communications beyond the anonymous email from July 27, 2022, that could be relevant to his self-chilled-speech claim against Defendants, then the completed discovery discussed above would satisfy Lowery that Kamm does not. But to the extent there could be any doubt at all in Lowey's mind, his upcoming depositions of Defendants Mills and Burris (and the deposition of former-Defendant Titman that has already taken place), serve as yet additional opportunities for Lowery to pursue his theory that those individuals conspired with Kamm to silence him and thus provided an objectively reasonable basis for Lowery to self-chill his speech.

Discovery obtained from Defendants has already answered Lowery's questions regarding Kamm. He has learned that Kamm played no role in a conspiracy to silence Lowery (indeed, no such conspiracy existed). And he can further confirm Kamm's lack of involvement at the scheduled depositions of Defendants Mills and Burris, which will occur before the hearing on this motion. Even if Lowery may be dissatisfied with what he has learned about Kamm's non-involvement, that does not provide a basis for imposing undue discovery burdens on non-parties. Kamm respectfully submits that she will not be the last University employee subjected to such burdens if this subpoena is enforced rather than quashed.

## PRAYER

For these reasons, and the reasons articulated in Kamm's motion for protection (Dkt. 66) and reply brief (Dkt. 74), the Court should quash Lowery's subpoena served on Dr. Kelly Kamm on

December 18, 2023, and enter a protective order relieving Kamm of any requirement to comply with that subpoena. Lowery's cross-motion to compel should be denied.

Respectfully submitted,

JACKSON WALKER LLP

By:   */s/ Joel R. Glover*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
100 Congress Ave., Suite 1100
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR NON-PARTY
KELLY KAMM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.


*/s/ Joel R. Glover*
Joel R. Glover
