UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD LOWERY,

    *Plaintiff*,

v.

LILLIAN MILLS, *et al.*,

    *Defendants*.

Case No. 1:23-cv-00129-DAE

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO ADD JAY HARTZELL AS DEFENDANT**

**RULE CV-7(G) STATEMENT**

Plaintiff conferred with counsel for Defendants on January 26, 2024, who indicated that this motion would be opposed.

## INTRODUCTION

Plaintiff Richard Lowery has long alleged that, beginning in the summer of 2022, University of Texas (UT) leaders sought to chill his public speech through a campaign of threats and pressure. But it is only in the last few months that discovery yielded additional evidence further exposing the extent of this silencing campaign, the people involved, and their reasons for silencing Lowery.

For instance, testimony and newly uncovered documents demonstrate that UT President Jay Hartzell was involved in the campaign from the start, expressing his annoyance with Lowery to Sheridan Titman on July 19, and texting Lillian Mills and Ethan Burris on August 5, shortly after which they met with Carlos Carvalho on August 12 and asked him to counsel Lowery about his speech.

As defendant Mills's notes (Dkt. 83-3)—obtained through discovery—set forth: she and Burris knew and spoke of Jay Hartzell's "position" on Lowery's speech when they met with Carvalho, and asked Carvalho to counsel Lowery so that his speech would no longer impede "functional operations" between UT centers and institutes. Mills also conveyed her "expectations for professionalism and reasonable respect for Chain of Command…" Likewise, defendant Burris testified that he repeatedly met with Carvalho, in August 2022 with the goal of stopping Lowery from expressing opinions that UT leaders viewed as "factually inaccurate," "disruptive" to university operations, and harmful to fundraising.

Additional information also shows that—as Lowery argued early in the case—UT maintains an unwritten speech code, "standards," or practice that allows administrators to counsel or discipline faculty for "uncivil" or "rude" speech. And additional evidence of this code's selective enforcement against conservative faculty (but not progressives) also emerged.

Given this new evidence, Lowery moves to amend his complaint (Exhibit C) to add new allegations, a new defendant—UT president Jay Hartzell—and a new count challenging UT's unwritten speech code or practice, both facially and as-applied.

## FACTS AND BACKGROUND

Starting in the summer of 2022, UT officials threatened Lowery and pressured him to stop publicly criticizing the university and its leaders. Dkt. 1. Because of this pressure, Lowery began to self-censor in late August 2022, and he brought this lawsuit in defense of his First Amendment rights on February 8, 2023. *Id.* From the beginning, Lowery suspected that President Jay Hartzell, was a central figure in the campaign to silence him. *See, e.g.*, Dkt. 8-1, ¶¶ 9, 11, 43; Dkt. 1, ¶¶ 9, 21-24, 36. But because Lowery possessed little direct evidence of Hartzell's involvement in February 2023, Plaintiff only named three other UT administrators as defendants. *See* Dkt. 1. Lowery sued all the defendants in their official capacity, so UT itself has always been the true defendant.[1]

In September 2023, this Court held that Lowery's original complaint sufficiently alleged that UT's state actions chilled his First Amendment rights and that UT possessed an unwritten "implicit policy" proscribing Lowery's speech. Dkt. 51 at 16-18, 20, 25-26. The Court dismissed without prejudice Lowery's second count—a First Amendment retaliation claim. *Id.* at 22-24. After a much delayed 26(f) conference on September 25, 2023, the parties commenced regular discovery. Dkt. 57 at 2.

---

[1] "An official-capacity lawsuit is 'only another way of pleading an action *against an entity* of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (emphasis added); *see also Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015). While the caption may bear the names of individual UT officials, this is functionally, and legally, a lawsuit against UT.

But discovery progressed slowly. Defendants, for instance, did not finish their productions in response to Lowery's first two sets of RFPs until December 8—over a month late. Dkt. 68 at 5-6. UT also insisted on scheduling the depositions of the three original defendants (Titman, Burris, and Mills) a month later than Plaintiff requested and, last week, unilaterally cancelled the Mills deposition. *See* Dkt. 89-1; *see also* Dkt. 68 at 6. And UT has refused to turn over many documents, filing two separate motions for protective orders, *see* Dkts. 73, 88. and forcing Plaintiff to thrice move to compel evidence, *see* Dkts. 60, 71, 91.

Despite these delays, in the last two months, Lowery acquired significant new evidence about the campaign to silence his speech and Hartzell's involvement in it. For instance, in mid-December, Plaintiff learned the identity of the person who anonymously complained to UT's compliance office that Lowery's comments while appearing on the Hanania podcast may have violated UT's standards of ethics and respect for faculty. *See* Dkt. 69 at 5-6; *cf.* Dkt. 88-2, ¶¶ 42-43. On August 9, 2022, Jeff Graves, UT's Chief Compliance Officer, who works for Hartzell, forwarded this anonymous email to defendants Mills and Burris "for review and handling" about "whether Professor Richard Lowery crossed any lines regarding ethics." Dkt. 69-3; Kolde Dec. ¶ 3; Ex. B; *see also Leadership & Staff*, OFFICE OF THE PRESIDENT (Feb. 1, 2024), https://perma.cc/MW9P-V4NY (stating that Graves works in the Office of the President as one of Hartzell's senior staff). Three days later, Mills and Burris met with Carvalho.

Defendant Burris testified only two weeks ago that his goal for the August 12 meeting was to get Carlos Carvalho to "counsel" Lowery so that he would no longer make comments that discouraged donations and were "disruptive to university operations" or that "taxpayer money was stolen by grifters or the president is paid

to be good at lying to conservative donors and politicians[.]" Dkt. 83-4, 156:22-157:14; *cf.* Dkt. 88-2, ¶¶ 57, 121, 127.

And Sheridan Titman recently confirmed that Jay Hartzell was "annoyed" with Lowery, "grumble[d] [to Titman] about something that Richard said," and "mention[ed] that Richard was being a pain" on July 19, the day after Lowery's appearance on the Hanania podcast. Kolde Dec., Ex. A (Titman Dep.) 100:11-102:14, 113:2-14; *cf.* Dkt. 60-5 at 4 (interrogatory response formerly claiming that Titman could "not recall" if his July 19 conversation with Hartzell concerned Lowery's speech). Titman thought Hartzell's annoyance "makes perfect sense if it was the day after that podcast" with Richard Hanania on July 18, because during that podcast Lowery called the president "good at lying." Ex. A (Titman Dep.) 95:7-14, 101:1-2, 112:13-113:14. Yet Titman himself agreed with Lowery that, for Hartzell to do his job effectively, "[i]t certainly helps to be able to . . . bullshit the Republicans." *Id.*, 112:13-20.

Considering this and other new evidence, Lowery decided to move to amend his complaint, to crystalize pre-existing arguments about UT's unwritten "implicit policy" proscribing Lowery's speech, *see* Dkt. 51 at 16-17, into a second separate count. *See* Dkt. 88-2, ¶¶ 117-29. Lowery also seeks leave to join Jay Hartzell as a defendant. *Id.*, ¶¶ 4, 44-51, 54, 60, 106-07. And, if granted leave, Lowery would add new factual allegations, especially about fundraising problems that Lowery's speech caused, the anonymous denunciation email, and Lowery's opinion that UT leaders, and especially Hartzell, act hypocritically in supporting DEI ideology. *Id.*, ¶¶ 12-14, 17-19, 40-43, 63-67; *see also* Dkt. 77-1.[2]

---

[2] Lowery's declaration about the nepotism allegations acts as an offer of proof as to what Plaintiff reasonably believes Carvalho will testify to, once deposed. Plaintiff properly noticed Carvalho's deposition in order to obtain his testimony before filing this motion, but the deposition was quashed at UT insistence. Dkt. 87.

Plaintiff's counsel provided Lowery's proposed amended complaint to Defendants, *see* Dkt. 88-3; Ex. C (Amended Complaint redline), and spoke with Defendants' counsel about it at conferences on January 19 and again on January 26. Kolde Dec. ¶ 4. UT stated that this motion for leave to amend would be opposed. *Id*.

## ARGUMENT

### I.   LOWERY'S MOTION TO AMEND ENJOYS THE PRESUMPTION IN FAVOR OF AMENDMENT

Lowery's motion for leave to amend easily satisfies the Fifth Circuit's permissive amendment standard. "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Johnson v. Epp*s, 479 F. App'x 583, 588 (5th Cir. 2012) (citation omitted). Whether a plaintiff seeks to amend a complaint by adding new allegations, new claims, new parties, or all three, Rule 15's liberal standard applies. *See, e.g.*, *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021); *Bibbs v. Early*, 541 F.3d 267, 274 & n.39 (5th Cir. 2008); *Ware v. Autozoners, LLC*, No. 21-00067, 2022 U.S. Dist. LEXIS 80690, at *5 (S.D. Tex. May 4, 2022); *Pittman v. Seterus, Inc.*, Civil Action No. 3:18-CV-3076-M-BH, 2019 U.S. Dist. LEXIS 97795, at *6 (N.D. Tex. May 13, 2019).

Rule 15 "evinces a bias in favor of granting leave to amend," directing that courts "should freely give leave when justice so requires." *Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 924 (5th Cir. 2022) (citations omitted); *see also* FED. R. CIV. P. 15(a)(2). "[D]istrict courts must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dynamic*, 31 F.4th at 924 (cleaned up).

5

Courts may only deny leave to amend for "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Absent these factors, courts must grant leave to amend. *Id.* Given the presumption in favor of amendments, the party opposing amendment originally bears the burden of demonstrating that one of these flaws exists. *See Estate of Potter v. Bexar Cnty. Hosp. Dist.*, 195 F. App'x 205, 209 (5th Cir. 2006). UT cannot carry this burden.

## II.   LOWERY'S MOTION TO AMEND HIS COMPLAINT IS TIMELY

Under the current scheduling order, the deadline for motions to amend or join parties is March 2, 2024: still about a month away. Dkt. 57 at 1. A motion for leave to amend is timely "on its face," when filed before the deadline for amending pleadings. *Estate of Potter*, 195 F. App'x at 209-10 (reversing a court that denied leave to amend when leave was not requested until after a summary judgment motion). Moreover, "this is not a situation where the facts regarding the [added] claim were fully known . . . from the commencement of the suit," because Plaintiff has "conscientiously relied on its findings during the course of discovery to refine the complaint." *Id.* at 209; *see also Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985) (no delay when party "diligently sought discovery" and "asked for amendment promptly upon discovering the basis for new allegations").

Lowery only learned facts surrounding his new count and the new defendant in the last few months—especially since depositions began in January. For example, for eight months, defendants Mills and Burris falsely claimed that Jay Hartzell never texted them about Lowery during the summer of 2022, and the Defendants only corrected this misinformation in December. *Compare* Dkt. 31-2 at 8 *and* Dkt. 31-3 at 4 *with* Dkt. 60-6 at 4 *and* Dkt. 60-8 at 3 *and* Dkt. 60-9 at 3.

6

### III.   LOWERY BRINGS THIS MOTION IN GOOD FAITH

Lowery seeks to amend his complaint in good faith, without any dilatory motive or failure to cure past deficiencies. Lowery has diligently sought discovery and repeatedly pressed for the discovery process to move quicker: seeking to depose four witnesses in the last three weeks and submitting numerous RFPs. *See, e.g.*, Dkt. 88-1, Dkt. 83 at 4-6, Dkt. 68 at 5-7. The record is devoid of any of the evidence that courts demand before finding bad faith or dilatory motive. *Cf. Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139-41 (5th Cir. 1993) (affirming dismissal on bad faith due to extensive evidence that plaintiff knew of all relevant facts prior to original complaint and sought to amend many months later merely to avoid summary judgment); *SMH Enters. v. Krispy Krunchy Foods*, 340 F.R.D. 554, 561 (E.D. La. 2022) (defining a bad faith amendment as one involving fraud, intentional deception, or refusal to fulfill a duty). The new allegations, second count, and joinder of Jay Hartzell in Lowery's proposed complaint all depend heavily on newly discovered facts and could not have been brought earlier.

### IV.   LOWERY HAS NOT FAILED TO CURE PREVIOUS DEFICIENCIES

This is Lowery's first effort to amend his complaint. He has not previously filed amended complaints that failed to cure some deficiency prompting those efforts. Until now, Lowery has never amended his original complaint. "There has not been a failure to cure deficiencies through earlier amendments, as there have been no earlier amendments." *Salas v. City of Galena Park*, Nos. 21-20170, 21-20333, 2022 U.S. App. LEXIS 12709, at *20 (5th Cir. May 11, 2022).

### V.   THIS AMENDMENT WOULD NOT PREJUDICE DEFENDANTS, UNDULY OR OTHERWISE, AS THEY HAVE LONG KNOWN LOWERY'S CENTRAL THEORIES OF THE CASE AND HAVE ABUNDANT TIME LEFT FOR DISCOVERY

Lowery seeks to amend his complaint promptly, based on evidence discovered in the last few months, and well before the scheduling deadline. But even if there were

delay, "delay alone is an insufficient basis for denial of leave to amend" for the delay must be "undue"—that is, it "must prejudice the [opposing party]; for instance by preventing it from preparing for trial, or by adding a new claim after the close of discovery." *Salas*, 2022 U.S. App. LEXIS 12709, at *20 (cleaned up). The Fifth Circuit has found prejudice when a party tries to amend "after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial." *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015).

In contrast, approximately three months of discovery remain in this case, and trial is not yet scheduled. *See* Dkt. 57 at 2. No dispositive motions are pending, and such motions are not due until June 3. *Id.* UT has not even deposed any witnesses yet. *See* Dkt. 87 at 2. Defendants have ample time to gather evidence—and if Defendants desire still more time they can rescind their opposition to Plaintiff's motion to extend. *See* Dkt. 75; Dkt. 68. All delays in this case to date have been caused by Defendants' approach to opposing discovery.

Moreover, the discovery burden on UT will barely alter. Lowery's original complaint already requires UT to perform discovery into essentially all the same events, people, and theories as Lowery's amended complaint does. *See* Dkt. 88-2. Lowery "seeks primarily to add a defendant and to allege additional facts about [his] involvement in the underlying transaction of events already described in the original petition." *Salas*, 2022 U.S. App. LEXIS 12709, at *21 (finding no prejudice). Because this is an official capacity lawsuit, the true defendant is not changing—it has always been UT. *See, e.g.*, *Drabek v. Larson*, No. 93-2331, 1993 U.S. App. LEXIS 39123, at *5-6 (5th Cir. Oct. 5, 1993); *Johnson v. City of San Marcos*, No. A-14-CV-481 LY, 2014 U.S. Dist. LEXIS 157308, at *5 (W.D. Tex. May 29, 2014); *Arguijo v. Owens*, No. 4:08-CV-140-A, 2008 U.S. Dist. LEXIS 44808, at *5 (N.D. Tex.

June 9, 2008). UT cannot claim that it lacked notice of this lawsuit or was unaware that Lowery has long maintained that Jay Hartzell and the President's Office was involved. *See, e.g.*, Dkt. 68 at 8-11, Dkt. 60. This amendment will not unduly prejudice defendants.

VI.   LOWERY'S PROPOSED NEW COUNT IS NOT FUTILE

Finally, Lowery proposed complaint contains two counts, neither of which are futile. One is the First Amendment chilling claim from the original complaint, with some factual allegations added. *See* Dkt. 88-2, ¶¶ 99-116. This Court already held that this count states a plausible claim for relief. Dkt. 51.

As for the new second count, this Court has already discussed that claim—challenging UT's unwritten speech code or practice—and found that Plaintiff's original complaint sufficiently alleged it. *See id.* at 16-18. Lowery's proposed amendment simply separates this claim off into its own count, rather than leaving it as merely a part of Lowery's pre-existing chilling count.

This new claim is supported by Lowery's factual allegations and states a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). University policies transgress the First Amendment when they arguably proscribe or regulate constitutionally protected speech and there is a substantial threat of enforcement. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 332, 335 (5th Cir. 2020). And vague standards governing "rude" or "uncivil" speech cover vast amounts of First Amendment protected speech. *See id.* at 334, 337. Moreover, unconstitutional policies need not be written. Implicit policies can be enough. *Jackson v. Wright*, Civil Action No. 4:21-CV-00033, 2022 U.S. Dist. LEXIS 8684, at *20-21 (E.D. Tex. Jan. 18, 2022).

UT's unwritten speech code enables university administrators to label Lowery' criticisms of UT as "rude," "uncivil," and "disruptive to university operations," to

9

"counsel" him with the goal of preventing such speech, and to selectively enforce these standards against conservatives. Dkt. 88-2, ¶¶ 99-116. These allegations state a non-futile claim for selective enforcement of UT's implicit civility code or practice.

CONCLUSION

This Court should grant Lowery leave to amend his complaint and to add Jay Hartzell as an official capacity defendant.

Respectfully submitted,                    Dated: February 2, 2024

_s/Endel Kolde_                            _s/Michael E. Lovins_
Endel Kolde                                Michael E. Lovins
Washington Bar No. 25155                   Texas Bar No. 24032555
Courtney Corbello                          LOVINS | TROSLCAIR, PLLC
Texas Bar No. 24097533                     1301 S. Cap. Of Texas
Nathan J. Ristuccia                        Building A Suite 136
Virginia Bar No. 98372                     Austin, Texas 78746
INSTITUTE FOR FREE SPEECH                  Tel: (512) 535-1649
1150 Connecticut Ave., NW                  Fax: (214) 972-1047
Suite 801                                  michael@lovinslaw.com
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
ccorbello@ifs.org
nristuccia@ifs.org

_Counsel for Richard Lowery_