UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD LOWERY,

    *Plaintiff*,

v.

LILLIAN MILLS, *et al.*,

    *Defendants.*

Case No. 1:23-cv-00129-DAE

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO BLOCK DISCOVERY ABOUT NEPOTISM ALLEGATIONS**

INTRODUCTION

The University of Texas (UT) once again wants to stop Richard Lowery from obtaining basic evidence about his case. This time, UT contests the relevance of Lowery's discovery into allegations that President Jay Hartzell used his influence to have UT admit his son to a selective UT graduate program. But Lowery has, since the outset of this case, alleged that UT threatened his position in response to his public criticism of UT's administrators, including Lowery's op-ed faulting university officials for shielding their own children from the disadvantages imposed by race-based admissions processes. Whether Hartzell did exactly that for which Lowery criticized university officials bears on Lowery's claim that the UT tried to silence his speech.

On top of that, UT has repeatedly placed the truth of Lowery's criticisms at issue in this case, arguing that he has no right to make inaccurate or defamatory statements about university administrators. UT cannot on the one hand argue that Lowery's public statements about Hartzell and other administrators are false while refusing to produce evidence that would corroborate his claims. Lowery is entitled to defend himself against UT's argument that his speech was factually inaccurate, or perhaps even defamatory, and part of that includes demonstrating that Hartzell is dishonest and hypocritical—as Lowery has stated.

Finally, Lowery has filed a motion for leave to amend his complaint (Dkt. 94). UT wants the Court to ignore that motion and grant a protective order anyway—an implicit concession that the amended complaint makes their relevance arguments frivolous. The Court should deny the motion for a protective order with or without the amended complaint. But it should, at the very least, resolve the motion to amend first.

1

## FACTS AND BACKGROUND

*The claims and defenses in this case.*

The facts of Richard Lowery's case are well known to the Court. *See, e.g.*, Dkt. 68 at 5-7; Dkt. 60 at 4-7. Lowery alleges that over the past several years he "has repeatedly criticized UT's senior officials ("UT's Administration"), including President Jay Hartzell, and their approaches to issues such as critical-race theory indoctrination, affirmative action, academic freedom, competence-based performance measures, and the future of capitalism." Dkt. 1 at 4 (¶9). Part of that criticism has focused on the dishonest way that UT administrators promote DEI policies and affirmative action as part of the university's admissions and hiring process. *Id.* at 5 (¶12). Lowery, for example, "published a pointed criticism of race-based affirmative action in admissions at UT in the *Washington Times*." *Id.* (citing Richard Lowery, *Perpetuating racism: Why universities insist on 'affirmative action*, THE WASHINGTON TIMES (June 28, 2022), http://bit.ly/3kKNBDl)).

That op-ed article—which was part of Lowery's original Complaint filed on Feb. 8, 2023 (Dkt. 1 at 5, also filed at Dkt. 8-7)—discussed the hypocrisy of how university officials avoid the disadvantages that would ordinarily come with applying such policies to themselves or their family. Lowery, *Perpetuating racism*, http://bit.ly/3kKNBDl. Lowery wrote: "Thus, self-interested administrators find themselves in the interesting position of working hard to disadvantage in the admissions process people with the same identity profile as their own children – though, of course, this disadvantage seldom reaches to their children themselves." *Id.*

Lowery has stated under oath that he "had President Jay Hartzell in mind as an example of the category of administrator that [he] criticized" when writing this article. Dkt. 77-1 at 4 (¶14). To that end, Lowery has a credible basis to believe that

2

in December 2020, UT president Jay Hartzell—who is white—and his deputy Nancy Brazzil allegedly tried to secure special treatment for Hartzell's son in his application for admission to a UT graduate program. Dkt. 77-1 at 2–3 (¶¶4–11). That Hartzell may have sought "special, unearned privileges for his son . . . while denying those benefits to other people's children" is the exact hypocrisy that Lowery criticized in his article in the Washington Times. *See* Dkt. 77-1 at 4–5 (¶17); Lowery, *Perpetuating racism*, http://bit.ly/3kKNBDl.

Soon after Lowery penned this piece, in August 2022, UT leaders began leaning on Carlos Carvalho, Executive Director of UT's Salem Center for Policy, to stop Lowery from further criticism. Dkt. 8-2 at 2 (¶6). Defendant Burris freely admitted that he and Mills sought to get Prof. Carvalho to "counsel" Lowery to change the tone of his speech and stop making comments that they disapproved of. Dkt. 83-4 (Burris Dep.) 156:22-157:14. Carvalho understood the messages from UT administrators—which included references to President Hartzell—as "an implicit threat," aimed at stopping Lowery from exercising his First Amendment freedoms. Dkt. 8-2 at 2 (¶6). Defendant Mills's notes from one meeting with Carvalho about this issue also make repeated references to "Jay" and his "position" on Lowery's speech. Dkt. 83-3 (meeting notes) at 2. All this took place close in time to Lowery's op-ed piece in the Washington Times, and Lowery believes that "[t]he article could well have been a factor in Hartzell wanting to silence [him]." Dkt. 77-1 at 4 (¶15).

In defending against this suit, UT placed the accuracy of Lowery's criticisms front and center. Lowery moved for a preliminary injunction after filing his complaint. Dkt. 8. UT argued in response that any adverse action taken against Lowery did not violate the First Amendment because his "[p]ublic statements *defaming leaders* and sabotaging fundraising efforts impede University operations." Dkt. 14 at 11 (emphasis added). In a similar vein, Mills's notes from the August

3

2022 meeting show that they discussed counseling Lowery for "making comments that are factually inaccurate and disruptive to operations." Dkt. 83-3 at 2. Burris confirmed the same alleged issue about Lowery making "factually inaccurate" statements in his deposition. Dkt. 83-4, 156:22–157:22. And discovery in this case has already revealed that shortly before UT administrators met about their problems with Lowery, UT received a complaint from another professor accusing Lowery of making "slanderous" statements. Dkt. 69-3 at 1. Both the evidence and Defendants' filings put the accuracy of Lowery's critical speech at issue.

*The disputed discovery requests.*

UT seeks a protective order preventing Lowery from discovering information about whether President Hartzell attempted to influence UT's decision about admitting his son to the graduate program. Specifically, Lowery sent UT a handful of RFPs seeking documents related to that issue, such as any emails President Hartzell may have sent to other UT employees "suggesting that his son should receive special handling when applying for admission to a graduate program at UT." Dkt. 88-1 at 4 (RFP 20).

Lowery also asked Sheridan Titman and defendant Ethan Burris questions about this issue of nepotism during their depositions. Dkt. 83-4, 245:1-250:12; Dkt. 89-4, 88:2-92:8. Those questions—while important to Lowery's claims and defenses—were a small part of both depositions, comprising, for instance, only about 2% of the deposition of Burris's six-hour deposition. Dkt. 89 at 4; *see also* Dkt. 89-4 (Titman nepotism questions). And Sheridan Titman plainly admitted that if Hartzell used state resources to obtain favorable treatment for a family member in admission to a UT-Austin program, that would have been "inappropriate." Dkt. 89-4, 91:7-11. Ethan Burris similarly admitted that such conduct would have been "wrong." Dkt. 83-4, 250:5-9.

4

Lowery intended to ask similar questions to Defendant Mills at her deposition on January 29, 2024: a date the parties agree upon almost two months earlier. *See* Dkt. 89-2. But Defendants Mills failed to appear as scheduled so that she could avoid answering questions about this issue. Dkt. 83-2 at 2.

### ARGUMENT

UT's sole objection to Lowery's discovery is relevance. Dkt. 88 at 3–4. UT argues that the discovery is not relevant to the remaining claim in his complaint (*id.* at 3–4) and that the Court should not consider whether it is relevant to the claims in his proposed amended complaint (*id.* at 4).

UT misunderstands what qualifies as "relevant" under the Federal Rules. Rule 26(b)(1) provides that "[p]arties may obtain discovery about any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See also LULAC v. Abbott*, 2022 U.S. Dist. LEXIS 150422, at *6-7 (W.D. Tex. Aug. 22, 2022) (citations omitted). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). This is a "low bar." *Medina v. Schnatter*, 1:22-cv-498, 2022 U.S. Dist. LEXIS 106547, at *7 (W.D. Tex. June 15, 2022). "Once the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *Id.* at *3 (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011)). Moreover, UT opened the door to this evidence, by aggressively asserting that Lowery's statements about Hartzell were inaccurate or worse—disparaging or defamatory.

I. **WHETHER PRESIDENT HARTZELL ENGAGED IN THE KIND OF HYPOCRISY THAT LOWERY CRITICIZED IS RELEVANT TO BOTH LOWERY'S CLAIMS AND UT'S DEFENSE**

Discovery about whether President Hartzell secured special treatment for his son while simultaneously advocating for affirmative action and other DEI policies that disadvantage others is relevant to this case in two ways.

*First*, the issue relates to Lowery's claim that UT sought to censor him for criticizing UT administrators for being dishonest and promoting harmful DEI policies, among other things. Dkt. 1 at 4 (¶9). Lowery's criticism includes the op-ed he wrote, which faulted proponents of affirmative action (like Hartzell) for promoting policies that *should* disadvantage their own families too, but "seldom reach[] to their children themselves." Lowery, *Perpetuating racism*, http://bit.ly/3kKNBDl. It takes little imagination to see that if Hartzell himself engaged in the exact kind of dishonest practice that Lowery criticized in the Washington Times, that fact would support Lowery's theory that UT administrators wanted to stop Lowery from speaking out about this issue. Indeed, Hartzell knows that Lowery is friends with Carvalho, whom Hartzell allegedly used to contact the UT Philosophy Department on behalf of his son. *See* Dkt. 77-1 at 4 ("Hartzell and other UT leaders are aware that Carlos and I have a close relationship, so it is plausible that UT leaders realized that Carlos had told me about Robert's admission.").

Thus, evidence showing that Hartzell used his influence to benefit his son in the admissions process directly relates to Lowery's claim that UT sought to suppress Lowery's speech about how university officials hypocritically promote DEI while skirting the disadvantages themselves. If it turns out that there is no such evidence, then UT has nothing to worry about here. It should not be much work to locate a handful of emails from 2020, all of which are likely still on UT's servers.

*Second*, UT has put the accuracy of Lowery's criticisms at issue. Lowery has criticized Hartzell and other UT administrators for dishonesty in the way they promote DEI policies and publicly represent themselves. UT has responded in this suit by claiming that Lowery's criticisms of UT and its administrators are inaccurate, "false," "disparaging," and defamatory. *See* Dkt. 14 at 11, 18; Dkt. 14-2 at 3; Dkt. 83-3 at 2; Dkt. 83-4, 156:22–157:22. Under UT's theory, its administrators were authorized to reprimand or "counsel" Lowery because his speech was false and disruptive to university operations. Dkt. 14 at 11, 18.[1]

But that defense places the truth of Lowery's criticism directly at issue. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401. Lowery is entitled to prove that UT administrators (including Hartzell) dishonestly promote DEI policies within the university. Thus, evidence that Hartzell used his influence to advantage his son while supporting affirmative action policies that disadvantage other similarly situated persons is relevant to responding to UT's defense.

UT argues otherwise by framing Lowery's allegations too narrowly. They contend that the discovery is irrelevant because "nothing in Lowery's complaint mentions this supposed incident" of nepotism. Dkt. 88 at 3. But Rule 26(b)(1) is not limited to discovery only about the specific facts pleaded in a complaint. "Relevant information encompasses any matter that bears on, or that reasonably could lead to

---

[1] Similarly, if UT intends to double down on labeling Lowery's speech as "defamatory" toward Hartzell, that only increases the relevancy of the evidence concerning the nepotism allegations. Truth is a defense to defamation claims. *See Delta Air Lines v. Norris,* 949 S.W.2d 422, 427 (Tex. App. 1997) (reversing denial of MSJ: "[b]ecause we have found that the statements sued upon were either not defamatory or were substantially true[.]").

other matters that could bear on, any issue that is or may be in the case." *Allen v. Priority Energy Servs., LLC*, 2017 U.S. Dist. LEXIS 229525, at *15 (W.D. Tex. Jan. 30, 2017) (quotation marks omitted). "It must be clear that the information sought has *no possible bearing* on the claim or defense of a party for the court to deny the request for discovery." *Id.* at *16 (emphasis added).

UT cannot meet that burden here. The fact that Hartzell may have engaged in the misconduct that Lowery criticized bears on whether UT officials tried to silence Lowery from further criticism. And the fact that UT has claimed Lowery's statements are inaccurate and defamatory puts the truth of his criticism squarely at issue. Put simply, Lowery is entitled to prove that university administrators like Hartzell do in fact shield their own family from the disadvantages of affirmative action and other DEI policies while ensuring that those same disadvantages apply to others. And if it turns out that Lowery's information about Hartzell's actions are not accurate, then UT has nothing to fear from learning the truth. That UT has moved so aggressively to block all inquiry into this topic (*see also* Dkt. 81 and 87, blocking access to a witness with personal knowledge) suggests UT is worried about what the evidence will show.

UT makes two more brief arguments about relevance—both wrong. *First*, it contends that the discovery about Hartzell's nepotism is not relevant because neither Burris nor Titman confirmed the allegations in their depositions. Dkt. 88 at 4. But that only makes the discovery *more* relevant, as documents or testimony corroborating the information Lowery has heard would cast doubt on their credibility. *See Ramos v. Capitan Corp.*, 2017 U.S. Dist. LEXIS 66563, at *7 (W.D. Tex. Feb. 2, 2017). In any event, UT's theory that discovery should stop if the first source of potential information comes up short has no support in the federal rules. *Second*, UT claims that Lowery's counsel "admitted that the fifth set of discovery

8

requests are based on the amended complaint that he plans to seek leave to file." Dkt. 88 at 4. Not so. While it's true that the discovery requests would *also* be relevant to the amended complaint, Lowery's never suggested that the requests are solely "based on" or dependent on Lowery's proposed amendments. As explained above, the discovery relates to Lowery's current complaint in multiple ways and the Washington Times op-ed was part of Lowery's original complaint.

    II.    LOWERY IS NOT SEEKING DISCOVERY FOR THE PURPOSE OF FINDING NEW CLAIMS

Contrary to UT's claim, Lowery is not pursuing this discovery to find evidence to justify amending his complaint. Dkt. 88 at 4–5. In fact, Lowery has *already* filed his motion for leave to amend based on the information he has. *See* Dkts. 94, 94-4. The Court can (and should) deny the protective order without reference to the amended complaint at all.

True, Lowery's proposed amended complaint makes this discovery even more relevant than it already is. Unlike his initial complaint, Lowery seeks to name Hartzell as a defendant. Dkt. 94 at 6; Dkt. 94-4 at 3 (¶ 4). The new complaint would also add specific allegations about Hartzell's hypocrisy, *id.* at 5 (¶12) & 7 (¶¶17-19), as well as Hartzell's targeting of Lowery, *id.* at 15 (¶46); 28-29 (¶¶106-07); & 30-31 (¶118).

Virtually all of UT's arguments in favor of a protective order would be vitiated by filing the proposed amended complaint. Thus, even if the Court determined that the sought-after information is not relevant to Lowery's initial complaint, it should defer deciding on the motion for a protective order until it resolves the motion to amend. Otherwise, Lowery could find himself in the position of being prohibited from conducting discovery on issues obviously relevant to his amended complaint.

9

**CONCLUSION**

This Court should deny UT's motion for a protective order (Dkt. 88) and allow Lowery to conduct reasonable and proportionate discovery into the Hartzell nepotism allegations.

| | |
|---|---|
| Respectfully submitted, | Dated: February 2, 2024 |
| *s/Endel Kolde* | *s/Michael E. Lovins* |
| Endel Kolde | Michael E. Lovins |
| Washington Bar No. 25155 | Texas Bar No. 24032555 |
| Courtney Corbello | LOVINS \| TROSLCAIR, PLLC |
| Texas Bar No. 24097533 | 1301 S. Cap. Of Texas |
| Nathan J. Ristuccia | Building A Suite 136 |
| Virginia Bar No. 98372 | Austin, Texas 78746 |
| INSTITUTE FOR FREE SPEECH | Tel: (512) 535-1649 |
| 1150 Connecticut Ave., NW | Fax: (214) 972-1047 |
| Suite 801 | michael@lovinslaw.com |
| Washington, D.C. 20036 | |
| Tel: (202) 301-1664 | |
| Fax: (202) 301-3399 | |
| dkolde@ifs.org | |
| ccorbello@ifs.org | |
| nristuccia@ifs.org | |

*Counsel for Richard Lowery*