UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD LOWERY,

    *Plaintiff*,

v.

LILLIAN MILLS, *et al.*,

    *Defendants*.

Case No. 1:23-cv-00129-DAE

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL RE: PLAINTIFF'S SECOND LOG**

## INTRODUCTION

The University of Texas (UT) believes that the ordinary rules of discovery do not apply to it. Thus, since the beginning of this year alone, it has unilaterally cancelled one deposition, made improper objections at another, changed information it formerly gave under the penalty of perjury, and refused to hand over, or even search for, relevant documents. Now, UT has decided that it can ignore the local rules of the Western District of Texas by filing a motion without first conferring with Plaintiff in good faith to resolve the dispute. UT's so-called "supplemental motion," moreover, attempts to circumvent this Court's order barring new motions from the February 13 hearing. This Court should deny UT's motion for these reasons alone.

Moreover, even if UT had followed the rules of procedure and this Court's order, its motion to compel is meritless. Lowery's second objective log supplies far more information than UT's own log in this case and easily demonstrates that the withheld communications are attorney work product prepared during litigation. UT's motion is more about harassing Lowery and his counsel and distracting them with tedious busy work, rather than prosecuting the case.

This Court should deny UT's motion to compel, because Lowery's objective log shows that the emails at issue were properly withheld under the work product doctrine.

## FACTS AND BACKGROUND

The facts of this case are well known to the Court by now. *See, e.g.*, Dkt. 68 at 5-7; Dkt. 60 at 4-7; Dkt. 1. Plaintiff will only review facts relevant to this motion.

This case entered discovery in late September 2023. *See* Dkt. 57 at 2. Discovery has proved contentious, with both parties filing discovery motions. *See, e.g.*, Dkt. 88, Dkt. 73, Dkt. 60. Notably, Plaintiff provided his first set of objective privilege logs on December 8, 2023, in response to UT's first set of Requests for Production

1

[RFPs]. *See* Dkt. 64-4; Dkt. 64 at 4-5. Defendants assert that these logs do not satisfy Rule 26. Dkt. 62 at 3-4. Thus, after conferring with Lowery's counsel on December 14, Defendants filed a pending motion to compel Lowery to supplement his logs on December 22. *See* Dkt. 64 at 2, 6; Dkt. 62.

Meanwhile, discovery continued. Defendants sent Plaintiff a second set of fifteen RFPs on December 21, seeking—among other things— "any communications with any third party, either from you [Richard Lowery] or your counsel" regarding this lawsuit, any of the defendants, or UT President Jay Hartzell "from February 7, 2020 to present." Kolde Dec., Ex. A (second RFPs). On January 22, 2024, Lowery responded to these RFPs, objecting that many requests were vague, disproportional, and sought communications protected by attorney-client privilege and work-product doctrine. Dkt. 93-2. Nevertheless, Lowery produced more than sixty pages of responsive documents, including all communications with journalists and one email thread with an outside attorney. *Id.*; Kolde Dec., Ex. B (January 22 email).

Lowery, however, withheld as work product approximately 160 emails between his retained counsel and three outside attorneys (Louis Bonham, Brent Perry, and Andrei Popovici) whom Lowery's counsel had consulted "for the purposes of gathering information that would be helpful for this litigation and planning litigation strategy." Dkt. 93-2 at 3; *see also* Dkt. 93-1 (listing these "[o]utside attorneys consulted by counsel"). Instead, Lowery supplied a second objective log, covering these emails. Dkt. 93-1. Plaintiff also offered to produce any of the attachments to these emails, because these attachments (also described on the log) were not work product but consisted mostly of filings before this Court. Dkt. 93-1; Dkt. 93-2 at 4; Ex. B.

On January 26, parties conferred to discuss various disputes. Kolde Dec. ¶ 2; *see also* Dkt. 91 at 2, 6; Dkt. 89 at 2, 5; Dkt. 88 at 1. Although UT had possessed

2

Lowery's RFP responses and second objective log for roughly a week, UT's counsel did not mention any concerns about the second log during this conference. Kolde Dec. ¶ 2. As a result, Lowery and his counsel were unaware that Defendants objected to his second log until they received Defendants' motion on February 1. *Id.* ¶ 2; *contra* Dkt. 93 at 1.

On February 13, this Court will hear oral arguments about nine pending discovery motions, all filed prior to January 31, 2024. *See* Dkt. 92. In an order, this Court expressly stated that "the Court does not intend to set any additional, yet-to-be-filed motions" for oral argument on February 13. Dkt. 92 at 2. Defendants filed their motion to compel—putatively a "supplemental" motion—on February 1: the day after this Court's order. Dkt. 93 at 1, 7.

## ARGUMENT

### I. UT NEVER MADE ANY GOOD-FAITH ATTEMPT TO RESOLVE THIS DISPUTE, SO THIS COURT SHOULD DENY ITS MOTION

By filing its motion to compel, UT violated the Western District of Texas' local rules. The local rules of this district command that moving parties "advise[] the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certif[y] the specific reason that no agreement could be made." Local Court Rule CV-7(g); *see also* FED. R. CIV. P. 30(b)(1) (motions to compel "must include a certification that the movant has in good faith conferred . . . in an effort to obtain [discovery] without court action."). If this mandatory conference does not occur or if the moving party fails to certify to its good-faith attempt at resolution, this Court "may refuse to hear or may deny a nondispositive motion." Local Court Rule CV-7(g).

"'Good faith' requires a genuine attempt to resolve the dispute" through "two-way communication necessary to genuinely discuss any issues and avoid judicial

3

recourse." *Wareka v. Square*, No. 1:21-CV-00382-LY-SH, 2022 U.S. Dist. LEXIS 15598, at *8 (W.D. Tex. Jan. 28, 2022) (citations omitted). Because the rules of procedure are designed to conserve scarce judicial resources and secure "the just, speedy, and inexpensive determination of every action and proceeding," "filing discovery motions should be a recourse of last resort." *Rainbow Energy Mktg. Corp. v. DC Transco, LLC*, No. 1:21-cv-313-RP, 2022 U.S. Dist. LEXIS 127490, at *3-4 (W.D. Tex. July 18, 2022) (citations omitted). Indeed, "failure to confer in good faith — that is, by actually discussing and attempting to resolve issues — before seeking relief may result in sanctions." *Am. Re Syndicate, Inc. v. Gen. Ins. Corp.*, No. 1:22-MC-00643-LY-SH, 2022 U.S. Dist. LEXIS 138602, at *6 (W.D. Tex. Aug. 4, 2022).

The parties never discussed this motion at their January 26 conferral, nor at any other conference, nor by email. Kolde Dec. ¶ 2. Although UT asserts—without citing any evidence—that "Defendants have conferred with Lowery, as required by Local Rule 7(g), and he is opposed to this motion because he maintains his 'objective' privilege logs suffices," Dkt. 93 at 1, that is untrue. The parties never conferred about Lowery's second log. Kolde Dec. ¶ 2.

Defendants cannot maintain that they sought in good faith to resolve their objections to Lowery's second log on December 14, 2023—because Lowery had not produced his second log nor even received the RFPs it responded to until many days after this conference. Exs. A & B. The December 14 conference concerned a different motion to compel, *see* Dkt. 62, about a different privilege log responding to a different set of RFPs. UT cannot pretend that an unrelated conference occurring over a month ago qualifies as a "good-faith attempt" at resolution, simply because UT labels its new motion "supplemental." *See, e.g.*, *Bradley v. GateHouse Media Tex. Holdings II, Inc.*, No. 1:22-cv-00304-DAE, 2023 U.S. Dist. LEXIS 127796, at *6 (W.D. Tex. July 25, 2023) (ten-minute conversation 45 days before not good-faith

4

attempt); *Johnston v. Kroeger*, No. 1:20-cv-00497-RP, 2022 U.S. Dist. LEXIS 153798, at *6 (W.D. Tex. Aug. 26, 2022) (filing although non-movant produced unreviewed supplemental discovery after CV-7(g) conference not good faith attempt); *Rainbow Energy*, 2022 U.S. Dist. LEXIS 127490, at *3 (filing after 30 days without communication from non-moving party not good-faith attempt).

Defendants assert that they want "a good-faith meet-and-confer" about Lowery's second log. Dkt. 93 at 5. But they never asked Lowery for such a conference—let alone waited to file until such a conference happened. Kolde Dec. ¶ 2.  UT apparently moved on February 1 without conferring hoping that this Court would hear oral arguments about its new motion on February 13—despite the January 31 order. *See* Dkt 92. In that order, this Court stated that it would not permit arguments about "any additional, yet-to-be-filed motions" at the February 13 hearing. *Id.* at 2. So, Defendants skipped the mandatory CV-7(g) conference and immediately filed its purported "supplemental" motion, to circumvent and undermine this Court's order.

    II.    LOWERY'S OBJECTIVE PRIVILEGE LOG FULLY SATISFIES THE REQUIREMENTS OF RULE 26

UT's failure to confer in good faith is especially problematic, because—as UT admits—Lowery provided an objective privilege log. *See* Dkt. 93 at 1, 3 (acknowledging that Lowery's log was objective). As Plaintiff has explained, objective logs are "a recognized system for logging ESI, recommended by experts." Dkt. 64 at 11 (citing The Sedona Conference, *Commentary on Protection of Privileged ESI*, 17 SEDONA CONF. J. 95, 162-63 (2016) and various cases). "In this system, the producing party records objective metadata from all privileged ESI and then permits the other party to designate documents that it would like described in

5

greater detail." Dkt. 64 at 11. Supplementing information about designated documents is "a normal step with objective privilege logs." *Id.* at 11-12.

Each entry on Lowery's second privilege contains twenty columns of objective metadata, including sender, recipients, subject line, date, size, word count, file name (for attachments), and privileged asserted. *See* Dkt. 93-1. This is far more information than Defendants supplied on either their original privilege log or their amended privilege log, although UT insists that both of its logs satisfied Rule 26. *See* Dkt. 60-6; Dkt. 61-1; *see also* Dkt. 61 at 3 (stating that UT's original log "was sufficient," even after UT later amended that log). Indeed, the only column on Defendants' original log that does not appear on Lowery's is a "Privilege Description" column where UT repeatedly copied in the phrase: "Email with counsel containing legal advice related to confidential communications": the definition of attorney-client privilege. *Compare* Dkt. 93-1 *with* Dkt. 60-6 at 3-4.

Lowery withheld the emails with outside attorneys Louis Bonham, Brent Perry, and Andrei Popovici invoking work-product doctrine. Dkt. 93-1. Evidently, Defendants want Lowery to include a column repeatedly stating some phrase like "documents prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, or agent)"— the definition of work product. *See* FED. R. CIV. P. 26(b)(3)(A); *see also United States v. El Paso Co.*, 682 F.2d 530, 542 n.15 (5th Cir. 1982). The rules do not require such silly formalism. Lowery explained to UT that Plaintiff withheld emails with these outside attorneys because Lowery's counsel consulted with them "for the purposes of gathering information that would be helpful for this litigation and planning litigation strategy." Dkt. 93-2 at 3. But if UT agrees to drop its motion to compel in exchange for Lowery inserting such a repetitive column, Plaintiff is willing to do so.

6

Such a minor amendment is exactly why counsel are supposed to confer in good faith. *See* Local Court Rule CV-7(g). Defendants admit that the fields in Lowery's log "provide enough information for some entries," *see* Dkt. 93 at 1, and single out a handful of emails on which they desire more information, *see id.* at 3-4. Because supplementing information about designated documents is "a normal step with objective privilege logs," *see* Dkt. 64 at 11-12, Defendants ought to have simply contacted Plaintiff with a brief list of emails to describe in greater detail. Instead, they filed this motion without warning.

### III. THE WORK PRODUCT DOCTRINE COVERS CORRESPONDENCE TO OR FROM A PARTY AND ITS ATTORNEY WHEN—AS HERE—THAT CORRESPONDENCE IS PREPARED IN ANTICIPATION OF LITIGATION OR TRIAL

Lowery's RFPs objections and objective log already provide sufficient detail to enable UT to test the merits of Lowery's work-product claim. *Cf. EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). Communications consulting with Texas attorneys to gather information and plan litigation strategy are paradigmatic examples of fact and opinion work product. *See Coleman v. Lee*, No. A-21-CV-00808-RP, 2022 U.S. Dist. LEXIS 234357, at *2 (W.D. Tex. Aug. 30, 2022) (describing these categories of work product and the doctrine's purpose of "shelter[ing] the mental processes of the attorney, [by] providing a privileged area within which he can analyze and prepare his client's case") (quoting *El Paso Co.*, 682 F.2d at 542).

As a result, UT presents a second argument for why it believes the work product doctrine does not apply. According to UT, no matter how detailed Lowery's log is, "the work-product doctrine may cover communications *to* third-parties in certain instances" but it never covers "emails from" a third-party such as Andrei Popovici. Dkt. 93 at 2 (emphasis original). UT cites no legal authority for this alleged rule of law because, apparently, no authority exists. And such a rule would undermine the work product doctrine's rationale.

7

Work product doctrine protects materials "prepared in anticipation of litigation or for trial . . . *by or for* another party or its representative" and prohibits any "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney." FED. R. CIV. P. 26(b)(3)(A)-(B) (emphasis added); *see also In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994) ("the test for whether a third party communication is privileged by the work product doctrine is whether the information recorded by the attorney *is obtained* or prepared by an adversary's counsel with an eye toward litigation.") (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (emphasis added).

"Work an attorney undertakes to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy is reflected in interviews, statements, and correspondence such that these materials may aptly be termed work product of the lawyer." *Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 181063, at *10 (S.D. Tex. Oct. 10, 2018) (citing *Hickman*, 329 U.S. at 511) (cleaned up). "The focus of determination whether a document falls within the work product protection is whether the motivating purpose behind its creation was to aid in litigation," rather than who created the document. *Stoffels v. SBC Communs., Inc.*, 263 F.R.D. 406, 418 (W.D. Tex. 2009) (internal quotation omitted).

As a result, courts protect communications both to and from a party's attorney under work product doctrine. *See, e.g.*, *Marietta Area Healthcare, Inc. v. King*, No. 5:21CV25 (BAILEY), 2023 U.S. Dist. LEXIS 114642, at *6, *8-11 (N.D.W. Va. Feb. 7, 2023) (emails between party's counsel and outside lawyers consulted about case covered by unwaived work product protection); *Booth*, 2018 U.S. Dist. LEXIS 181063, at *10 (preventing disclosure of "email exchange" between counsel and a third party as emails back and forth were "created for litigation purposes"); *In re*

8

*Vioxx Prods. Liab. Litig.*, No. 1657, 2007 U.S. Dist. LEXIS 23164, at *11 n.3 (E.D. La. Mar. 5, 2007) (communications with third party public relations firm protected to ensure "frank discussions of facts and strategies"); *cf. Univ. of Miss. Med. Ctr. v. Sullivan*, No. 3:19-CV-00459-CWR-LGI, 2021 U.S. Dist. LEXIS 226220, at *13 (S.D. Miss. Apr. 21, 2021) (email not work product because "[n]o attorney was involved in drafting or *receiving* this email") (emphasis added).

Here, Lowery withheld emails sent to and from his retained counsel and outside lawyers consulted by his counsel. These consultations were during active litigation and in anticipation of trial, for they occurred "for the purposes of gathering information that would be helpful for this litigation and planning litigation strategy." Dkt. 93-2 at 3. The subject lines, document titles, and attachments included on Lowery's log show that these consultations discussed topics such as recent filings, discovered documents, witnesses, deposition scheduling, and a Texas Public Information Request used to obtain evidence. *See* Dkt. 93-1. Disclosing these communications would reveal the mental impressions, opinions, strategies, and legal theories of Lowery's counsel. Thus, work product doctrine shelters these emails from discovery.

## Conclusion

This Court should deny Defendants' motion to compel as failing to comply with the rules of the Local Rules and require Defendants confer in good faith with Plaintiff before filing any future motions. Alternatively, this Court should deny UT's motion to compel because Lowery's second log complies with Rules 26 and demonstrates that the withheld communications are protected work product.

Respectfully submitted,   Dated: February 6, 2024

*s/Endel Kolde*   *s/Michael E. Lovins*
Endel Kolde   Michael E. Lovins
Washington Bar No. 25155   Texas Bar No. 24032555
Courtney Corbello   LOVINS | TROSLCAIR, PLLC
Texas Bar No. 24097533   1301 S. Cap. Of Texas
Nathan J. Ristuccia   Building A Suite 136
Virginia Bar No. 98372   Austin, Texas 78746
INSTITUTE FOR FREE SPEECH   Tel: (512) 535-1649
1150 Connecticut Ave., NW   Fax: (214) 972-1047
Suite 801   michael@lovinslaw.com
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
ccorbello@ifs.org
nristuccia@ifs.org

*Counsel for Richard Lowery*

**CERTIFICATE OF SERVICE**

I certify that on February 6, 2024, a true and correct copy of the foregoing pleading was served via CM/ECF upon the counsel of record of all parties.[1]

*s/ Endel Kolde*
Endel Kolde
*Counsel of Record for Richard Lowery*

---

[1] Certificate added to comply with previous deficiency notice (Dkt. 96) issued in error. Fed. R. Civ. P. 5(d)(1)(B) provides that "No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." This Rule applies nationally and overrides any contrary local requirement. And per Section 14(c) of the Administrative Policies and Procedures for Electronic Filing a certificate of service is only required when a party was served by "means other than the Court's Electronic Notice Facilities." All parties were served via ECF.