## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY, | § § § | |
| PLAINTIFF, | § § | |
| v. | § § § | Case No. 1:23-CV-00129-DAE |
| LILLIAN MILLS, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; ETHAN BURRIS, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas-Austin; and CLEMENS SIALM, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas-Austin, | § § § § § § § § § § § § § § § § | |
| DEFENDANTS. | § § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RE: SEARCH AND PRODUCTION OF ALMAZAN AND ALTI'S COMMUNICATIONS IN RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION NO. 18

Lillian Mills, in her official capacity as Dean of the McCombs School of Business at the University of Texas at Austin; Ethan Burris, in his official capacity as Senior Associate Dean for Academic Affairs of the McCombs School of Business at the University of Texas at Austin; and Clemens Sialm, in his official capacity as Finance Department Chair for the McCombs School of Business at the University of Texas at Austin (collectively "Defendants") file this opposition to Plaintiff Richard Lowery's Motion to Compel (Dkt. 91; hereafter "Motion") regarding the search and production of communications involving non-parties Professor Andres Almazan and Professor Aydogan Alti, and would respectfully show as follows:

## INTRODUCTION

Defendants oppose the motion to compel because, rather than seeking potentially relevant information not yet obtained, it is yet another attempt by Lowery to harass those at the University against whom he harbors a grudge. Specifically, Lowery has already sought and obtained the lone email communication involving the two non-party professors and former Defendant Sheridan Titman, and Lowery has repeatedly been told both in written discovery responses and at depositions that none of the Defendants (nor, for that matter, President Hartzell and the other University employees that Lowery wants to believe are conspiring against him) have otherwise communicated with either Almazan or Alti regarding Lowery's speech. There could thus be no additional written communications that would be relevant to Lowery's claim that he has self-chilled out of a reasonable fear of retaliation by Defendants. And Lowery's insistence that non-parties be forced to search private communications for irrelevant communications is merely Lowery's attempt to impose a burden on speakers whom Lowery doesn't like. The Court should deny Lowery's latest attempt to abuse the discovery process for the improper purpose of harassing an ever-widening group of University employees and officials who could not have been the source of any objectively reasonable fear of retaliation by Defendants, which is the only discovery potentially relevant to Lowery's sole live claim.

## BACKGROUND

The Court is well aware of the general factual and procedural background to-date, so Defendants provide below only the particular facts relevant to this motion.

Lowery sued three University officials in February 2023, asserting two claims: (1) the state-actor Defendants chilled his speech in violation of his First Amendment rights and (2) Defendants retaliated against him for exercising his First Amendment rights. (Dkt. 1 at 20–24). Lowery sought injunctive and declaratory relief, (Dkt. 1 at 24–25), and shortly thereafter he sought a preliminary injunction (Dkt. 8). In the P.I. motion, Lowery clarified that his chilled-speech claim was based upon

his professed chilling of his own speech that he allegedly began in August 2022 (Dkt. 8 at 10–15, 19). Defendants opposed the motion for a preliminary injunction (Dkt. 14) and filed a motion to dismiss the complaint in its entirety (Dkt. 15).

The Court granted a limited amount of pre-preliminary-injunction hearing discovery in the form of depositions on written questions. (Dkt. 29). In the responses to the DWQs, Defendants Mills and Burris and former Defendant Titman were asked to: identify all persons with whom they communicated about Richard Lowery's online writings and participation in a podcast with Richard Hanania and to "describe in detail the contents of any [such] communications." **Ex. A** (Mills DWQ Objections and Answers at 3–8 (DWQs 5–8)); **Ex. B** (Burris DWQ Objections and Answers at 3–4 (DWQs 5–8)); **Ex. C**  (Titman DWQ Objections and Answers  at 3–4 (DWQs 5–8)). Each of those DWQ responses indicate that Mills, Burris, and Titman never communicated with either Professor Almazan or Professor Alti about Lowery's speech activities. *Id.*

The Court denied Lowery's preliminary injunction motion and granted in part Defendants' motion to dismiss. (Dkt. 51). Specifically, the Court granted the motion to dismiss as to count 2 of the complaint "[b]ecause [Plaintiff] has not sufficiently alleged an adverse employment action" to support a First Amendment retaliation claim. (Dkt. 51 at 24). The Court did not dismiss the chilled-speech claim, finding that Lowery had "sufficiently alleged that Defendants' threats would chill a person of ordinary firmness from publicly criticizing [the University]." (Dkt. 51 at 25). Accordingly, the only claim left before the Court asks whether Lowery actually (and reasonably) chilled his speech in August 2022. *See, e.g.*, *Kennan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002) (providing that self-chilling speech claims require plaintiff to establish "(1) engage[ment] in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) defendants' adverse actions were substantially motivated against [his] exercise of constitutionally protected conduct").

During discovery, Lowery has made several broad requests that cover any relevant communication that either Professor Almazan or Professor Alti could have had. Request for Production 1 asks for "all communications . . . sent to or from Jay Hartzell, Lillian Mills, Ethan Burris, Sheridan Titman, Nancy Brazzil, or Meeta Kothare, concerning Lowery's speech, directly or indirectly, dated between June 1, 2022, and November 1, 2022. This request includes all responsive communications sent to or received from third parties and UT employees not listed above…." **Ex. D** (Defendants' Objections and Responses to Plaintiff's First Requests for Production and Interrogatories). Defendants produced responsive, non-privileged documents to RFP 1. And Interrogatory 2 asks for the identification of "all persons consulted by Jay Hartzell, Lillian Mills, Ethan Burris, Sheridan Titman, Nancy Brazzil, or Meeta Kothare on how to respond to or deal with Richard Lowery's speech" and for the descriptions of each such consultation. *Id.* Defendants' response to Interrogatory 2 confirmed that none of those individuals consulted with either Almazan or Alti on how to respond to or otherwise deal with Lowery's speech. *Id.*

Lowery has continued to inquire specifically about Almazan and Alti; each time he has been told that there are no further relevant communications involving those two individuals. For example, in Interrogatories 17–19, Lowery asked whether Almazan or Alti had any oral communications "concerning Richard Lowery or his speech" with Jay Hartzell, Nancy Brazzil, Laura Starks, Meeta Kothare, Lillian Mills, Ethan Burris, Sheridan Titman, Kelly Kamm, or with each other. The answer to each of these interrogatories was "No." **Ex. E** (Defendants' Amended Objections and Responses to Plaintiff's Fourth Requests for Production and Interrogatories). And Lowery has already deposed Burris and Titman, where he had the opportunity to explore whether either Almazan or Alti had any communication of any kind with Burris or Titman that could support (or refute) Lowery's self-chilling claim against Defendants.

Lowery now seeks an order requiring Defendants to (1) search Almazan's and Alti's University email accounts and (2) demand that Almazan and Alti search their private email accounts for email communications that either (1) Lowery has been told repeatedly do not exist because there are no unproduced emails between the Alamzan and Alti and any supervisor of Lowery's or (2) would be irrelevant even if they existed because they would involve the Almazan and Alti communicating with other individuals who have no authority over Lowery, and thus could not form the basis of any objectively reasonable fear of retaliation.

## ARGUMENT

Lowery has acknowledged that Rule 26(b) prohibits requests based on pure speculation, a desire to conduct a fishing expedition, or an attempt to find information supporting claims other than those in the live pleadings. Dkt. 64 at 5 (Lowery' Resp. to Motion to Compel) (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011); *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017)). But now that discovery repeatedly has confirmed that Lowery's perceived threats are only imagined and his self-chilling (if any) was not objectively reasonable, he continues to seek judicial assistance to harass a widening group of individuals against whom he has a grudge. *E.g.*, Dkt. 71 (Lowery's Motion to Compel against non-party Kelly Kamm); Dkt. 88 (Defendants' motion seeking protection from harassing discovery requests related to President Hartzell and his son). Now Lowery offers baseless speculation about Almazan and Alti. Motion at 5 (suggesting it is "plausible" that President Hartzell "asked one or both of them to play a role in the campaign to silence Lowery"); *id.* at 6 (suggesting it is "possible that Almazan and Alti possess further, similar evidence" to show a motive to silence Lowery). Lowery's cannot offer the Court any basis to compel this discovery.

    1.    *Relevant discovery—i.e., discovery properly tailored to Lowery's self-chilled-speech claim—has already confirmed that these requests do not seek relevant, as-yet-unproduced documents.*

Lowery has already learned that neither Almazan nor Alti communicated about Lowery's speech with Defendants, President Hartzell, or numerous other University employees whom Lowery

has suggested are conspiring against him other than the one email from Almazan to Alti and Titman that Lowery cites in his motion and that makes no threats against Lowery. *See* **Exs. A–E** (discussed in detail above). Moreover, Lowery admits he was unaware of the existence of even that non-threatening email until very recently, more than a year after he allegedly began self-chilling. Motion at 2 (noting that Defendants' production of the email in response to the First Set of RFPs "was the first time [that] Lowery had learned that Almazan and Alti were involved in conversations regarding his speech"). So Lowery could not have relied on anything Almazan or Alti ever said to anyone (even if any such communications had occurred) as the basis for his self-chilling decision. And because discovery to-date has confirmed that no other communications exist between Almazan or Alti and the individuals Lowery claims conspired to silence him, there is no justification for compelling the searches of Almazan's and Alti's emails that Lowery demands.

Any further discovery into Almazan's and Alti's communications would thus be pointless because the lone communication with anyone even arguably in a position of authority over Lowery in August 2022 (*i.e.*, Titman) has already been produced, and that email provides no evidence in support of Lowery's alleged threat. Thus, all Lowery seeks now is, at best, to undertake a speculative fishing expedition (which he is not entitled to do, *Crosby*, 647 F.3d at 264) and at worst, to harass and impose burdens on those whom Lowery dislikes, *see, e.g.*, Dkt. 91-3 (Lowery's motion cites to testimony that he has told Titman he does not like Almazan).

Moreover, for the same reasons that the Court should reject Lowery's demand that non-party Kamm be compelled to participate in this matter by conducting searches of her private emails for communications with persons who do not have any authority over Lowery—and thus are completely irrelevant emails, Dkts. 66 and 74 (non-party Kamm's motion for protection and reply brief); Dkt. 76 (Kamm's opposition to Lowery's motion to compel)—the Court should not order the Defendants to require Almazan and Alti search their private email accounts for irrelevant documents. Defendants

incorporate those briefs here by reference, and in the interest of brevity will not repeat each of those arguments, but briefly: even if Almazan or Alti had a private communication with someone else not already inquired about in the previous discovery (**Exs. A–E**), that communication could not be relevant to a self-chilled speech claim against Defendants; accordingly it would not be necessary for Lowery to obtain those communications to litigate his claim. And forcing non-parties to look for and potentially turn over private communications to Lowery would impose a burden on their First Amendment speech rights that would far outweigh any litigation-based benefit Lowery could obtain by imposing that burden on Almazan and Alti.

> 2.     *Lowery's motion to amend his complaint cannot support these discovery requests.*

After filing his Motion to Compel, Lowery filed a motion to amend his complaint. Dkt. 94. Defendants anticipate that in his reply brief to this Motion, Lowery may rely upon his pending motion to amend as a new basis to support the discovery request at issue here. But it offers no such support. In addition to the above-established lack of any further relevant email communications regrading Lowery's speech between Almazan and Alti and Defendants (or any other University personnel), discovery cannot be based on unfiled claims. Until the Court grants the motion to amend (which Defendants will oppose) that new claim is not a part of this case. Moreover, even if the amended complaint is permitted, Defendants will have the right to have a timely filed motion to dismiss ruled upon before they are forced to engage in discovery. *See* Dkt. 19 at 8–9 (demonstrating that jurisdictional issues and the state's immunity should be determined through motion practice prior the commencement of discovery). To permit Lowery to engage in discovery on a new claim before even obtaining permission to amend his complaint would impermissibly eradicate Defendants' Eleventh Amendment immunity and command discovery over a claim for which the Court has not determined that it has jurisdiction. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–45 (1993) ("The value to the States of their Eleventh Amendment immunity . . . is for the most

part lost as litigation proceeds past motion practice."); *Nieto v. San Perlita I.S.D.*, 894 F.2d 174, 177 (5th Cir. 1990) (explaining that "until resolution of the threshold question of the application of an immunity defense, 'discovery should not be allowed'"); *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988) (similar).

Accordingly, while Defendants urge the Court to deny outright the motion to compel regarding Almazan and Alti, if Lowery seeks to rely upon his motion to amend the complaint in his reply in support of this Motion, then at a minimum the Court should deny the motion to compel without prejudice and allow it to be refiled only if Lowery's motion to amend is granted and his amended complaint survives a motion to dismiss.

## CONCLUSION

The Court should deny the motion to compel.

Respectfully submitted,

JACKSON WALKER L.L.P.

By:   /s/ Matt Dow
      Charles L. Babcock
      Texas State Bar No. 01479500
      cbabcock@jw.com
      Joel R. Glover
      Texas State Bar No. 24087593
      jglover@jw.com
      Javier Gonzalez
      Texas State Bar No. 24119697
      jgonzalez@jw.com
      1401 McKinney Street, Suite 1900
      Houston, Texas 77010
      (713) 752-4200 – Phone
      (713) 752-4221 – Fax

      Matt Dow
      Texas State Bar No. 06066500
      mdow@jw.com
      Adam W. Aston
      Texas State Bar No. 24045423
      aaston@jw.com
      100 Congress Ave., Suite 1100
      (512) 236-2056 – Phone
      (512) 691-4456 – Fax

      ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

/s/ Matt Dow
Matt Dow