UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:23-cv-00129-DAE |
| § | |
| LILLIAN MILLS, in her official capacity § | |
| as Dean of the McCombs School of Business § | |
| at the University of Texas at Austin; ETHAN § | |
| BURRIS, in his official capacity as Senior As- § | |
| sociate Dean for Academic Affairs of the § | |
| McCombs School of Business at the Univer- § | |
| sity of Texas-Austin; and CLEMENS § | |
| SIALM, in his official capacity as Finance De- § | |
| partment Chair for the McCombs School of § | |
| Business at the University of Texas-Austin, § | |
| § | |
| *Defendants*. § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTION
FROM PLAINTIFF'S FIFTH REQUESTS FOR PRODUCTION
AND RELATED DEPOSITION TOPICS**

**INTRODUCTION**

Lowery has served discovery about President Hartzell's son. The discovery does not relate to the current complaint because none of his claims turn on whether his pet theories are true. Nor can Lowery use his yet-amended complaint to justify discovery because Defendants are entitled to move to dismiss before discovery. But the amended complaint still does not make Lowery's requested discovery relate to any of his claims or defenses. The attenuated discovery is part of a pattern of harassment against anyone who has even mentioned Lowery, and the Court should not allow it.

**I.   Lowery's claims have nothing to do with President Hartzell's son.**

Lowery presents two arguments as to why discovery about President Hartzell's son relates to the claims in the live complaint. But neither argument succeeds.

*First*, Lowery claims the discovery "directly relates to Lowery's claim UT sought to suppress Lowery's speech about how university officials hypocritically promote DEI while skirting the disadvantages themselves." Dkt. 95 (Response) at 6. This argument reveals the raison d'être for Lowery's lawsuit: a free-roving exploration of his personal grievances with numerous university faculty and administrators—including President Hartzell. *See also, e.g.*, **Ex. D** (asking for emails for anyone who has ever mentioned his name); **Ex. E** (listing several people in litigation hold). Indeed, Lowery claims he "is entitled to prove that university administrators like Hartzell do in fact shield their own family from the disadvantages of affirmative action and other DEI policies while ensuring that those same disadvantages apply to others." Dkt. 95 (Response) at 8. Defendants oppose the discovery because they will not participate in Lowery's abuse of the judiciary as a vehicle for a fishing expedition for his pet theories, like he has done several times now. *See, e.g.*, Dkt. 71 (Plaintiff's Cross-Motion to Compel Kamm Subpoena, including a search of her personal devices); Dkt. 91 (Plaintiff's Motion to Compel search of two UT employee's personal devices).

The truth of Lowery's rants about UT is not material to Lowery's lone surviving claim, which is that in August 2022 he began chilling his speech out of fear of retaliation by the Defendants. *See* Dkt. 1 (Complaint); *see also* Dkt. 51 (order dismissing Lowery's retaliation claim). Whether any self-chilling on Lowery's part was objectively reasonable due to threatened retaliation—the issue to be

resolved—does not turn on the truth of any of Lowery's statements or his beliefs. All that matters is whether (1) he was engaged in constitutionally protected activity; (2) defendants' engaged in adverse actions causing him to suffer a cognizable injury that would chill a person of ordinary firmness; and (3) the adverse actions were because of the constitutionally protected conduct. *See, e.g.*, *Kenne v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Whether Lowery's views on any particular topic are valid does not affect whether his conduct was constitutionally protected, his injury was cognizable, Defendants' actions would chill a person of ordinary firmness, or whether the actions were because of constitutionally protected conduct. Indeed, many constitutional violations likely come out of a desire to suppress statements that the suppressor sincerely believes are untrue. But even false statements are not categorically unprotected by the Constitution. *See, e.g.*, *United States v. Alvarez*, 567 U.S. 709 (2012) ("Absent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements.").

*Second*, and relatedly, Defendants have not "put the accuracy of Lowery's criticisms at issue." *Contra* Dkt. 95 (Response) at 7. To make this claim, Lowery relies on one line from Defendants' response to his motion for a preliminary injunction. *See id.* (citing Dkt. 14 at 11). The reason Defendants referred to Lowery's "[p]ublic statements defaming leaders and sabotaging fundraising efforts" was to note that those statements were "imped[ing] University operations," not to establish that Lowery's statements were actually defamatory. Dkt. 14 (Response to PI) at 11. Whether Lowery's statements are false does not affect whether his public appeals to stop funding the university is disruptive to the university's operations. *See id.* (arguing that "Lowery has no protected right to make statements that intentionally seek to undermine university operations, including its fundraising efforts").

Moreover, Defendants' point that Lowery's statements were impeding University operations had nothing to do with Lowery's newly hatched nepotism allegations, raised nearly a year after Defendants' PI response). Instead, it was concerned with "Lowery's public statements asserting that University President Jay Hartzell is a thief and liar, and his urging people not to donate to the University." Dkt. 14 (Response to PI) at 11; *see also* Dkt 14-2 (Burris Decl.) ¶7 (explaining that he believed Lowery was making false and disparaging statements that might hurt Salem Center).

Lowery argues that "if Hartzell himself engaged in the exact kind of dishonest practice that Lowery criticized in the Washington Times, that fact would support Lowery's theory that UT administrators wanted to stop Lowery from speaking out about this issue." Dkt. 95 at 6. That's wrong.

While Lowery's article criticized race-conscious admissions policies as a policy matter, he admits that it never expressly mentions Hartzell. Dkt 94-4 (Draft Amended Complaint) ¶19. The closest Lowery came was to say that university administrators "find themselves in the interesting position of working hard to disadvantage in the admissions process people with the same identity profile as their own children—though, of course, *this disadvantage seldom reaches to their children themselves*." Dkt. 95 (Response) at 2 (quoting article) (emphasis added). That vague statement in no way supports Lowery's theory that Hartzell read the article, interpreted it as accusing him of nepotism, and then decided to keep Lowery from speaking about it.

Lowery tries to gloss over this obvious flaw by submitting a declaration revealing his own previously-private thoughts about the article. For example, Lowery declares that he had Hartzell "in mind as an example of the category of administrator that [he] criticized" in his Washington Times article. *See* Dkt. 77-1 (Lowery Decl.) ¶ 14. And while Lowery's declaration doesn't say that the article was actually a reference to Hartzell allegedly engaging in nepotistic practices, he suggests that it might have been. Id. at ¶ 15. Finally, Lowery says that he considers the purported nepotism "to be an example of Jay Hartzell's hypocrisy," and that he further considers "hypocrisy a form of lying." *See id.* ¶16. But whatever Lowery was privately thinking when he penned the article is irrelevant to his legal claim. It was not until Lowery filed his declaration on January 18, 2024 that he revealed his previously-private thoughts, so they were unknown to Defendants at the time they filed their PI response nearly one year earlier. Lowery only contrived this new platitude about hypocrisy and lying in response to this protective order. *See id.* Lowery cannot retroactively transform a statement in Defendant's PI response about *other* public statements by Lowery into a reference to Lowery's Washington Times article that no reasonable reader would have understood to contain allegations of nepotism against Hartzell.[1]

---

[1] Defendants also foreswear suing Lowery for defamation in this lawsuit, so Lowery will not need to invoke a truth defense for defamation. See Dkt. 95 (Response) at 7 n.1.

Defendants' Reply ISO of Motion for Protection (Dkt. 88)                                                    3

Lowery is entitled to discovery on his alleged self-chilling in August 2022, including whether it was reasonably based upon a fear of retaliation. That's all. He is not entitled to use this lawsuit to harass colleagues, such as President Hartzell; Kelly Kamm, Dkt. 71 (Plaintiff's Cross-Motion to Compel Kamm Subpoena, including a search of her personal devices); Andres Almazan and Aydogan Alti, Dkt. 91 (Plaintiff's Motion to Compel search of two UT employee's personal devices); or Lowery's next discovery target. The Court should end Lowery's harassment campaign now.

## II.     The as-yet unfiled amended complaint does not support Lowery's position.

Lowery argues that this protective order "would be vitiated by filing the proposed amended complaint." Dkt. 95 (Response) at 9. That's wrong. As previously discussed, Lowery cannot base his discovery requests upon a new claim in an Amended Complaint he has not been granted leave to file. Even if leave to amend is granted, Defendants will still have a chance to move to dismiss the added claim before the discovery is permitted. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280–81 (N.D. Tex. 2017) (cited by Lowery in Dkt. 64) ("forc[ing] [Defendants] to produce documents and discovery responses while robbing [them] of the ability to seek an early disposition of the viability of the [claims] through an opposition to his motion to amend or a motion to dismiss or to strike."). So the Court should not wait to decide the motion for protection until after the motion for leave to amend. Lowery can move for reconsideration after the Court has decided its motion to dismiss.

Lowery cannot relate the demanded discovery even to his desired amended complaint. His supposed connection is that "[w]hen Lowery wrote [an article] he was thinking of Jay Hartzell, although he did not name Hartzell explicitly." *See* Ex. Dkt. 94-4 (Draft Amended Complaint) ¶19; *see also* Dkt. 77-1 (Lowery Decl.) ¶14. And, Lowery declares, because the article—that does not mention President Hartzell and is two years from the events for which Lowery seeks discovery—*might* have been read by President Hartzell, then what Lowery had "in [his] mind as an example" is relevant. *See* Dkt. 77-1 (Lowery Decl.) ¶¶14–15. Also, it's supposedly relevant because Lowery thinks President Hartzell is a hypocrite, and Lowery has an opinion that "hypocrisy is a form of lying." *See id.* ¶16.

Lowery may want to smear President Hartzell because he thinks President Hartzell is a hypocrite and a liar. Defendants have not and will not threaten or retaliate against Lowery for those views, even if they cross the line as the Court noted they might in some contexts. **Ex. F** (Aug. 31, 2023 Hr'g Tr.) at 35 ("You can't accuse somebody of stealing or being a thief and then expect that to be protected by the First Amendment."). But it is not his right to use this process to seek discovery to harass President Hartzell's son just to confirm or deny what he thinks of President Hartzell. Rather, he must relate the discovery request to a live claim. *Chung*, 321 F.R.D. at 280. His self-chill claim remains the same, so the amendment changes nothing, and it remains just as irrelevant as it does today. Only the unwritten speech code claim would be new.

But his speech code claim does not change anything either. Lowery intends to allege that "an unwritten speech code or practice forbids faculty . . . from advocating donors to stop donating to UT or that elected officials defund UT," or otherwise being "'uncivil' or 'rude'". *See* Dkt. 94-4 (Draft Amended Complaint) ¶¶120–21. This claim, read generously, is challenging Defendants' supposed policy. But nothing in this imagined policy has anything to do with President Hartzell's son in its substance. *See id.* ¶¶120–128. President Hartzell's son does not enforce this supposed code, nor does it apply to him. *See id.* ¶¶120–128. And Defendants could not have read Lowery's mind to interpret Lowery's criticism of "university administrators" as an allegation that Hartzell was seeking favorable treatment for a relative. *Contra* Dkt. 77-1 (Lowery Decl.) ¶14.

The yet-filed amended complaint is not a proper basis of discovery, both because the discovery would be premature and because the discovery would not bear on Lowery's claims, and therefore remains outside the scope of Rule 26.

## Conclusion

For the reasons above, the Court should enter an order protecting Defendants from Lowery's requests for production 19, 20, 22–25, and 27, and barring his counsel from asking any deponent, including Dean Mills, questions about the topic of those requests or other questions that are not reasonably calculated to lead to admissible evidence about his pleaded claim.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/Matt Dow*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that on February 9, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

                                      */s/Matt Dow*
                                      Matt Dow