UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br><br> *Plaintiff*,<br><br>v.<br><br>LILLIAN MILLS, et al.,<br><br> *Defendants*. | Case No. 1:23-cv-00129-DAE |

**JOINT REPORT RE DISCOVERY CONFERENCE**

As ordered by the Court (Dkt. 92), the parties conferred via Zoom on February 6, 2024, with follow-up communications via email. What follows is the current status of the parties' discovery disputes, set for hearing Feb. 13, 2024:

**1. Plaintiff's motion to compel re: privilege log (Dkt. 60)**

**Plaintiff's position:** Plaintiff reiterates his arguments set forth in his briefing. Plaintiff maintains that UT is trying to conceal business communications or mixed business and legal communications on its privilege log. Although Defendants Mills and Burris falsely claimed under oath for eight months that Hartzell had not texted them about Lowery during the summer of 2022, they recently revealed that Hartzell texted them about Lowery on Aug. 5, 2022. One week later, Mills and Burris met with Carvalho to ask him to "counsel" Lowery about his speech. The Court has already ordered in-camera inspection. The Court should also order UT to provide customary foundational and non-privileged information about who sought legal

1

advice orally about Lowery, when, from whom, and who was involved in each communication. Plaintiff agrees that UT's Amended Privilege Log satisfies Rule 26 in regard to the November 8, 2021 emails.

**Defendants' position:** Defendants trust the outcome of the Court's in camera review of the disputed messages and the application of the privilege. Once further investigation revealed the single additional archived text conversation, Defendants supplemented their DWQ response. The timing between the text message and the Carvalho meeting is incidental to the fact that Lowery was extremely vocal at the time. Any other information about who sought advice would reveal privileged information.

2. **Defendants' first motion to compel re: RFP Nos. 6, 7, 13 and 29 (Dkt. 62)**

**Plaintiff's position:** Plaintiff reiterates his positions set forth in his briefing. He has already produced the responsive documents and asserts that UT is trying to use the discovery process disproportionately to harass him and spy on his dissident activities. Additionally, Plaintiff's objective privilege logs, exchanged on December 8, satisfy Rule 26.

**Defendants' position:** Lowery is wrong. His communications will help reveal the extent to which Lowery has, in fact, self-chilled. If Lowery continues to speak about the topics on which his Complaint professes fear to do so, then this undermines his self-chilling claim. This discovery is thus *directly* relevant to Lowery's live claim and Defendants' defenses; Lowery cannot profess to be self-chilling then shield from the Court or the parties the very communications that would help refute that claim. Also, if he is not in fact self-chilling as he alleges, then it would be relevant impeachment evidence. Defendants do not care about who Lowery is talking to nor the content of his speech—they have not taken any action, nor do they intend to do

so—to retaliate for that speech. But Defendants must be permitted to defend against Lowery's lawsuit with the very evidence that would defeat Lowery's claim. Both the content and the volume of those communications are relevant to the claim and defenses in this case.

Defendants do not have adequate information to assess the claimed privilege for all entries. To satisfy Rule 26, Plaintiff needs another column in the privilege log describing how the privilege applies. Defendants' log provided the type of descriptions needed to assess the privilege, *e.g.*, "Email with counsel containing legal advice related to confidential communications and the Texas public information law." Indeed, Lowery now concedes that Defendants' descriptions satisfy Rule 26. Defendants are entitled to have Lowery provide the same level of detail in his privilege log.

**3. Plaintiff's motion to extend case deadlines (Dkt. 68)**

**Plaintiff's position:** Plaintiff maintains that Defendants' delaying tactics have only gotten worse, providing even further support for a 60-day deadline extension. In fact, the case deadlines probably should be extended ninety days, because since Plaintiff's motion, UT has continued to stall providing necessary discovery including not appearing for one deposition and quashing a properly noted third-party deposition.

**Defendants' position:** Defendants have not engaged in delay. Rather, they have exercised their rights to insist that discovery remain focused on matters relevant to the claim and defenses in this case, including through a successful motion to quash. Moreover, there are still three months in which the parties may conduct discovery under the current schedule, and several of the key depositions are scheduled for February. There is no need to extend the discovery deadlines in the current scheduling order. Indeed, one of Lowery's principal arguments for seeking the

3

amendment was to extend the amended pleading deadline. Yet Lowery has already filed his motion for leave to amend. The current scheduling order adequately protects the parties' ability to litigate this case (and it would continue to do so even if Lowery's motion for leave to amend the complaint is ultimately granted).

4. **Defendants' motion to quash Kamm subpoena (Dkt. 66) and Plaintiff's cross-motion to re Kamm subpoena (Dkt. 71)**

**Plaintiff's position:** Plaintiff reiterates that Kamm's complaint about Lowery's appearance on the Hanania podcast was forwarded by a staff member of UT's Office of the President for follow-up as a "personnel matter" by Defendants Mills and Burris on August 9. Three days later Mills and Burris met with Carlos Carvalho to discuss Lowery's speech and asked Carvalho to "counsel" Lowery. This subpoena seeks documents directly related to Lowery's claim and seeks to establish whether Kamm coordinated her denunciation with other UT employees or administrators, including persons connected to the Defendants or Jay Hartzell. The parties discussed a possible negotiated solution that would involve UT searching the Kamm's UT email accounts and the Kamm conducting a self-search of private accounts and devices. However, Defendants stated that these negotiated searches would only occur "subject to the Court's rulings on Tuesday," so no actual agreement was reached.

**Defendants' position:** As demonstrated in Defendants' and Kamm's briefing, discovery to-date has confirmed that Kamm never communicated with anyone even conceivably in a position to retaliate against Lowery, thus there are no additional relevant communications that Lowery could obtain through discovery requests aimed at Defendants or Kamm. And demanding Kamm participate in discovery in this case further erodes her First Amendment rights. Lowery's insistence that Kamm and other non-parties (see below) who have never had any ability to alter

4

Lowery's employment or his appointment to Salem Center suffer discovery burdens for having dared to exercise their own First Amendment rights confirms his motive is to harass people he doesn't like, not obtain relevant discovery material in this case. While the parties did discuss a possible negotiated solution that could have included Kamm searching her personal email devices and email accounts subject to the Court's ruling on these motions, no agreement was reached.

5. **Defendants' motion for entry of model protective order (Dkt. 73)**

**Plaintiff's position:** Plaintiff has no objection to entry of the model protective order so long as there is appropriate language acknowledging that Plaintiff's private communications with other dissidents enjoy protection under the order, that AEO designated materials are not provided to the UT in-house legal counsel's office, and the order is not configured to allow the over-designation of records that would normally be subject to disclosure under the TPIA. The parties discussed a possible compromise order. However, because parties continued to disagree about the scope of AEO protection and whether UT in-house counsel could view AEO material, no agreement was reached.

**Defendants' position:** Lowery's position, as reiterated above, is actually not consistent with the standard protective order. Defendants will not agree to an order that prevents Defendants from obtaining adequate and meaningful counsel from UT's in-house attorneys. And Defendants' outside counsel cannot fully carry out their duties to provide informed advice or make decisions on Defendants' behalf without in-house counsel's fully informed input. The standard protective order protects Lowery against violations of the order by in-house counsel as well as retained counsel, and any violation of the sort Lowery complains of (retaliation based upon learning of Lowery's protected speech activities) would not occur because it would support Lowery's previously dismissed retaliation claim.

6. **Defendants' motion for protective order re nepotism allegations discovery (Dkt. 88)**

**Plaintiff's position:** Plaintiff reiterates that discovery into the Hartzell nepotism allegations is relevant to UT's motive to chill his speech and to explain the basis of Lowery's opinion that Hartzell is a liar and hypocrite.

**Defendants' position:** Lowery's opinion of Hartzell, and any basis he has for that opinion, are irrelevant to any claim or defense with respect to both the live self-chilling claim and even the new claim which the Court has not yet granted leave for him to add. The motive pled in the live petition has nothing to do with these newly raised nepotism allegations, which are instead further confirmation that Lowery is more interested in seeking to harass and burden University officials than litigating a legitimate federal lawsuit. Lowery could not establish that his purported views of Hartzell have anything to do with his self-chilling claim, so they cannot form the basis for discovery into relevant matters.

7. **Plaintiff's motion to compel Mills deposition and for costs (Dkt. 89)**

**Plaintiff's position:** Plaintiff reiterates that FRCP 37 creates an unrebutted presumptive minimum consequence of reasonable costs for failure to appear at a duly noted deposition.

**Defendants' position:** FRCP 37 is merely presumptive and has the qualification for when the award of expenses would be unjust. Plaintiff could have avoided most if not all expenses, but his counsel chose to incur, by traveling to Austin for s deposition that he had known for a week would not take place, for the purpose of seeking to impose those costs on Defendants.

8. **Plaintiff's motion to compel re RFP No. 18 (Dkt. 91)**

**Plaintiff's position:** Plaintiff reiterates his briefing and that this is routine follow-up discovery based on a document received by Plaintiff in UT's first production. The

parties discussed a possible negotiated solution that would involve UT searching the custodians' UT email accounts and the custodians conducting a self-search of private accounts and devices. However, Defendants stated that these negotiated searches would only occur "subject to the Court's rulings on Tuesday," so no present agreement was reached.

**Defendants' position:** Just as for the motions regarding Professor Kamm, Lowery's motion seeking to impose unnecessary burdens on Professors Almazan and Alti is another demonstration that Lowery's purpose in filing this lawsuit is to extract a penalty against those Lowery dislikes, not to litigate a federal claim. Lowery already has obtained discovery showing that Almazan and Alti have not communicated with any University officer or employee (other than one already-disclosed email making no threats or comments on Lowery's speech) that could even arguably be in a position to have given Lowery a reasonable fear of retaliation in August 2022. As Lowery's reply brief admits, this RFP is an improper speculative fishing expedition, and it is just the next step in his intended crusade to conduct discovery against any UT employee whose views on him Lowery wants to learn. *See* Dkt. 102 at 3–4. Lowery is fundamentally wrong that his self-chilling claim against three named Defendants could ever support discovery into third parties' communications with other third parties, especially when discovery to-date confirms that none of those third parties ever communicated with a relevant actor with respect to Lowery's claim.

|  |  |
|---|---|
| Respectfully submitted, | Dated: February 9, 2024 |
| *s/Endel Kolde* | *s/Michael E. Lovins* |
| Endel Kolde | Michael E. Lovins |
| WSBA No. 25155 | State Bar No. 24032555 |
| Courtney Corbello | LOVINS | TROSCLAIR, PLLC |

7

State Bar No. 24097533
Nathan Ristuccia
VA Bar No. 98372
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
(202) 301-1664
dkolde@ifs.org
ccorbello@ifs.org
nristuccia@ifs.org

1301 S. Cap. Of Texas
Building A Suite 136
Austin, Texas 78746
Tel: 512.535.1649
Fax: 214.972.1047
michael@lovinslaw.com

*Attorneys for Richard Lowery*


/s/ Matt Dow
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
Jackson Walker LLP
100 Congress Ave., Suite 1100
(512) 236-2056 – Phone
(512) 691-4456 – Fax

*Attorneys for Defendants*