UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RICHARD LOWERY,<br>*Plaintiff*<br><br>v.<br><br>LILLIAN MILLS, IN HER OFFICIAL CAPACITY AS DEAN OF THE MCCOMBS SCHOOL OF BUSINESS AT THE UNIVERSITY OF TEXAS AT AUSTIN; ETHAN BURRIS, IN HIS OFFICIAL CAPACITY AS SENIOR ASSOCIATE DEAN FOR ACADEMIC AFFAIRS OF THE MCCOMBS SCHOOL OF BUSINESS AT THE UNIVERSITY OF TEXAS-AUSTIN; AND CLEMENS SIALM, IN HIS OFFICIAL CAPACITY AS FINANCE DEPARTMENT CHAIR FOR THE MCCOMBS SCHOOL OF BUSINESS AT THE UNIVERSITY OF TEXAS-AUSTIN,<br>*Defendants* | No. 1-23-CV-00129-DAE |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE DAVID A. EZRA
      SENIOR UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Richard Lowery's Opposed Motion for Leave to Amend the Complaint and Add Jay Hartzell as Defendant, Dkt. 94, and all related briefing. After reviewing the parties' filings and the relevant caselaw, the undersigned recommends granting the motion.

1

## I. BACKGROUND

This case arises under 42 U.S.C. § 1983 and concerns the University of Texas's ("UT") alleged attempts to chill the public speech of Professor Richard Lowery. Dkt. 1, at 20-21. Lowery, who teaches in the McCombs School of Business at UT, uses "social media and online opinion articles to publicly criticize university officials' actions, and ask elected state-government officials to intervene." *Id.* at 2. Specifically, Lowery comments on UT's approach to issues "such as critical-race theory indoctrination, affirmative action, academic freedom, competence-based performance measures, and the future of capitalism." *Id.* at 4. Lowery claims UT officials have responded to his activities with a "campaign to silence him by threatening his job, pay, institute affiliations, research opportunities, academic freedom, and labeling his behavior as inviting violence or lacking in civility." *Id.* at 2.

Based on this alleged campaign, Lowery initially brought two claims. The first for chilling of free speech by state actors related to threats to "reduce [his] pay, involuntarily end his affiliation with the Salem Center, [and] reduce his access to research opportunities." *Id.* at 21. Lowery contends these threats are "designed to silence [his] criticisms or change the content of this speech to make it less critical, disagreeable, or offensive." *Id.* Lowery also brought a claim for "retaliation for protected speech as a citizen and academic" based on UT's alleged efforts to retaliate against him for his protected speech by making threats that caused him to "refrain from speaking." *Id.* at 23.

In response to Lowery's complaint Defendants filed a Motion to Dismiss, Dkt. 15, which the District Judge granted in part and denied in part. The District Judge dismissed without prejudice Lowery's retaliation claim (Count 2 of the complaint) because his "allegations of threats are insufficient to establish an adverse employment action." Dkt. 51, at 24. Lowery's chilled speech claim is now the only live claim before the Court.

Lowery seeks leave to amend his complaint to add UT President Jay Hartzell as a defendant and add a new claim "challenging UT's unwritten speech code or practice." Dkt. 94, at 12. As to Hartzell, Lowery claims that he "suspected [Hartzell] was a central figure in the campaign to silence him" from the beginning but has only recently "acquired significant new evidence about ... Hartzell's involvement" through discovery. Dkt. 94, at 4-5. He also states that discovery concerning communications between Defendants and Hartzell have helped him "crystalize pre-existing arguments about UT's unwritten 'implicit policy' proscribing [his] speech ... into a second separate count." *Id.* at 6. Lowery also intends to add "new factual allegations, especially about fundraising problems that [his] speech caused, the anonymous denunciation email, and [his] opinion that UT leaders, and especially Hartzell, act hypocritically in supporting DEI ideology." *Id.*

Under the parties' current scheduling order, the deadline to file motions to amend or supplement pleadings or to join additional parties is March 2, 2024. Dkt. 57, at 1. Lowery's motion, filed February 2, 2024, is therefore timely.

3

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure favor amendment. A party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). After this time period has passed, a party may amend its pleading with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982). A court's discretion to grant leave is "severely restricted" by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend should not be denied unless there is a *substantial reason* to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *see McClure v. Turner*, 481 F. App'x 167, 171 (5th Cir. 2012).

### III.  DISCUSSION

Defendants oppose Lowery's motion on the basis that: (1) the amended complaint seeks the same relief as the original complaint and amendment is therefore unnecessary; (2) the amendments will serve as the basis for "burdensome and harassing discovery"; (3) the proposed speech-code claim "is really just a sub-claim" of the live self-chilling claim and is "merely a repackaged retaliation claim based upon the already rejected allegations that UT has taken action against him for his speech and seeking the same previously foreclosed relief." Dkt. 113, at 2-3. Defendants contend Lowery's motion for leave to amend should be denied "for at least the reasons that it has been filed in bad faith or with dilatory motive, would cause undue prejudice, and is ultimately futile." *Id.* at 3.

Defendants' opposition primarily concerns bad faith or dilatory motive and futility. The undersigned will consider these factors alongside undue delay, repeated failure to cure deficiencies, and undue prejudice to the opposing party. Here there is no undue delay because Lowery moved to amend within the deadline set out in the scheduling order and because he moved for leave to name Hartzell based on recent discovery concerning Hartzell's communications with Defendants. *Merritt Hawkins & Assocs., LLC v. Gresham*, 300 F.R.D. 311, 314 (N.D. Tex. 2014) (finding there was no undue delay where plaintiff sought to add a new party based on recent discovery and requested leave before the scheduling order's amended pleading deadline). Next, because this is the first time Lowery has moved to amend his pleadings, there has been no failure to cure deficiencies by amendments previously allowed. As to undue

5

prejudice, while Defendants made a passing reference to potential undue prejudice, they did not explain how they would be prejudiced by the proposed amendment. Discovery is open in this case until May 1, 2024, and there is no trial setting. Dkt. 57, at 2. Therefore, it is unlikely Defendants will suffer prejudice if Lowery is allowed to amend his complaint. *Grimes v. Avis Budget Grp., Inc.*, No. 3:20-CV-0486-M-BH, 2021 WL 2167005, at *5 (N.D. Tex. May 27, 2021) (finding no prejudice where plaintiff sought leave to file an amended complaint after the amended pleadings and discovery deadline passed because there was no trial setting).

### A. Bad Faith and Dilatory Motive

As to bad faith and dilatory motive, Defendants contend that "no credence [should be given] to Lowery's assertion that he could not have added Hartzell as a defendant any earlier (i.e., at a time that would have been less likely to cause delays …)" because "Lowery mentioned Hartzell eight times in his original complaint" and could have named Hartzell "long ago." Dkt. 113, at 6. Defendants state that in briefing his motion for preliminary injunction in March 2023, Lowery contended he had "credible evidence ... that UT President Jay Hartzell wanted [him] silenced." Dkt. 113, at 6 (citing Dkt. 17, at 1). UT argues this contention undermines Lowery's current claim that recent discovery motivated him to add Hartzell as a defendant. Dk. 113, at 6. Defendants suggest Lowery's delay could give rise to the inference that he is engaging in tactical maneuvers, moving for leave to amend in bad faith or with dilatory motive, warranting denial of leave. *Id.*, at 5 (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (citation omitted); *Morales v. Copestone Gen.*

6

*Contractors*, No. EP-23-CV-00268-DB, 2024 WL 492396, at *3-4 (W.D. Tex. Feb. 8, 2024)).

The cases cited by UT, however, are not persuasive here. In *Wimm,* the court found bad faith and dilatory motive because the motion for leave to amend was "obviously interposed by plaintiffs in an attempt to avoid summary judgment" and it was clear that the plaintiff previously had ample opportunity to investigate their claims and seek leave to amend. 3 F.3d at 139-40. And, in *Morales,* the plaintiff requested leave to amend to add his employer, claiming he had only "recently been made aware of the involvement [of the prospective defendant-employer]." 2024 WL 492396, at *3. However, the prospective defendant-employer was a business owned by the plaintiff's own son. *Id.* Understandably, the Court in *Morales* found it "inherently suspect" that the plaintiff was not aware of "his own son's identity, nor the fact that he purportedly worked for his son's company on the date of the alleged fall" and ruled that the request for leave to amend as to the prospective defendant-employer was made in bad faith and with dilatory motive. *Id.*

Here, Lowery states that throughout the initial pleading stage he suspected Hartzell's involvement but has only recently come to learn more about his role through discovery, specifically depositions of the named Defendants. At this stage, before dispositive motions have been filed, Lowery's request for leave to amend is not dilatory, particularly where no trial date has been set and discovery remains open. *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 720 (W.D. Tex. 2014) ("Generally a plaintiff is not dilatory in seeking to amend a complaint when no trial or pre-trial

dates [have been] scheduled and no significant activity beyond the pleading stage has occurred.") (quotation and citation omitted); *WRR Indus., Inc. v. Prologis*, No. 3:04-CV-2544-L, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding bad faith and dilatory motive where the motion for leave to amend would fundamentally alter the case after 18 months, and motions to dismiss and for summary judgment had been filed).

B.   Futility

Lastly, Defendants argue Lowery's motion for leave to amend is futile in two ways. One, because "the injunctive and declaratory relief [Lowery] seeks would be effective if awarded against the current Defendants," and therefore, Lowery does not need to add Hartzell as a defendant. Dkt. 113, at 6. And two, because the new speech-code claim at Count 2 of the proposed amended complaint "seeks to impose liability for the very same conduct that the Court already determined has not occurred and would not be actionable in any event." *Id.* at 7.

The Fifth Circuit has interpreted futility under Rule 15 to mean that "the amended complaint would fail to state a claim upon which relief could be granted"—courts, therefore, apply the same standard as under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Leave to amend need not be granted when the amended complaint would not survive a motion to dismiss. *See id.* The issue of futility, however, is better addressed "in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer." *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2011 WL 4941044, at *1 (N.D. Tex. Oct. 17, 2011); *see also McDade*

8

*v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 WL 4860023 at *4 (S.D. Tex. Oct. 13, 2011) (explaining that in the context of a motion for leave, futility means that "the amended complaint would fail to state a claim upon which relief could be granted") (internal citation omitted). The "almost unvarying practice when futility is raised [in response to a motion for leave to amend] is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion ... where the procedural safeguards are surer." *Poly-America, Inc. v. Serrott Int'l Inc.*, No. 3:00-CV-1457-D, 2002 WL 206454, at *4-5 (N.D. Tex. Feb. 7, 2002) (citation omitted).

As an initial matter, the undersigned finds that Defendants' argument concerning the availability of injunctive and declaratory relief against the current Defendants does not address futility in the context of Rule 15, where futility is concerned with the sufficiency of the pleadings. As to whether the new speech-code claim simply rehashes the now-dismissed retaliation claim, the undersigned turns to the proposed amended complaint.

Lowery proposes adding a claim for a "facial and as applied challenge to unwritten speech code or practice." Dkt. 94-4, at 31. He proposes adding text alleging that "UT maintains an unwritten speech code or practice that allows for administrators to counsel or discipline faculty for 'uncivil' or 'rude' speech" and states that these undefined terms "invite UT administrators to apply their own biases to determine when a faculty member has said something that is 'uncivil' or 'rude'." *Id.* Lowery also proposes amending his complaint to add text concerning the selective

9

enforcement of the speech code against him and not others. *Id.* at 32. His complaint, as edited, states:

> Defendants retaliated against Lowery for his protected speech *by seeking to have him 'counseled' over his speech, labeling his speech as 'uncivil' and 'disruptive',* threatening to reduce Lowery's pay, involuntarily end his affiliation with the Salem Center, reduce his access to research opportunities, inquire about his tweets, labeling him, requesting that his speech be placed under police surveillance, and otherwise disciplining him."

*Id.* at 33. (emphasis denotes new proposed text). Lowery proposes removing any reference to actual removal of his job duties or restrictions of his rights, thereby limiting his claims to threats to his job duties, rights, and opportunities. *Id.* at 33-36.

Defendants' position is that the proposed amended complaint seeks to impose liability "for the very same conduct that the Court already determined has not occurred and would not be actionable in any event." Dkt. 113, at 8. Specifically, Defendants point to the sections of the amended complaint that allege that:

> [UT] allows for administrators to counsel or discipline faculty for "uncivil" or "rude speech"; that the alleged unwritten speech code allows for the labeling of speech as "disruptive"; that Lowery could potentially be labeled "rude" or asked to tone-down speech; that the speech code is selectively enforced; and that Lowery has been retaliated against through "labeling" of his speech and Defendants' attempt to have him "counseled."

Dkt. 113, at 8 (citing Amended Complaint, Dkt. 94-4, at 33).

However, this is not the very same conduct pleaded as part of the retaliation claim that was grounds for the District Judge's dismissal of that claim. The retaliation claim was dismissed because of the speculative nature of the alleged

adverse employment action. *See* Dkt. 51, at 24.[1] To the extent the retaliation claim, and the speech-code claim share underlying factual matter, the District Judge did not conclude that those events did not occur or would not be actionable if pleaded as part of a different claim. Here, the proposed amendments constitute a new claim, not merely a restatement of the retaliation claim. As far as the merits of the speech-code claim, they are best addressed in the context of a Rule 12(b)(6) (or Rule 56 motion) which Defendants have stated they plan to file if the speech-code claim is permitted to be added.

\* \* \*

Having considered the relevant factors, there is no "substantial reason" to deny Lowery's Opposed Motion For Leave to Amend the Complaint and Add Jay Hartzell as Defendant, Dkt. 94. The motion should be granted.

## IV.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Lowery's Opposed Motion For Leave to Amend, Dkt. 94. The referral of this case should be **CANCELED**.

---

[1] Stating: "Here, Plaintiff alleges that he experienced an adverse employment action when Defendants threatened 'to reduce [his] pay, involuntarily end his affiliation with the Salem Center, reduce his access to research opportunities, inquire about his tweets, labeling him, requesting that his speech be placed under police surveillance, or otherwise disciplining him.'" (Dkt. # 1 ¶ 90.) However, these allegations of threats are insufficient to establish an adverse employment action for a First Amendment retaliation claim in the Fifth Circuit. *See Breaux*, 205 F.3d at 160. The mere threat or potential of an ultimate employment decision will not suffice. *Id*. Because he has not sufficiently alleged an adverse employment action, the Court will dismiss without prejudice Plaintiff's First Amendment retaliation claim."

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED March 5, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE