UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 1:23-cv-00129-DAE |
| LILLIAN MILLS, et al., | § § | |
| *Defendants*, | § § | |

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**Table of Contents**

Table of Authorities.................................................................................................................................iii

Introduction ................................................................................................................................................1

Standard ......................................................................................................................................................2

Argument....................................................................................................................................................2

    I.   Lowery's "chilled speech" claim is a retaliation claim, which is foreclosed under Fifth Circuit precedent for lack of an adverse employment action. .................................2

    II.  Lowery has not alleged sufficient facts to support his claim that Defendants maintain an unwritten speech code. ......................................................................................6

        A. Lowery has not has not alleged sufficient facts to support his claim that an unwritten policy exists………………………………………………………… 8

        B. Lowery has not alleged sufficient facts to infer that Defendants enforced an unwritten speech policy against him. …………………………………….. 10

Conclusion................................................................................................................................................11

## Table of Authorities

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................... 2

*Breaux v. City of Garland,*
    205 F.3d 150 (5th Cir. 2000) ........................................................................ 3, 5, 6, 10

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) ..................................................................................... 9

*Colson v. Grohman,*
    174 F.3d 498 (5th Cir. 1999) .................................................................................. 3, 6

*Dorsett v. Board of Tr.,*
    940 F.2d 121 (5th Cir. 1991) ............................................................................. 3, 5, 9

*Harrington v. Harris,*
    118 F.3d 359 (5th Cir. 1997) ................................................................................. 5, 6

*Hawkland v. Hall,*
    860 F. App'x 326 (5th Cir. 2021) ............................................................................... 2

*Jackson v. Wright,*
    No. 4:21-CV-00033, 2022 WL 179277 (E.D. Tex. Jan. 18, 2022) ............................ 9

*Keenan v. Tejeda,*
    290 F.3d 252 (5th Cir. 2002) ............................................................................ 3, 4, 5

*Kriss v. Fayette Cnty.,*
    504 Fed. App'x 182 (3d Cir. 2012) ............................................................................ 8

*McCauley v. City of Chicago,*
    671 F.3d 611 (7th Cir. 2011) ..................................................................................... 8

*Pickering v. Board of Educ.,*
    391 U.S. 563 (1968) ................................................................................................... 5

*Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.,*
    37 F.3d 1146 (5th Cir. 1994) ..................................................................................... 6

*Powell v. Ryan*,
　855 F.3d 899 (8th Cir. 2017) ................................................................................................. 9

*Villarreal v. City of Laredo*,
　94 F.4th 374 (5th Cir. 2024) ................................................................................................. 4

*Wilson v. Tregre*,
　787 F.3d 322 (5th Cir. 2015) ................................................................................................. 3

**INTRODUCTION**

Plaintiff Richard Lowery is a tenured professor who is allegedly chilling his expression by setting his Twitter account to private and only speaking at closed events. According to Lowery, this chill emanates from two sources. First, he complains that university officials asked his friend and ally, Professor Carlos Carvalho, to counsel Lowery to tone down his speech and to stop telling donors not to give money to universities. Although Lowery does not allege that Carvalho complied with those requests or that any Defendant actually threatened or even "counseled" him over his public speech, Lowery alleges that hearing his speech described as "uncivil" and "disruptive" cowed him into silence. *See* Dkt. 126 (Am. Comp.) ¶126. Second, Lowery alleges Defendants maintain an unwritten speech code against "uncivil" and "rude" speech that has been enforced only against him. *See id.* ¶119. The supposed enforcement of that unwritten code is the same allegedly-desired-but-unimplemented "counsel[ing]" that Lowery relies upon for his chilled-speech claim and the alleged retaliation he described in his previously dismissed retaliation claim. Neither claim satisfies the pleading standard.

First, Lowery's "chilled speech" claim is simply a rebadged First Amendment retaliation claim, and as such it is fatally flawed because Lowery does not allege that Defendants have done anything to him that qualifies as an adverse employment action. Although this Court previously found that Lowery's alleged self-chilling is an *injury* sufficient to satisfy Article III standing, Dkt. 51 (MtD Order) at 16, a public employee claiming that his employer punished or threatened him for his protected speech must allege an actionable adverse employment action—and the Court correctly dismissed Lowery's retaliation claim because none of the harms or threats alleged by Lowery qualifies as an adverse employment action, *id.* at 24. Lowery's "chilled speech" claim should be dismissed as to all Defendants, or at a minimum as to new Defendant President Hartzell.[1]

---

[1] President Hartzell, as a newly added Defendant, has not yet had the opportunity to seek dismissal of count one. And given that Lowery has revised the allegations in count one in the amended complaint, the original Defendants should also be allowed to seek dismissal of count one in the amended complaint. Moreover, because significant fact discovery related to count one has already been conducted, Defendants will also move for summary judgment on that ground.

1

Lowery's claim that "UT maintains an unwritten speech code or practice," Dkt. 126 (Am. Compl.) ¶119, is a legal conclusion that is insufficient under *Iqbal/Twombly*. The alleged events he invokes to support the claim are the same alleged events that he relied upon for his dismissed retaliation claim and his defective self-chill retaliation claim. Lowery cannot rehabilitate his failed retaliation claim by recasting it as a challenge to an unwritten speech code that purportedly applies to Lowery alone. This new claim should be dismissed as to all Defendants.

## STANDARD

Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). This analysis hinges upon whether the plaintiff pled a "plausible" (as opposed to merely a "possible") claim for relief; the Court asks whether the plaintiff asserted "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And if "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and dismissal is appropriate. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## ARGUMENT

Both of Lowery's claims should be dismissed. His self-chill claim is a rebranded retaliation claim—and the Court previously held that Lowery's failure to plead a cognizable adverse action precluded his retaliation claim. And Lowery fails to allege facts supporting the existence of an unwritten speech code or practice; he merely states a legal conclusion, which is insufficient under *Iqbal* and *Twombly*.

**I. Lowery's "chilled speech" claim is a retaliation claim, which is foreclosed under Fifth Circuit precedent for lack of an adverse employment action.**

The Fifth Circuit has long required public university professors and other plaintiffs claiming that their governmental employer punished them (or threatened to punish them) for their expressive activities to show that the defendant took an adverse employment action against them. *See, e.g.*, *Hawkland v. Hall*, 860 F. App'x 326, 329-30 (5th Cir. 2021) ("To succeed in a First Amendment retaliation claim," a "*public employee* must show (1) he suffered an adverse employment action; (2) he spoke as a

2

citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." (emphasis added) quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (internal quotation marks and citation omitted). By contrast, "to establish a First Amendment retaliation claim *against an ordinary citizen*, [plaintiffs] must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 n.4 (5th Cir. 2002) (emphasis added). Thus, the elements of a First Amendment retaliation claim differ depending on whether the plaintiff is an employee of the governmental defendant. One key difference is that public-employee retaliation plaintiffs must show that they suffered an adverse employment action at the hands of the defendant, whereas retaliation plaintiffs who are not employees of the governmental defendant do not.

"In the employment context, [the] requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation." *Keenan v. Tejeda*, 290 F.3d 252, 258 n.4 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 510, 514 (5th Cir. 1999)). The Fifth Circuit has recognized that "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. The Fifth Circuit has further explained that, "[i]n public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters." *Dorsett v. Board of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991). And the Fifth Circuit has concluded that it has "neither the competency nor the resources to micromanage the administration of thousands of state educational institutions." *Id.* at 124.

This Court recognized that Lowery hasn't pleaded a viable retaliation claim because Defendants haven't allegedly threatened or done anything to him that qualifies as an adverse employment action. Dkt. 51 (MtD Order) at 24 (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)).

3

In an effort to avoid this defect, Lowery purports to bring a separate cause of action alleging that he chilled his own speech because Defendants were threatening to punish him in retribution for publicly criticizing them. But that is precisely what a First Amendment retaliation claim alleges, and Defendants are not aware of any Fifth Circuit precedent allowing a government-employee plaintiff to circumvent the adverse-employment-action requirement by bringing a "chilled speech" claim instead of (or in addition to) a First Amendment retaliation claim. Lowery's alleged chilling of his own speech in response to Defendants' purportedly punitive actions is not a distinct cause of action separate from his retaliation claim, but merely a type of injury-in-fact that provided standing for his retaliation claim. In short, Lowery's "self-chill" claim is simply a retaliation claim that disavows that label in an effort to avoid the adverse-employment-action element.

The Court's order on Defendants' Motion to Dismiss Plaintiff's original complaint implicitly recognized that Lowery's "chilled-speech" claim is, in essence, a retaliation claim. That order recited the elements listed in *Keenan*, a First Amendment retaliation case, as the elements required "[t]o establish a chilled speech claim." Dkt. 51 (MtD Order) at 25 (citing *Keenan*, 290 F.3d at 258); *see also Keenan*, 290 F.3d at 258. As noted above, the elements for a First Amendment retaliation claim brought by a governmental employee include an adverse employment action, whereas those brought by a retaliation plaintiff who is not an employee of the governmental defendant do not.

Not requiring a First Amendment retaliation plaintiff to show an adverse employment action makes perfect sense when the plaintiff is not an employee of the defendant—as was the case for Keenan, who had resigned from his deputy-constable job prior to making the reports that the defendant allegedly retaliated against him for making. 290 F.3d at 256; *see also id.* at 258 ("Unlike most of this circuit's First Amendment retaliation cases, this case does not involve an employment or other contractual relationship between the plaintiffs and the governmental officials."); *see also Villarreal v. City of Laredo*, 94 F.4th 374, 397 (5th Cir. 2024) (applying same elements in First Amendment retaliation suit by "citizen-journalist" against defendant city, which was not her employer). But it makes no sense to omit the adverse-employment-action requirement when the plaintiff is an employee of the governmental defendant he claims is retaliating against him for his speech. Otherwise, every public-employee

4

retaliation plaintiff whose alleged injury is something less than an adverse employment action could simply recast his retaliation claim as a "chilled-speech" claim. That result would allow plaintiffs to clog the federal courts with the very "minor instances of retaliation" that the adverse-employment-action element is intended to "weed[] out." *Keenan*, 290 F.3d at 258 n.4.

Under Fifth Circuit precedents, Lowery has not plausibly alleged that he has suffered or has been threatened to suffer an actionable instance of retaliation.[2] Lowery allegedly fears that "Defendants will not renew his appointment to the Salem Center, costing him the $20,000 annual stipend that comes with that position," Dkt. 126 (Am. Compl.) ¶ 87; "Defendants will remove his supervisory role at the Policy Research Lab, and the opportunities to publish academic research that the Policy Research Lab generates for Lowery," *id.* ¶ 88. But those are the same alleged threats that Lowery unsuccessfully invoked to support his dismissed retaliation claim, and which the Court found "insufficient to establish an adverse employment action for a First Amendment retaliation claim in the Fifth Circuit." *See, e.g.*, Dkt. 51 (MtD Order) at 24. As the Court recognized, Fifth Circuit precedent holds that threats are not adverse employment actions. *Id.* (citing *Breaux*, 205 F.3d at 160); *see Breaux*, 205 F.3d at 160 ("[R]etaliatory threats are just hot air unless the public employer is willing to endure a lawsuit over termination.").[3]

---

[2] Lowery's counsel dreams this case is squarely governed by *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See, e.g.,* Dkt. 114 (Feb. 12, 2023 Hearing Tr.) at 35:11–17. There and here plaintiffs were educators employed by a government entity. But Pickering was fired from his teaching job. 391 U.S. at 564. By contrast, Lowery has not been terminated, nor does he even allege that he has been threatened with being fired from his tenured teaching position. *See generally* Dkt. 126 (Am. Compl.).

[3] Even if Lowery had alleged Defendants carried out the purported threats discussed above, those actions likely would not be actionable under Fifth Circuit precedent. Lowery's appointments to the Salem Center and Policy Research Lab are like the teaching assignments and summer employment denied in *Dorsett*, where the Fifth Circuit "recognize[d] that such decisions might seem extremely significant to Dorsett, who has devoted his life to teaching," but "nevertheless . . . d[id] not rise to the level of a constitutional deprivation." 940 F.2d at 123. Similarly, the stipend that accompanies the Salem Center position is like the "'pay increases' [that] do[] not rise to the level of a constitutional deprivation." *Harrington*, 118 F.3d at 366 (quoting *Dorsett*, 940 F.2 at 124). But Lowery does not allege that Defendants have taken any of those actions against him.

5

That leaves "attempting to label Lowery as lacking civility, being dangerous, violent, or in need of police surveillance." Dkt. 126 (Am. Compl.) ¶90. In short, Lowery fears that Defendants will criticize him. But "mere accusations or criticism," including "oral threats or abusive remarks," do not qualify as adverse employment actions. *Breaux*, 205 F.3d at 157–58 (citing *Harrington*, 118 F.3d at 366). Even if Lowery claimed to fear an *actual* police investigation—instead of merely imagining that Defendants will label him as "in need of police surveillance," Dkt. 126 (Am. Comp.) ¶90—that would still not qualify as an adverse action. *See Breaux*, 205 F.3d at 158 (holding that police investigation was not an adverse employment actions); *Pierce*, 37 F.3d at 1150 (holding that investigations of corrections officer, which did not "result[] in any action being taken" against her, were not actionable for First Amendment retaliation purposes); *Colson*, 174 F.3d at 511 (holding that city councilmember's claim that she was subject to criminal investigation in retaliation for her expressive activities was not actionable when plaintiff "was never arrested, indicted, or subjected to a recall election," or even "formally reprimanded").

This Court correctly dismissed Lowery's original retaliation claim because "he has not sufficiently alleged an adverse employment action." Dkt. 51 (MtD Order) at 24. Because Lowery's chilled-speech claim suffers from the same fundamental flaw, the Court should dismiss that claim for the same reason.[4]

## II. Lowery has not alleged sufficient facts to support his claim that Defendants maintain an unwritten speech code.

Lowery's second claim includes the following allegations:

- "UT maintains an unwritten speech code or practice that allows for administrators to counsel or discipline faculty for 'uncivil' or 'rude' speech," Dkt. 126 at ¶119;

- "UT's unwritten speech code or practice forbids faculty members, such as Richard Lowery, from advocating that donors stop donating to UT or that elected officials defund UT as a way of advocating for policy changes at UT," *id.* ¶120;

---

[4] Fact discovery on this claim has been ongoing for many months, and the evidence defeats this claim as a matter of law. Accordingly, Defendants will also be filing a motion for summary judgment on this claim that the Court should consider along with this motion. Granting either or both motions as to count one would resolve the self-chill claim.

- "UT's unwritten speech code or practice does not sufficiently cabin official discretion and thereby invites selective enforcement against disfavored viewpoints or speakers," *id.* ¶121;

- "faculty expressing leftwing views are not asked to tone-down their tweets or make them more civil or less rude," *id.* ¶122;

- "Defendants' selective enforcement of UT's unwritten speech code or practice also invites other faculty or staff to make ill-conceived or bad-faith complaints about 'safety,' 'offensiveness,' or 'standards of ethics or respect for faculty' about speech that dissents from majority viewpoints on the UT campus," *id.* ¶123;

- Defendants, individually, and in concert with each other acted to enforce UT's unwritten speech code or practice against Lowery for his protected speech because it was embarrassing to them and others in the UT administration and also because they feared the possibility of elected officials or the public scrutinizing their behavior," *id.* ¶124;

- "Defendants also selectively enforced UT's unwritten speech code or practice against Lowery because they disagreed with his opinions, and found his commentary offensive and thought that it offended other, more favored faculty at UT," *id.* ¶125;

- Defendants retaliated against Lowery for his protected speech by seeking to have him 'counseled' over his speech, labeling his speech as 'uncivil' and 'disruptive,' threatening to reduce Lowery's pay, involuntarily end his affiliation with the Salem Center, reduce his access to research opportunities, inquire about his tweets, labeling him, requesting that his speech be placed under police surveillance, or otherwise disciplining him," *id.* ¶126.

- Defendants' actions and threats were such that a reasonable person in Lowery's position would refrain from speaking in the ways at issue in this case," *id.* ¶127;

- "By applying their unwritten speech code against Richard Lowery for his protected speech, Defendants . . . violated and continue to violate Richard Lowery's free speech rights under the First and Fourteenth Amendments," *id.* ¶128.

Lowery's unwritten speech code claim fails to satisfy *Iqbal/Twombly*, in at least two related respects. First, Lowery has not pleaded sufficient facts that, if true, would establish the existence of a policy or practice. His allegation that UT Austin maintains an "unwritten speech code" that has been applied solely against him is simply another recasting of his First Amendment retaliation claim, which failed for lack of an adverse employment action. Second, Lowery alleges that "UT" maintains an unwritten speech code, but the University is not a defendant, and Lowery does not plead any facts from which it could be inferred that Defendants Hartzell, Mills, Burris, or Sialm created this purported speech policy or actually enforced it against Lowery.

7

## A. Lowery has not has not alleged sufficient facts to support his claim that an unwritten policy exists.

The existence of an unwritten policy is a legal conclusion that needs factual support. *See, e.g.*, *McCauley v. City of Chicago*, 671 F.3d 611, 617–18 (7th Cir. 2011); *see also Kriss v. Fayette Cnty.*, 504 Fed. App'x 182, 187 (3d Cir. 2012). Here Lowery does not allege any instances or facts to support his claim that an unwritten policy exists, except for that Defendants and others criticized his speech. Lowery does not allege that he has ever been disciplined for his speech or that any Defendant has accused him of violating a UT or McCombs speech policy, written or unwritten. And his allegation that UT Austin does not enforce its purported unwritten policy against "other faculty members," Dkt. 126 at ¶122, merely highlights that what Lowery describes as enforcement of a "policy or practice" against "rude or uncivil speech" is merely instances of Defendants and others discussing Lowery's speech with persons other than Lowery in contexts that did not result in any discipline for Lowery.

For example, Lowery alleges that Associate Dean Burris discussed "the importance of civility" with Carlos Carvalho in an August 2022 meeting after Lowery had issued several public tweets criticizing the GSLI program and its leadership, including one that referred to his GSLI McCombs colleagues as "shameless and awful." Dkt. 126 at ¶¶40, 61. But Lowery does not allege that Burris disciplined him, asked Carvalho to discipline Lowery, or that Burris accused Lowery of violating any UT or McCombs policy. Similarly, Lowery alleges that non-Defendant Sheridan Titman told another non-Defendant (Laura Starks): "I don't think rude comments are acceptable." *Id.* at ¶72. But Lowery does not allege that Titman disciplined Lowery, asked Starks to do anything to Lowery, or accused Lowery of violating any UT or McCombs policy. Thus, even taking those allegations as true, Burris and Titman's statements *that were not made to Lowery* expressing their preference for civility or avoiding rudeness in the workplace are insufficient to establish that Defendants maintain an unwritten speech code or practice that exposed Lowery to discipline for 'uncivil' or 'rude speech.'" *Id.* at ¶119.

An unwritten policy exists only to the extent that it is enforced or otherwise made known, and an unwritten policy that is allegedly enforced only against a single person is hardly a policy. Rather, it

8

is simply a reflection of one person's individual experiences. For a governmental employee like Lowery, whether statements allegedly made or actions allegedly done to him in response to his speech violate his First Amendment rights depend on, among other things, whether the employee has suffered an adverse employment action; otherwise, federal courts will be flooded with complaints about "relatively trivial matters" and wind up "micromanag[ing] the administration of thousands of state educational institutions." *Dorsett*, 940 F.2d at 124. Lowery should not be permitted to skirt the government-employee retaliation standard simply by stating the unsupported legal conclusion that an "unwritten speech code exists." To do so would permit a plaintiff to transform an unsuccessful retaliation claim into a claim that the defendant maintains an "unwritten speech code," applicable only to him, with a simple sentence.

While moving for leave to amend, Lowery claimed that "unconstitutional policies need not be written. Implicit policies can be enough," citing *Jackson v. Wright*, No. 4:21-CV-00033, 2022 WL 179277, at *7 (E.D. Tex. Jan. 18, 2022). Dkt. 94 (Motion for Leave to Amend) at 9; *see also* Dkt. 115 (Reply ISO Leave to Amend) at 7. To be clear, Defendants are not arguing that a policy cannot exist unless it is reduced to writing. But there must be an actual policy. Lowery must plead facts that, if true, would support the existence of an established speech code. He conspicuously has not done so. If Lowery is to receive the benefit of skirting well-established Fifth Circuit precedent for the retaliation standard, there must be some factual support for the existence of the policy.

Defendants themselves have not invoked a policy; that makes this case in contrast, for example, to *Buchanan v. Alexander*, 919 F.3d 847, 851–52 (5th Cir. 2019), when LSU invoked the University's sexual harassment policies to terminate a professor. There it at least made sense to evaluate the policy. Or, as another example, *Powell v. Ryan*, officials removed a religious evangelist from the Iowa State Fair. 855 F.3d 899, 901 (8th Cir. 2017). After Powell claimed this removal violated his free speech rights, "officials responded they acted based on two unwritten Fair rules." *Id.* 901–02. There, plaintiff's challenge to an unwritten policy made sense because Defendants invoked it as the basis for their action. Here, Defendants have not claimed their alleged actions were the enforcement of policy. Lowery is recasting his allegations about events that allegedly happened to him (or that he feared will

9

happen to him) in an attempt to evade the retaliation standard that he knows defeats his claims. But Lowery's imagination cannot replace the requirement that Lowery allege facts that would support a speech-code claim.

In sum, Lowery alleges that Defendants and others griped about his speech but does not allege that they disciplined him or concluded that his speech violated any UT or McCombs policy. That is not enough to infer that Defendants maintain an unwritten speech policy that they enforce uniquely against him.

### B.   Lowery has not alleged sufficient facts to infer that Defendants enforced an unwritten speech policy against him.

Even if Lowery has alleged that an unwritten speech policy exists, he has not alleged facts sufficient to plausibly imply that Defendants created it or have enforced it against him. To begin with, Lowery alleges that it is "UT," not any Defendant, that "maintains an unwritten speech code or practice that allows for administrators to counsel or discipline faculty for 'uncivil' or 'rude' speech." Dkt. 126 ¶119. But UT Austin is not a defendant here. Indeed, paragraphs 117-122 of Lowery's amended complaint regarding his speech-code claim do not allege any specific action by any Defendant. *Id.* ¶117-22. Instead, those paragraphs make only vague references to "UT," "UT administrators," and "other faculty members." *Id.*

Lowery alleges that "Defendants, individually and in concern with each other acted to enforce UT's written speech code or practice against Lowery," ¶124, but he does not say *how* Defendants purported enforced the unwritten policy. Notably, Lowery does not allege that any Defendant has disciplined or even counseled him over his speech. Lowery alleges that Defendants Mills and Burris asked Carlos Carvalho if *he* would counsel Lowery, but he also states that Carvalho refused to do so. ¶59. Similarly, Lowery alleges that Sheridan Titman told Carvalho, "We need to do something about Richard," ¶54, but he does not allege that Titman—who is no longer a defendant—counseled Lowery, disciplined him, or took any adverse action against Lowery whatsoever. In any event, even if Lowery had alleged that a Defendant counseled him about his speech, that would not be actionable in a public employee's First Amendment retaliation claim. *See Breaux*, 205 F.3d at 157-58 (holding that "mere

10

accusations or criticism," including "oral threats or abusive remarks," do not qualify as adverse employment actions). Lowery should not be permitted to bypass that limitation by making the conclusory allegation that Defendants "enforced" a policy against him when he has not alleged that any Defendant disciplined him or took any adverse employment action against him.

## CONCLUSION

This Court should dismiss the amended complaint in its entirety.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Matt Dow*
Charles L. Babcock
Texas State Bar No. 01479500
cbabcock@jw.com
Joel R. Glover
Texas State Bar No. 24087593
jglover@jw.com
Javier Gonzalez
Texas State Bar No. 24119697
jgonzalez@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200 – Phone
(713) 752-4221 – Fax

Matt Dow
Texas State Bar No. 06066500
mdow@jw.com
Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
Cody Lee Vaughn
Texas State Bar No. 24115897
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 11, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

                                      */s/ Matt Dow*
                                      Matt Dow