UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD LOWERY,

    *Plaintiff*,

v.

LILLIAN MILLS, *et al.*,

    *Defendants*.

Case No. 1:23-cv-00129-DAE

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ii

TABLE OF AUTHORITIES .......................................................................iii

INTRODUCTION .................................................................................. 1

STATEMENT OF FACTS ........................................................................ 2

ARGUMENT ..................................................................................... 3

   I.  THIS COURT ALREADY HELD THAT LOWERY ALLEGES A VIABLE CLAIM
      FOR FIRST AMENDMENT CHILLING ........................................... 4

      A.  The law of the case doctrine precludes UT from relitigating
           the viability of the chilled-speech claim ................................... 4

      B.  Judicial estoppel also prevents UT from relitigating the
           sufficiency of Lowery's chilled-speech claim ............................. 6

      C.  Chilled-speech claims and employment retaliation claims are
           separate causes of action under First Amendment law .......................... 7

      D.  Contrary to UT's assertion, *Keenan* set a baseline of protection
           for all citizens regardless of employment status ....................... 9

  II.  LOWERY ALLEGES A VIABLE SPEECH-CODE CLAIM .............................. 11

      A.  Lowery's amended complaint alleges sufficient facts to show
           that UT has an unwritten speech code or practice ................................... 11

      B.  Lowery's amended complaint alleges sufficient facts to show that
           Defendants enforced this speech code or practice against him ............... 16

CONCLUSION .................................................................................. 19

TABLE OF AUTHORITIES

## Cases

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................. 5

*Bailey v. Iles*,
   87 F.4th 275 (5th Cir. 2023) ...................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 4

*Brooks v. Francis Howell Sch. Dist.*,
   599 F. Supp. 3d 795 (E.D. Mo. 2022) ........................................ 15

*Culbertson v. Lykos*,
   790 F.3d 608 (5th Cir. 2015) ..................................................... 17

*Estrada v. Indus. Transit*,
   No. 4:16-CV-013-DAE, 2016 U.S. Dist. LEXIS 204352
   (W.D. Tex. Aug. 8, 2016) ........................................................... 5

*Frampton v. City of Baton Rouge*,
   No. 21-CV-362-JWD-SDJ, 2022 U.S. Dist. LEXIS 3754
   (M.D. La. Jan. 7, 2022) ............................................................. 11

*Gabarick v. Laurin Mar. (Am.) Inc.*,
   753 F.3d 550 (5th Cir. 2014) ...................................................... 6

*Galindo v. City of Del Rio*,
   Civil Action No. DR-20-CV-20-AM/CW, 2021 U.S. Dist. LEXIS
   126766 (W.D. Tex. Mar. 26, 2021) ............................................. 11

*Gerlich v. Leath*,
   861 F.3d 697 (8th Cir. 2017) ..................................................... 15

*Global Impact Ministries v. Mecklenburg Cnty.*,
   No. 3:20-cv-232, 2021 U.S. Dist. LEXIS 48813
   (W.D.N.C. Mar. 16, 2021) ........................................................... 9

*Hall v. GE Plastic Pac. PTE, Ltd.*,
   327 F.3d 391 (5th Cir. 2003) ...................................................... 6

*Jackson v. Wright*,
  Civil Action No. 4:21-CV-00033, 2022 U.S. Dist. LEXIS 8684
  (E.D. Tex. Jan. 18, 2022)............................................................................8

*Jackson v. Wright*,
  82 F.4th 362 (5th Cir. 2023)....................................................................8

*Johnson v. City of San Marcos*,
  No. A-14-CV-481 LY, 2014 U.S. Dist. LEXIS 157308
  (W.D. Tex. May 29, 2014).......................................................................17

*Keenan v. Tejeda*,
  290 F.3d 252 (5th Cir. 2002) .......................................................... passim

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ................................................................................17

*L.L.C. v. Magazine Invs. I L.L.C.*,
  79 F.4th 487 (5th Cir. 2023)....................................................................5

*Lamar v. Steele*,
  698 F.2d 1286 (5th Cir. 1983) .................................................................9

*Levin v. Harleston*,
  966 F.2d 85 (2d Cir. 1992).......................................................................9

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...................................................................4

*Loumar, Inc. v. Smith*,
  698 F.2d 759 (5th Cir. 1983) ...................................................................5

*Love v. Tyson Foods, Inc.*,
  677 F.3d 258 (5th Cir. 2012) ...............................................................6, 7

*Lucas v. Monroe County*,
  203 F.3d 964 (6th Cir. 2000) .................................................................10

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019) .............................................................................4

*N.M. Top Organics-Ultra Health, Inc. v. Kennedy*,
  No. 17-CV-00599-JAP-LF, 2018 U.S. Dist. LEXIS 60361
  (D.N.M. Apr. 10, 2018) ..........................................................................16

*Pool v. City of Hous.,*
 586 F. Supp. 3d 603 (S.D. Tex. 2022) ........................................................ 9

*Reitz v. Woods,*
 85 F.4th 780 (5th Cir. 2023) .................................................................... 10

*Rickhoff v. Willing,*
 Civil Action No. SA-10-CA-140-XR, 2010 U.S. Dist. LEXIS 96557
 (W.D. Tex. Sep. 14, 2010) ........................................................................ 9

*Speech First, Inc. v. Fenves,*
 979 F.3d 319 (5th Cir. 2020) ................................................................... 14

*Tex. Entm't Ass'n v. Hegar,*
 No. 1:17-CV-594-DAE, 2019 U.S. Dist. LEXIS 239481
 (W.D. Tex. Feb. 27, 2019) ......................................................................... 5

*Turner v. Pleasant,*
 663 F.3d 770 (5th Cir. 2011) ..................................................................... 3

*United States ex rel. Lemon v. Nurses To Go, Inc.,*
 924 F.3d 155 (5th Cir. 2019) ..................................................................... 4

*United States v. Castillo,*
 179 F.3d 321 (5th Cir. 1999) ..................................................................... 5

*Victoria W. v. Larpenter,*
 369 F.3d 475 (5th Cir. 2004) ................................................................... 17

**INTRODUCTION**

Richard Lowery asserts that UT's President and business-school administrators pressured him into silencing his public criticism of UT's ideological direction, including its hijacking of the Liberty Institute, its promotion of a leftwing "land acknowledgement," and ending his call for donors to boycott the school. Following Judge Howell's recommendation, this Court allowed Lowery to add President Hartzell as an additional official-capacity Defendant, and articulate his unwritten-speech-policy claim as a freestanding basis for legal relief. Although UT did not object to Judge Howells' recommendation, it now asks this Court to turn around and dismiss the amended complaint that Lowery just obtained leave to file.

Moreover, Defendants are using the filing of Lowery's Amended Complaint as an opportunity to rehash arguments that this Court has already rejected. UT essentially asks this Court to reconsider its decision last September, which held that Lowery stated a claim for chilled speech. Evidently, UT believes this Court made an error of law and does not know the difference between employment retaliation and chilled speech. But this Court already held that Lowery's claims of chilled speech and challenge to UT's unwritten speech policy may proceed. UT's arguments are not only recycled, but are foreclosed by the law of the case doctrine and judicial estoppel. And UT has been the true defendant in this case in all but name from the outset.

Moreover, in his amended complaint, Lowery details how UT's speech code empowers government officials to "counsel" and threaten faculty who dissent from majority viewpoints whenever officials subjectively believe that faculty speech is "uncivil," "rude," or "disruptive." Nevertheless, UT asserts that Lowery fails to allege the existence of such an unwritten speech code or practice or that this code has been selectively enforced against him. UT seeks to avoid scrutiny of its

1

enforcement, by moving to dismiss Plaintiff's facially and as-applied challenge to this speech code before discovery can occur and especially before its President, Jay Hartzell, can be deposed about his role in Lowery's silencing, and before Lowery can take a Rule 30(b)(6) deposition of UT's representative.

Lowery's amended complaint alleges facts that support a facial and as-applied challenge to UT's unwritten speech code or practice. Additionally, Lowery has stated a legally sufficient claim for chilled speech, as this Court has already correctly held. This Court should deny UT's motion to dismiss and order discovery in this case to proceed.

## STATEMENT OF FACTS

Because this case is already well-known to this Court, *see, e.g.*, Dkt. 120 at 2-3, Dkt. 51 at 2-7, Lowery will only revisit facts specifically relevant to this motion, with particular reference to facts alleged in his Amended Complaint.

Plaintiff Richard Lowery alleges that, beginning in the summer of 2022, UT officials threatened and pressured him to keep him from publicly criticizing the university and its leaders. Dkt. 126. Defendants threatened to end Lowery's annually renewable affiliation with the Salem Center; threatened to remove Lowery's friend and ally, Carlos Carvalho, as the Center's director; labelled Lowery's speech uncivil and unacceptable, and acquiesced when UT employees sought to have Lowery surveilled by the police. *Id.*, ¶¶ 59-62, 68-77, 85, 87-90, 123, 126. Because of this pressure, Lowery began to self-censor in late August 2022 and later brought suit in defense of his First Amendment rights. *Id.* Lowery's original complaint contained two counts: a claim for chilling of his free speech and a claim for First Amendment employment retaliation. Dkt. 1.

On September 5, 2023, this Court ruled on UT's first motion to dismiss. Dkt. 51; *see also* Dkt. 15. It dismissed Lowery's employment retaliation claim without

2

prejudice, concluding that, under Fifth Circuit precedent, allegations of threats are insufficient as a matter of law to establish an employment retaliation claim. Dkt. 51 at 24. This Court, however, denied UT's Rule 12(b)(6) motion against Lowery's chilled-speech claim with prejudice, finding that "Plaintiff has sufficiently alleged that Defendants' threats would chill a person of ordinary firmness from publicly criticizing UT Administration and programs." *Id.* at 25-26. The Court also held that Lowery had "sufficiently alleged an implicit [UT] policy on what speech is allowed by employees of the Salem Center" and that this implicit policy "arguably proscribes Plaintiff's intended conduct." *Id.* at 16-18.

In February 2024, Lowery sought leave to amend his complaint to allege facts learned through recent discovery, join UT President Jay Hartzell as a defendant, and crystalize pre-existing arguments about UT's unwritten policy into a second count challenging UT's speech code or practice both facially and as applied. *See, e.g.*, Dkt. 120 at 3, 5, 9-11; Dkt. 94. On March 5, 2024, Magistrate Judge Howell recommended that this Court grant Lowery's motion to amend his complaint and add Hartzell as a defendant. Dkt. 120. In issuing this recommendation, Judge Howell examined "the sufficiency of the pleadings" and "appl[ied] the same standard [under Rule 15] as under Rule 12(b)(6)." *Id.* at 8-9. Neither party objected to Judge Howell's findings. *See* Dkt. 123 at 2. Subsequently, this Court adopted Judge Howell's recommendation as the opinion of the Court, ruling that Lowery's proposed "amendment is not futile" and granting leave to amend. *Id.* at 2-3. Lowery promptly amended on March 28. Dkt. 126. The Court paused discovery and case deadlines until resolution of this motion to dismiss. Dkt. 122.

ARGUMENT

"A motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (cleaned up). That is

3

especially true when that motion is little more than a warmed over second serving of a previously unsuccessful motion.

A complaint does not need detailed facts to survive a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plaintiff must plead merely "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When considering a motion to dismiss for failure to state a claim, this Court should accept the allegations in Lowery's amended complaint as true. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927, 1936 (2019). The Court must construe these facts, together with all reasonable inferences, in the light most favorable to Plaintiff. *See, e.g.*, *United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019); *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).

I.   THIS COURT ALREADY HELD THAT LOWERY ALLEGES A VIABLE CLAIM FOR FIRST AMENDMENT CHILLING

A.   The law of the case doctrine precludes UT from relitigating the viability of the chilled-speech claim

This Court has already decided that Lowery has stated a viable chilled-speech claim, even though Lowery did not state a claim for employment retaliation. Dkt. 51 at 25-26. Defendants, however, assert that free speech chilling "is not a distinct cause of action separate from [Lowery's] retaliation claim, but merely a type of injury-in-fact that provided standing for his retaliation claim." Dkt. 129 at 8. UT's position is not only fallacious, but also barred by the law of the case. UT previously acknowledged that chilled speech was a free-standing claim and in fact supplied the test that this Court adopted. Dkt. 15 at 17. UT cannot now reverse its position and argue the opposite. This is exactly the type of serial motions practice that the law-of-the-case doctrine is designed to foreclose.

4

"The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This doctrine applies both to issues "explicitly decided" and "to those issues decided by necessary implication." *L.L.C. v. Magazine Invs. I L.L.C.*, 79 F.4th 487, 491 (5th Cir. 2023) (internal citation and quotation marks omitted). The doctrine serves to "prevent[] collateral attacks against the court's rulings during the pendency of the lawsuit" and "while the law of the case doctrine is a 'rule of convenience and utility,' not an 'inexorable command,' '[a] judge should hesitate to undo his own work.'" *Tex. Entm't Ass'n v. Hegar*, No. 1:17-CV-594-DAE, 2019 U.S. Dist. LEXIS 239481, at *10 (W.D. Tex. Feb. 27, 2019) (quoting *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983)).

This Court "has already issued a reasoned order," *Estrada v. Indus. Transit*, No. 4:16-CV-013-DAE, 2016 U.S. Dist. LEXIS 204352, at *5 (W.D. Tex. Aug. 8, 2016), denying UT's 12(b)(6) motion to dismiss Lowery's chilled-speech claim. Dkt. 51 at 25-26. In this decision, the Court held that Lowery can prove his chilled-speech claim by establishing that "(1) he was engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Id.* at 25 (cleaned up). The Court found that the allegations in Lowery's original complaint "sufficiently allege[d] the second element"—that is, that UT's actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech. *Id.* at 26. Thus, Defendants' argument that Lowery has failed to allege actionable chilling directly conflicts with the law of the case.

5

### B. Judicial estoppel also prevents UT from relitigating the sufficiency of Lowery's chilled-speech claim

In addition to the law of the case doctrine, UT's argument that Lowery failed to state a chilled-speech claim under *Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) is barred by judicial estoppel because UT previously successfully urged this very test for Lowery's claim. *See* Dkt. 48 at 13; Dkt. 15 at 17. Having succeeded before, UT is estopped from now urging the opposite.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (citation omitted). This doctrine serves to keep parties "from playing fast and loose with the court by changing positions based upon the exigencies of the moment." *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 400 (5th Cir. 2003) (citation and internal quotation marks omitted). Three criteria primarily determine if judicial estoppel applies: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (citation omitted).

In support of its previous 12(b)(6) motion, UT *repeatedly* argued that "[t]o establish a chilled-speech claim, Lowery must show that (1) he engaged in protected activity, (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) these adverse actions were substantially motivated against his exercise of constitutionally protected conduct." Dkt. 15 at 17 (citing *Keenan*); *see also* Dkt. 48 at 8, 13 (same). That is, UT took the position that the *Keenan* standard *does* apply to Lowery's case, a position plainly inconsistent with the argument in UT's currently pending motion.

*See* Dkt. 129 at 7-8. Specifically, UT argued that the *Keenan* test applied, but that the actions Lowery was subjected would not chill a person of ordinary firmness, so he didn't meet that test. Dkt. 15 at 17; *see also* Dkt. 51 at 25 (citing same argument). Importantly, the Court accepted that *Keenan* applies, but did not find UT's latter argument persuasive. *Id.* But UT does not now get a do-over to argue for a different standard.

And it was UT—not Plaintiff, *see* Dkt. 43 at 25—that first cited *Keenan* and insisted its standard applied. This Court expressly accepted UT's interpretation of *Keenan* in its September 2023 opinion. Dkt. 51 at 25-26 (citing *Keenan* and Defendants' brief, Dkt. 15). This argument was not isolated or "inadvertent"—UT doubled down, by repeating its original interpretation of *Keenan* as recently as February 2024. *See, e.g.*, Dkt. 115 at 3, 69-70; Dkt. 99 at 3; Dkt. 76 at 4.

Suddenly, in its pending motion, UT repudiates its prior position and maintains instead that Lowery—and tacitly, that this Court—have misinterpreted *Keenan* because, supposedly, Lowery's chilled-speech claim is actually a mistitled employment retaliation claim. *See* Dkt. 129 at 7-9.

UT's motion contradicts its own prior position, which UT previously convinced this Court to adopt. This Court should protect the integrity of the judicial process, *see Love*, 677 F.3d at 261, by holding that UT's new argument is judicially estopped.

### C. Chilled-speech claims and employment retaliation claims are separate causes of action under First Amendment law

Lowery's chilled-speech claim is legally distinct from his dismissed employment retaliation claim, as UT previously admitted. *See* Dkt. 113 at 3 & n.2 (distinguishing Lowery's "speech-code claim" from his "pre-existing self-chilling claim" and insisting the difference is "not merely semantic/technical").

This Court is far from the first federal court to hold that a plaintiff can successfully state a chilled-speech claim without stating a retaliation claim. *See* Dkt. 51 at 22-26. The Fifth Circuit has already implicitly recognized that a chilled-speech claim is separate from retaliation when it upheld another professor's similar First Amendment claim in *Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023). The court found that the plaintiff sufficiently alleged future injury, by claiming that his department chair told him that the university would eliminate resources for the plaintiff's journal and the center. *Id.* "[H]e has plainly alleged both a continuing and a future injury sufficient to confer standing for him to seek prospective relief." *Id.*

Like the academic in *Jackson,* Lowery alleges that he fears a loss of his Salem Center affiliation and stipend. Dkt. 126, ¶¶ 87-89, 92, 126. And Defendants threats had their intended effect because Lowery began self-censoring and stopped tweeting. *Id.* ¶¶ 86-93. While standing is typically jurisdictional, the Fifth Circuit affirmed the district court's decision that the *Jackson* plaintiff had a viable claim and voiced no concerns that he had failed to state a claim upon which relief could be granted.

The district court below had also chided the "muddled" plaintiff for "confound[ing] a First Amendment claim for suppression of speech with a retaliation claim for adverse employment action" and held the plaintiff stated a separate § 1983 claim "for the unconstitutional stifling of speech." *Jackson v. Wright*, Civil Action No. 4:21-CV-00033, 2022 U.S. Dist. LEXIS 8684, at *45, *49 (E.D. Tex. Jan. 18, 2022).

Although a 42 U.S.C. § 1983 cause of action cannot "be based on 'mere words' or 'idle threats'," a § 1983 claim "accrues when the threats or threatening conduct result in a constitutional deprivation." *Lamar v. Steele*, 698 F.2d 1286, 1287 (5th

Cir. 1983). "There are times when parties may be entitled to [relief] for past periods of chilling effects." *Pool v. City of Hous.*, 586 F. Supp. 3d 603, 630 (S.D. Tex. 2022), *rev'd on other grounds*, 87 F.4th 733 (5th Cir. Tex., Dec. 11, 2023) (quoting *Global Impact Ministries v. Mecklenburg Cnty.*, No. 3:20-cv-232, 2021 U.S. Dist. LEXIS 48813, at *3 (W.D.N.C. Mar. 16, 2021)).

One Fifth Circuit court, for example, denied a 12(b)(6) motion because it concluded that "the thrust of Plaintiff's claim" sufficiently alleged that "[w]hile the State may proscribe, investigate, and punish unprotected speech, it may not do so in a manner that chills protected speech." *Rickhoff v. Willing*, Civil Action No. SA-10-CA-140-XR, 2010 U.S. Dist. LEXIS 96557, at *27-28 (W.D. Tex. Sep. 14, 2010). There was no retaliation claim of any kind—employment or non-employment—in that case. Likewise, according to the Second Circuit, even "the threat of discipline" can be "sufficient to create a judicially cognisable chilling effect on [] First Amendment rights . . . sufficient to warrant the grant of injunctive relief." *Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992).

An objectively reasonable chill, regardless of whether it is accompanied by retaliation, can state a claim for relief.

### D. Contrary to UT's assertion, *Keenan* set a baseline of protection for all citizens regardless of employment status

Defendants misread *Keenan* as having established a lower level of protection for government employees or contractors than for ordinary citizens, with the goal of weeding out "minor instances of retaliation." Dkt. 129 at 7-9. But UT's new argument contradicts its former argument, *see*, *e.g.,* Dkt. 99 at 3; Dkt. 15 at 17, and more importantly, this Court's correct understanding of the case, *see* Dkt. 51 at 25.

*Keenan* set a baseline level of protection for all citizens, whether they work for the government or not. Before *Keenan,* the Fifth Circuit's retaliation cases had

"involve[d] an employment or other contractual relationship," so the Circuit lacked a clear standard to apply to the *Keenan* plaintiffs. *Keenan*, 290 F.3d at 258. The *Keenan* panel thus adopted the standard used in *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000) and other decisions. *Keenan*, 290 F.3d at 258. Government workers often receive greater—not lesser—protections from adverse actions than mere citizens do, because of the terms of their contracts, tenure, collective bargaining agreements, and so forth. Indeed, in *Lucas*, the Sixth Circuit stressed that private citizens are also defended from the chilling of their speech, and reversed a lower court which had held that First Amendment protections extended only to government workers. 203 F.3d at 972-73.

UT reads *Keenan* as a contraction—rather than an expansion—of First Amendment protections, quoting the panel's observation that "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." Dkt. 129 at 7 (quoting *Keenan*, 290 F.3d at 258). But in context, the panel was explaining why the second element requires that an actionable chill "discourage a person of ordinary firmness from continuing to speak out." *Id.* All plaintiffs—whether government employees or not—must allege an objectively reasonable chill.

Nothing in *Keenan* suggests that a government employee must plead anything more than a reasonable chill, for this chill requirement already serves to weed out trivialities. Rather, the panel emphasized that "the deprivation of a constitutional right" required "need not be great in order to be actionable." *Id.* at 259 (citations and quotation marks removed). And courts in the Fifth Circuit have treated the *Keenan* standard as a baseline protection for any "plaintiff," whether a contractual relationship with the government exists or not. *See, e.g.*, *Reitz v. Woods*, 85 F.4th 780, 789 (5th Cir. 2023) (referring only to "a plaintiff" and never suggesting the

10

standard is restricted to private citizens); *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023) (similar); *Frampton v. City of Baton Rouge*, No. 21-CV-362-JWD-SDJ, 2022 U.S. Dist. LEXIS 3754, at *30 (M.D. La. Jan. 7, 2022) (applying *Keenan* to a plaintiff employed at a state university); *Galindo v. City of Del Rio*, Civil Action No. DR-20-CV-20-AM/CW, 2021 U.S. Dist. LEXIS 126766, at *7 n.3, *12 (W.D. Tex. Mar. 26, 2021) (treating *Keenan* as applicable to a government contractor).

Lowery's amended complaint plausibly alleges a chilled-speech claim. This Court should deny UT's latest motion to dismiss, just as it did over six months ago.

## II.   LOWERY ALLEGES A VIABLE SPEECH-CODE CLAIM

### A.  Lowery's amended complaint alleges sufficient facts to show that UT has an unwritten speech code or practice

Lowery's amended complaint pleads abundant facts showing that UT maintains a speech code or practice that forbids his public speech. Even Defendants admit that a speech code does not need to be "reduced to writing" to violate the First Amendment. Dkt. 129 at 13. And this Court held that Lowery's original complaint already "sufficiently alleged an implicit policy on what speech is allowed by employees of the Salem Center" and that this implicit policy "arguably proscribes Plaintiff's intended conduct." Dkt. 51 at 17. Lowery's current complaint, which adds many allegations not in the original complaint, easily satisfies the low pleading standard.

Lowery alleges, for instance, that in late July 2022, Kelly Kamm—a professor in Lowery's department (Finance)—anonymously reported Lowery to UT's compliance office. Dkt. 126, ¶¶ 42-43. In her complaint email, Kamm stated that Lowery's speech on a podcast "may in parts fail to meet our standards of ethics and respect for faculty" as Lowery did not speak in "a civil manner." *Id.* ¶ 42. Kamm also said

that "perhaps the podcast needs to be taken down or edited in a few places" if it "does not meet the standard." *Id.*, ¶ 42.

The amended complaint also alleges that, on August 9, 2022, Jeff Graves, a high-level Executive in the President Hartzell's Office, forwarded Kamm's complaint to two defendants—McCombs' Dean Lillian Mills and McCombs' Senior Associate Dean Ethan Burris—for handling as a "personnel matter." *Id.*, ¶ 52. Graves explained that the complaint involved "whether Professor Richard Lowery crossed any lines regarding ethics or compliance in remarks he made during a podcast." *Id.* ¶ 52. Allegedly, Mills and Burris met that same day to "discuss[] how to take action about Lowery's unwanted speech and prepare[] for their meeting with [Carlos] Carvalho." *Id.*, ¶ 53. At the Carvalho meeting on August 12, Mills and Burris putatively spoke about "crossing the line"— parroting the language that appeared in Graves' email. *Id.*, ¶ 57.

These facts indicate that at least one faculty member in Lowery's department believes that UT possesses "standards of ethics and respect" prohibiting Lowery's speech. The allegations also reveal that Graves thought the complaint presented a serious enough "personnel matter" to forward it to McCombs' Dean and Associate Dean. Dkt. 126 ¶ 52. Surely, if Graves believed that Lowery's comments violated no policy or practice—then he would not have bothered Mills and Burris to follow-up on the complaint. And the temporal proximity and similar language between the complaint's forwarding and the two defendants' meetings reasonably implies that the complaint partly caused those meetings.

Likewise, Lowery's amended complaint contains facts alleging that Lowery's department chair—Sheridan Titman, formerly an official-capacity defendant, *id.* ¶ 44—believed that Lowery's speech violated some unwritten code. On July 19, 2022, UT's president Jay Hartzell allegedly criticized Lowery to Titman. *id.* ¶ 46. Then in

late July or early August, according to the complaint, Titman told Lowery's supervisor at the Salem Center, Carlos Carvalho, "We need to do something about Richard." *Id.* ¶ 53. Titman added that President Hartzell and Dean Mills were upset about Lowery's political advocacy and wanted to know if Titman and Carvalho "can ask him to tone it down?" *Id.*, ¶¶ 53, 60, 62.

In late August 2022, faculty members affiliated with McCombs' Global Sustainability Leadership Institute (GSLI) allegedly complained about Lowery's tweets to Mills, to Titman, and even to UT police. *Id.*, ¶¶ 68-74, 80-85. According to emails, these faculty members believed that Lowery's tweets risked "the safety of our events" and could "stir up real trouble," particularly because Lowery's tweets often "tagged some politician." *Id.*, ¶¶ 69-70, 73. Supposedly, some at UT were "more worried about the people [Lowery] reaches than him" because "[s]ome of his supporters are authors, podcasters, and politicians." *Id.*, ¶¶ 81-83. Finance professor Laura Starks, for example, allegedly grumbled to Titman that "[g]iven the political mood in the country today, this is not acceptable and is potentially quite dangerous." *Id.*, ¶ 71. From these emails, this Court should reasonably infer that leftwing faculty know how to raise speech-code complaints about one of UT's rare conservatives, so the UT administration can use these complaints as an excuse to silence a critic whose speech could inspire state regulation or funding cuts.

Titman allegedly agreed with these irritated faculty members that Lowery's "rude comments" were not "acceptable" nor "appropriate on twitter." *Id.*, ¶¶ 72-73, 77. And Titman warned Lowery over email that Lowery "do[es]n't seem to be making friends" and explained what "the appropriate response" to GSLI should be, instead of tweeting in the future. *Id.*, ¶¶ 74-73. Thus, the amended complaint pleads facts making it facially plausible that Titman, Starks, and other McCombs faculty agreed upon an unwritten code or practice governing what was appropriate and

13

acceptable for UT faculty to say on Twitter. Putatively, "rude comments," "stir[ring] up real trouble," improper "tone," and criticizing UT programs before elected officials are unacceptable and caused Lowery's chair to warn Lowery to change his speech and limit himself to "the appropriate response" in the future.

As a final example, Lowery alleges that on August 12, 2022, defendants Mills and Burris—after consulting with Titman, *id.*, ¶ 53—met with Carvalho to get him to "counsel" Lowery about his speech, *id.*, ¶ 57. Mills and Burris insisted that Lowery was "crossing the line," "impeding the operations of the school and the ability to fundraise," and speaking in ways that were "factually inaccurate and disruptive to operations." *Id.*, ¶ 57. Mills and Burris cited specific examples of speech by Lowery that crossed the line, such as statements he made that President Hartzell and other university administrators lie to politicians as part of their job to minimize viewpoint-diversity problems at UT. *See id.*, ¶¶ 31, 48, 51, 57. At two follow-up meetings, Burris repeatedly stated that Lowery's speech was "uncivil" and should improve in tone in its "civility." *Id.*, ¶¶ 61-62. Mills and Burris allegedly threaten consequences, including refusing to renew Lowery's contract with the Salem Center (worth $20,000 a year in salary), removing his supervisory role at the Policy Research Lab, removing Carvalho from his post as Executive Director of the center, and perhaps even taking action through UT's legal department if Lowery did not modify his speech. *Id.*, ¶¶ 57-59, 62, 87-89.

Together, these allegations state a plausible claim that UT maintains an unwritten speech code or practice forbidding professors like Lowery from speaking publicly in ways that UT administrators find "uncivil," "rude," or "disruptive." *Id.*, ¶¶ 119-21; *see also Speech First, Inc. v. Fenves,* 979 F.3d 319, 337 (5th Cir. 2020) (finding standing in part because "regulations governing 'rude,' 'uncivil,' 'harassing,' or 'offensive' speech can in fact cover speech otherwise protected by the First

Amendment . . . Moreover, the University continues to defend the use of these terms."). UT has a long history of trying to ban what administrators subjectively deem to be "uncivil" speech and — having previously floundered in their efforts to codify their restrictions in writing— now maintain an unwritten speech code, which is more difficult to challenge because UT denies its existence. But as Lowery has alleged, Defendant Burris's notes refer to Lowery's speech as "uncivil" and "lacking in civility," Dkt. 126, ¶ 61, substantiating the existence of UT's unwritten speech code.

The events alleged in Lowery's amended complaint provide plausible circumstantial evidence of the code's existence. The amended complaint shows that multiple administrators and faculty members at UT have indicated their knowledge of such a code or practice and agreed that Lowery violates it. *Id.*, ¶¶ 42, 52, 57, 61-62, 71-73.

Moreover, Lowery alleges that this unwritten policy is selectively enforced against speakers who dissent from majority viewpoints on the UT campus in general, rather than against him alone. *Id.*, ¶¶ 118, 123. As the amended complaint alleges, leftwing professors are allowed to speak in rude, uncivil, and disruptive ways, but Lowery is not. *Id.*, ¶¶ 105, 122. Some of the leftwing faculty tweets included provocative language—*e.g.*, "fascist," "racist," "dangerous,"—but those faculty were not asked to tone down their tweets or make them more civil. *Id.* ¶ 105. This allegation of viewpoint discrimination is sufficient, by itself, to state a plausible claim, even in the absence of other comparators, because Lowery is alleging selective enforcement. *See, e.g., Gerlich v. Leath,* 861 F.3d 697, 704-07 (8th Cir. 2017) (affirming failure to dismiss First Amendment claim where university administration subjected student group to unique scrutiny after negative publicity); *Brooks v. Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 804 (E.D. Mo. 2022)

(unique scrutiny school board officials placed on dissenting parents groups was evidence of viewpoint discrimination); *N.M. Top Organics-Ultra Health, Inc. v. Kennedy*, No. 17-CV-00599-JAP-LF, 2018 U.S. Dist. LEXIS 60361, at *18, *23 (D.N.M. Apr. 10, 2018) (unique scrutiny state fair placed on pro-cannabis exhibitor was evidence of viewpoint discrimination).

And if the as-yet uncompleted discovery eventually indicates that Lowery's situation is fairly unique, that is because conservative and pro-free market voices are rare at UT, as the university's DEI policies filter them out from being hired. *See id.*, ¶¶ 11, 24, 31, 35. Indeed, according to Lowery's allegations, unacceptable "political" speech means "conservative, libertarian, or pro-free market viewpoints," and UT administrators lie to politicians to disguise the viewpoint-diversity problems at UT. *Id.*, ¶¶ 9, 13, 31, 40-41, 48, 54. And Lowery alleges that Mills and Burris threatened to remove Carvalho—an advocate of pro-free market viewpoints—from his directorship of the Salem Center over Carvalho's support of Lowery's speech. *See Id.*, ¶¶ 21, 23, 41, 59. Lowery has therefore named at least one other faculty member who has run afoul of UT's speech code. Further discovery may reveal others.

Defendants do not need to have used the word "policy" (rather than words like "standards," "unacceptable," and "crossing the line") for an implicit policy to exist. Lowery's amended complaint pleads facts that amply allege the existence of an unwritten speech code or policy.

### B. Lowery's amended complaint alleges sufficient facts to show that Defendants enforced this speech code or practice against him

Lowery has not only plausibly alleged that UT maintains a speech code, but also that Defendants have invoked that code and enforced it against him. Those enforcing the code include three of the named official-capacity defendants (Hartzell,

Mills, and Burris), as well as Titman (formerly an official-capacity defendant until he stepped down as Finance Chair, *see* Dkt. 56 at 2-3) and UT itself.

UT is "the only true defendant" in this lawsuit. *Victoria W. v. Larpenter*, 369 F.3d 475, 481 (5th Cir. 2004); *see also Johnson v. City of San Marcos*, No. A-14-CV-481 LY, 2014 U.S. Dist. LEXIS 157308, at *5 (W.D. Tex. May 29, 2014). "An official-capacity lawsuit is 'only another way of pleading an action *against an entity* of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (emphasis added); *see also Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (citation omitted) (emphasis original).

Thus, UT's assertion that "President Hartzell, as a newly added Defendant, has not yet had the opportunity to seek dismissal of count one"—the chilled-speech claim—is inaccurate. Dkt. 129 at 6 n.1. UT, the only true defendant, already filed a 12(b)(6) motion against this count over a year ago. *See* Dkt. 15. Likewise, UT's insistence that "UT Austin is not a defendant here" so only "specific actions by any [named] Defendant" matter, Dkt. 129 at 14, is a misstatement of law that is flatly contradicted by Fifth Circuit precedent. Alleged misconduct by UT as an institution, such as UT police's decision to surveil and open up a "threat mitigation investigation" against Lowery, Dkt. 126, ¶¶ 84-85, support the reasonable inference that UT—the true defendant—is liable. Moreover, if UT administrators were aware that UT police had been asked to conduct a "threat mitigation investigation" into Lowery's speech and did nothing to prevent a re-occurrence of that or counsel those

involved, they have implicitly ratified or acquiesced in police surveillance of faculty speech. *See id.*, ¶¶ 84-85.

Additionally, Lowery's amended complaint contains many allegations describing how Hartzell, Mills, Burris, and Titman enforced the implicit policy against Lowery. The amended complaint alleges, for instance, that President Hartzell contacted the other three about Lowery's speech, because he "want[ed] Richard to shut up," *id.*, ¶¶ 46, 50, 54, 60; that Titman asked Carvalho to get Lowery to "tone it down" and later counseled Lowery directly to limit himself to "the appropriate response" in the future, rather than tweeting, *id.*, ¶¶ 54, 71, 74-76; that Mills and Burris repeatedly threatened Carvalho if he did not "counsel" Lowery into changing his "uncivil" speech and no longer "crossing the line," *id.*, ¶¶ 57-61; and that Carvalho "relayed Titman, Mills, and Burris's threats to Lowery, as they requested and expected that he would," *id.*, ¶ 62. The named Defendants and other UT officials selectively enforced this speech code against Lowery, because they disliked his views, his speech embarrassed them, and it potentially caused public backlash against Defendants, as Lowery's amended complaint alleges. *Id.* ¶¶ 11-12, 18-19, 66, 106, 124-26.

Magistrate Judge Howell, in a report and recommendation later adopted as the opinion of this Court, Dkt. 123 at 3, already examined whether Lowery's "amended complaint would fail to state a claim upon which relief could be granted . . . apply[ing] the same standard as under Rule 12(b)(6)," Dkt. 120 at 8. And Judge Howell and this Court concluded that Lowery's amended complaint "is not futile." Dkt. 123 at 2. Nonetheless, Defendants ask this Court to reevaluate Lowery's amended complaint and dismiss it. But Lowery has alleged abundant specific facts to state a claim for relief that is plausible on its face. As these facts allege, UT both

maintains an implicit speech code or practice and has enforced this code—through the actions of Hartzell, Mills, Burris, Titman, and others—against Lowery.

## CONCLUSION

This Court should deny Defendants' motion to dismiss Lowery's chilled-speech and his speech-code claims and order discovery in this case to resume.

Respectfully submitted,                              Dated: April 25, 2024

   *s/Endel Kolde*                                        *s/Michael E. Lovins*
Endel Kolde                                          Michael E. Lovins
Washington Bar No. 25155                             Texas Bar No. 24032555
Courtney Corbello                                    LOVINS |TROSLCAIR, PLLC
Texas Bar No. 24097533                               1301 S. Cap. Of Texas
Nathan J. Ristuccia[1]                               Building A Suite 136
Virginia Bar No. 98372                               Austin, Texas 78746
INSTITUTE FOR FREE SPEECH                            Tel: (512) 535-1649
1150 Connecticut Ave., NW                            Fax: (214) 972-1047
Suite 801                                            michael@lovinslaw.com
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
ccorbello@ifs.org
nristuccia@ifs.org

*Counsel for Richard Lowery*

---

[1] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).