UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD LOWERY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 1:23-cv-00129-DAE |
| | § | |
| LILLIAN MILLS, et al., | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## **Table of Contents**

Table of Authorities...............................................................................................................ii

Table of Exhibits...............................................................................................................iii

Introduction and Summary of Argument ..........................................................................1

Standard..............................................................................................................................2

Factual and Procedural Background ...................................................................................3

Argument ............................................................................................................................7

    I.     A chilled-speech claim must be based upon a threatened adverse
          employment action.................................................................................................7

    II.    Lowery has not alleged that any Defendant threatened him with an adverse
          employment action if he continued to speak.........................................................9

    III.   Following seven months of discovery, the evidence confirms no adverse
          employment action was threatened or taken. .....................................................12

Conclusion & Prayer ........................................................................................................13

Certificate of Service........................................................................................................15

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amalgamated Transit Union v. New Orleans Reg'l Transit Authority*,
 No. 23-30113, 2023 WL 7013355 (5th Cir. 2023)........................................................2

*Benningfield v. City of Houston*,
 157 F.3d 369 (5th Cir. 1998)........................................................................ 8, 9, 10

*Breaux v. Garland*,
 205 F.3d 150 (5th Cir. 2000)........................................................................ 9, 10, 11

*Colson v. Grohman*,
 174 F.3d 498 (5th Cir. 1999)........................................................................8, 9, 10, 11

*Dorsett v. Board of Tr.*,
 940 F.2d 121 (5th Cir. 1991)........................................................................9, 10, 11

*Grogan v. Lange*,
 617 Fed. App'x 288 (5th Cir. 2015)...............................................................2

*Harrington v. Harris*,
 118 F.3d 359 (5th Cir. 1997)........................................................................ 9, 10, 11

*Hawkland v. Hall*,
 860 F. App'x 326 (5th Cir. 2021) ..................................................................8

*Keenan v. Tejada*,
 290 F.3d 252 (5th Cir. 2002)........................................................................6, 7, 8, 9

*Kincheloe v. Caudle*,
 No. A-09-CA-010, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009)....................9

*Linzy v. Cedar Hill ISD*,
 37 Fed. App'x 90, No. 01-1114, 2002 WL 1021883 (5th Cir. 2002)................2

*Pierce v. TDCJ*,
 37 F.3d 1146 (5th Cir. 1994)........................................................................8

*Wilson v. Tregre*,
 787 F.3d 322 (5th Cir. 2015)........................................................................8

**Rules**

Fed. R. Civ. P. 56(a)......................................................................................2

TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Lowery's promotion letter (Oct. 24, 2016) |
| B | Lowery's Salem Appointment 2020–21 (April 13, 2021) |
| C | Lowery's Salem Reappointment 2021–22 (Sept. 20, 2021) |
| D | Lowery's Salem Reappointment 2022–23 (Sept. 19, 2022) |
| E | Lowery's Salem Reappointment 2023–24 (Aug. 2, 2023) |
| F | Dean Mills' DWQ Responses (April 17, 2023) |
| G | Assoc. Dean Burris' DWQ Responses (April 17, 2023) |
| H | Former Defendant Titman's DWQ Responses (April 17, 2023) |
| I | Lowery's Pay Change History (March 14, 2023) |
| J | Titman Letter to Lowery re: Pay Raise (July 25, 2023) |
| K | Dean Mills' Declaration (March 14, 2023) |
| L | Assoc. Dean Burris' Declaration (March 14, 2023) |
| M | Former Defendant Titman's Declaration (March 14, 2023) |
| N | Dean Mills' Deposition Excerpts (Feb. 16, 2024) |
| O | Assoc. Dean Burris' Deposition Excerpts (Jan. 17, 2024) |

## Introduction and Summary of Argument

Seven months of discovery have confirmed what Plaintiff Richard Lowery's Original Complaint implicitly conceded at the outset of this case: Lowery has no cognizable chilled-speech claim because he cannot show that his purported decision to chill his own speech was based upon any threatened adverse employment action. Neither Lowery's Original Complaint nor his recently filed First Amended Complaint alleged that Defendants did or threatened to do to Lowery anything that would amount to an adverse employment action under Fifth Circuit precedent. Instead, Lowery's lawsuit boils down to a complaint that various people at UT Austin (including many non-defendants) are talking about Lowery's public speech in negative ways. But just as Lowery has a constitutional right to free speech, Lowery's colleagues have the right to criticize and discuss Lowery's speech—including speech that undermines UT's fundraising efforts and other university operations.

Moreover, as the Fifth Circuit has made clear, the First Amendment cannot be invoked to make federal judges the arbiters of every workplace dispute in public universities. Accordingly, First Amendment retaliation claims raised by public employees must be founded upon an adverse employment action (such as discharge, refusal to hire, and formal written reprimands). Under Fifth Circuit precedent, adverse employment actions do *not* include verbal reprimands, criticism, or accusations, or administrative decisions regarding teaching assignments, pay raises, or similar matters. A public employee's chilled-speech claim against his employer must therefore involve an adverse employment action. To permit otherwise would (1) impose First Amendment liability on public employers who have not violated any First Amendment rights; (2) permit as a "remedy" injunctions that prevent public employers from taking constitutionally permissible actions; and (3) entangle federal courts in countless run-of-the-mill workplace disputes involving public employees. Thus, a chilled-speech plaintiff who alleges only a fear of actions that defendants *could legally take* in response to his speech has no cognizable First Amendment claim.

Lowery claims he began chilling his speech in August 2022, when he began to fear that his speech activities would cause Defendants to refuse to reappoint him to his position at the Salem Center or to label his speech as uncivil or rude. Nowhere in the Amended Complaint does Lowery allege that he feared being fired or demoted from his tenured position as an Associate Professor. Lowery's failure to allege in the Amended Complaint any threatened adverse employment action defeats his chilled-speech claim as a matter of law. And discovery conducted in this case over the past seven months has only served to confirm the lack of any threatened adverse employment action. Defendants are thus entitled to judgment on Count One in Lowery's First Amended Complaint.

### STANDARD

Defendants seek judgment in their favor on Count One of the Amended Complaint, Lowery's chilled-speech claim. Summary judgment is appropriate when no genuine issue of material facts exists as to one or more elements of plaintiff's claim and the moving party is entitled to judgment as a matter of law. *Amalgamated Transit Union v. New Orleans Regional Transit Authority*, No. 23-30113, 2023 WL 7013355, *1 (5th Cir. 2023) (per curiam) (listing the four elements of a First Amendment retaliation claim) (citing Fed. R. Civ. P. 56(a)). "At the summary judgment stage, the movants must prove that there are no genuine issues of material fact and that at least one element of plaintiff's First Amendment retaliation claim must fail as a matter of law." *Grogan v. Lange*, 617 Fed. App'x 288, 291 (5th Cir. 2015). The plaintiff must "demonstrate a disputed issue of material fact on each . . . part[] of the Fifth Circuit's standard First Amendment retaliation test, and also on the threshold issue of whether [defendant's action] was even actionable as adverse retaliatory conduct under our First Amendment retaliation jurisprudence." *Linzy v. Cedar Hill ISD*, 37 Fed. App'x 90, No. 01-1114, 2002 WL 1021883, at *1 (5th Cir. 2002).  And the Fifth Circuit has recognized that "criticisms, accusations, and investigations are not punitive, and do not rise to the level of actionable retaliation." *Id.*

### Factual and Procedural Background

1.      Lowery is a tenured Associate Professor of Finance in the McCombs School of Business at the University of Texas at Austin. Dkt. 126 (Am. Compl.) at ¶ 3; **Ex. A** (Letter announcing promotion to Associate Professor with tenure (Oct. 14, 2016), previously filed as Dkt. 14-4). Lowery also serves as an Associate Director at the Salem Center for Policy, a research institute within the McCombs School. Lowery's position with Salem is a renewable, annual appointment that he has sought and obtained each academic year since 2020–21. **Ex. B** (Appointment Letter for the 2020–21 academic year (April 13, 2021)); **Ex. C** (Reappointment Letter for the 2021–22 academic year (Sept. 20, 2021)); **Ex. D** (Reappointment Letter for the 2022–23 academic year (Sept. 19, 2022)); **Ex. E** (Reappointment Letter for the 2023–24 academic year (Aug. 2, 2023), previously filed as Dkt. 113-1).

2.      Lowery asserts that he has a "well-established history of speaking on controversial public affairs topics," Am. Compl. at ¶ 8, and that his views "dissent[] from the political and academic views that are held by the majority of his peers and superiors at UT," Am. Compl. at ¶ 9. He has publicly expressed those views, including comments critical of the University and its administration (including Defendant Jay Hartzell, UT Austin's president), *e.g.*, Am. Compl. at ¶¶ 9–41. Lowey's speech activities have included participation in podcasts, Am. Compl. at ¶ 30, providing quotes to media sources, Am. Compl. at ¶ 28, publishing written commentary, Am. Compl. at ¶¶ 15–18, 29, and through the social media platform Twitter (now X), Am. Compl. ¶¶ 32–35, 40–41.

3.      Lowery asserts that he began to chill his speech in August 2022, and that this self-chill amounted to setting his Twitter/X account to "private" and choosing to speak only at closed events. Am. Compl. at ¶¶ 93–95. Lowery alleges that university officials (including Defendants McCombs Dean Lillian Mills and McCombs Associate Dean Ethan Burris) asked Professor Carlos Carvalho (Lowery's friend and the Executive Director of the Salem Center) to counsel Lowery to "tone down" his speech, to stop telling donors not to give money to the University, to "work" on speech that the

University officials believed was "disruptive to [University] operations," and to ensure "civility." Am. Compl. ¶¶ 54–55, 57, 61–62. But Carvalho told Mills, Burris, and former Defendant Sheridan Titman (then-Chair of the Finance Department) that he would not counsel Lowery regarding his speech, citing Lowery's First Amendment right to speak his views—as Lowery acknowledges. Am. Compl. ¶ 55, 61–62. And Lowery does not allege that Defendants spoke to him directly about his speech. *E.g.*, Dkt. 8-1 (Declaration of Richard Lowery) at ¶ 45 ("I was not present for these conversations, but I have read Carlos's declaration and the conversations he describes there are the same ones he told me about."); *see also* **Ex. O** (Burris Depo. Trans. Excerpts) at 22:5–11 ("I don't believe I have had any one-on-one conversations with [Lowery], no.").

4.      Lowery also complains that certain faculty and staff members who are not defendants expressed concerns about his speech:

- On July 27, 2022, a faculty member at McCombs sent an anonymous email to the UT compliance office requesting review of Lowery's comments as a guest on a podcast. Am. Compl. ¶ 42. Lowery was not immediately made aware of this request, and it wasn't until discovery commenced in this litigation that he learned of the identity of the anonymous emailer. Am. Compl. ¶ 43. The anonymous email was forwarded to Mills and Burris, Am. Compl. ¶ 52, who took no action and did not respond to the email or its sender. **Ex. F** (Mills' DWQ Responses, previously filed as Dkt. 31-2) at 4; **Ex. G** (Burris' DWQ Responses, previously filed as Dkt. 31-3) at 4.

- Starting on August 22, 2022, Meeta Kothare, Director of McCombs's Global Sustainability Leadership Institute (GSLI), and McCombs finance professor Laura Starks sent emails to Mills and Titman expressing safety concerns stemming from Lowery's criticisms of the GLSI. Am. Compl. ¶¶ 36, 68–76.

- GSLI employee Madison Gove emailed a UT police officer expressing safety concerns related to some of Lowery's Twitter "followers" and requesting an investigation of Lowery's speech. Am. Compl. ¶ 80–81.

But Lowery does not allege that Defendants took any actions against him as a result of receiving these communications. And Defendants' discovery responses confirm that they did not take any actions against Lowery as a result of receiving these communications **Ex. F** at 4, 8; **Ex. G** at 4; **Ex. H** (Former Defendant Titman's DWQ Responses, previously filed as Dkt. 31-4) at 3–4.

5.      Lowery's Amended Complaint states that he based his decision to self-chill on three specific fears:

- "Defendants will not renew his appointment to the Salem Center, costing him the $20,000 annual stipend that comes with that position." Am. Compl. at ¶ 87.

- "Defendants will remove his supervisory role at the Policy Research Lab [in the Salem Center], and the opportunities to publish academic research that the Policy Research Lab generates for Lowery." Am. Compl. at ¶ 88.

- "Defendants will attempt to label Lowery as lacking civility, being dangerous, violent, or in need of police surveillance." Am Compl. at ¶ 90.

*See also* Am. Compl. at ¶¶ 92, 109 (asserting the same fears); Am. Compl. at p. 32, Prayer for Relief ¶ A (seeking an injunction against Defendants "counseling" Lowery, "labeling his speech," or removing him from his position with the Salem Center). Lowery makes no allegation, nor presents any factual support for such an allegation, that his tenured position within the Finance Department in McCombs would be in jeopardy if he continued to speak as he says he wishes. *Id. See also generally* Am. Compl.; Dkt. 17-1 (Suppl. Decl. of Richard Lowery in Support of Motion for Preliminary Injunction) at ¶ 9 ("I would like to start tweeting again, but do not want to risk losing my affiliation with the Salem

Center."), ¶ 12 ("I have become reluctant to express [my opinion] because of the threats against my Salem Center affiliation.").

6.      Just a few weeks after the events of July and August 2022 described above—the events that Lowery claims demonstrate Defendants' intent to silence his speech—Lowery was reappointed to his position at the Salem Center for the next academic year. Defendant Burris approved the reappointment on September 19, 2022. **Ex. D** (2022–23 Salem Appointment Letter (Sept. 19, 2022)). And on September 1, 2022, Lowery received a pay raise of over $7,000 for his Associate Professor position at McCombs. **Ex. I** (Lowery Pay Change History, previously filed as Dkt. 14-20). Lowery does not allege that any other event giving rise to his purported self-chill occurred following his reappointment to Salem Center for 2022–23.

7.      About five months later, Lowery filed his Original Complaint. Dkt. 1 (Complaint for Declaratory and Injunctive Relief, filed Feb. 8, 2023). Defendants sought dismissal of both counts in Original Compliant, and the Court dismissed the retaliation claim (Count Two in the Original Complaint). The Court explained that the retaliation claim's adverse employment action standard required an "ultimate employment decision[]" and held that Lowery's complaints that Defendants had threatened "to reduce his pay, involuntarily end his affiliation with the Salem Center, reduce his access to research opportunities, inquire about his tweets, label[] him, request[] that his speech be placed under police surveillance, or otherwise disciplining him" were "insufficient to establish an adverse employment action for a First Amendment retaliation claim in the Fifth Circuit." Dkt. 51 (MtD Order) at 24 (citations and quotations omitted). But the Court denied Defendants' motion to dismiss Lowery's chilled-speech claim (Count One), applying the four elements from *Keenan v. Tejada*, 290 F.3d 252 (5th Cir. 2002). *Id.* at 25.

8.      While Defendants' motion to dismiss the Original Complaint was pending, Defendant Burris approved Lowery's reappointment to the Salem Center for the 2023–24 academic year, **Ex. E**

(2023–24 Salem Appointment Letter (Aug. 2, 2023)), and former Defendant Titman approved a raise of over $5,000 to Lowery's salary for his tenured teaching position for the 2023–24 academic year, **Ex. J** (Titman Letter to Lowery (July 25, 2023)).

9.      In March 2024, Lowery filed his First Amended Complaint, which made some changes to the paragraphs in Count One (his self-chill claim) but did not add any new allegations of additional feared retaliatory acts. Defendants have filed a motion to dismiss the Amended Complaint in its entirety, *see* Dkt. 129 (Defendants' Motion to Dismiss Amended Complaint), in addition to this Motion for Partial Summary Judgment regarding Count One.

## ARGUMENT

The Court should enter judgment in Defendants' favor on Count One because Lowery lacks a cognizable chilled-speech claim as a matter of law.

## I.      A chilled-speech claim must be based upon a threatened adverse employment action.

Lowery has no cognizable chilled-speech claim because his First Amended Complaint has not even alleged, nor does any evidence establish, that his purported decision to self-chill was based upon any threatened adverse employment action. The Court denied Defendants' motion to dismiss Count One in the Original Complaint based on the four elements that *Kennan* held are required "to establish a First Amendment retaliation claim *against an ordinary citizen*." *Keenan*, 290 F.3d at 258 (emphasis added). But Lowery is not "an ordinary citizen"; he is a public employee suing his governmental employer over events that allegedly occurred in his workplace. Under *Keenan*, a public employee cannot bring a First Amendment claim against his employer based on alleged actions that "are too trivial or minor to be actionable as a violation of the First Amendment," "even if they actually have the effect of chilling the plaintiff's speech." *Id.* Lowery's failure to allege or prove that Defendants took or threatened an adverse employment action against him should preclude him from proceeding on his claim that Defendants chilled his First Amendment rights in his governmental workplace.

"To succeed in a First Amendment retaliation claim," "a public employee must show (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *E.g.*, *Hawkland v. Hall*, 860 F. App'x 326, 329-30 (5th Cir. 2021) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (internal quotation marks and citation omitted)). "In the employment context, [the Fifth Circuit's] requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation." *Keenan*, 290 F.3d at 258 n.4 (citing *Colson v. Grohman*, 174 F.3d 498, 510, 514 (5th Cir. 1999); *see also Colson*, 174 F.3d at 511 (noting that "criticisms . . . false accusations, verbal reprimands, and investigations [are] not actionable adverse employment actions").

A chilled-speech claim that lacks even an allegation of a threatened adverse employment action as its foundation is not a cognizable claim. To hold otherwise would permit every failed First Amendment retaliation plaintiff to resurrect his claim as a chilled-speech claim and pursue First Amendment relief against an employer that has not undertaken or threatened to undertake any act to deprive the plaintiff of his constitutional rights. If a government-employee plaintiff's chilled-speech claim alleges only a fear of actions that defendants *could lawfully undertake* in response to the plaintiff's speech without violating his First Amendment rights, then the plaintiff cannot create First Amendment liability merely by claiming that a fear of constitutionally permitted actions led him to reduce his speech activities.

In this motion for partial summary judgment, Defendants challenge Lowery's failure to provide any evidence to show that Defendants took or threatened any adverse employment action or even to allege any actual or threatened adverse employment action in the First Amended Complaint.

Under Fifth Circuit precedent, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (quoting *Pierce v. TDCJ*, 37 F.3d 1146, 1149 (5th Cir. 1994)). The Fifth Circuit has

refused to expand the definition of adverse employment actions to "accusations, verbal reprimands, and investigations," *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999), "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997), or "mere accusations or criticism", including "oral threats or abusive remarks," *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000) (citing *Harrington*, 118 F.3d at 366). And this Court has recognized that even "verbal threats of termination" would not rise to the level of an adverse employment action. *Kincheloe v. Caudle*, No. A-09-CA-010 LY, 2009 WL 3381047, at *16 (W.D. Tex. Oct. 16, 2009) (citing *Breaux*, 205 F.3d at 159–60).

The Fifth Circuit has held this firm line while recognizing that "some things are not actionable even though they have the effect of chilling the exercise of free speech." *Breaux*, 205 F.3d at 157 (citing *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir.1998)). This is because "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258 (5th Cir. 2002). "[T]he requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation" in the public-employment context. *Id.* (citing *Colson*, 174 F.3d at 510, 514). And in the particular context of public schools and universities, the Fifth Circuit has explained that "across this nation, interfaculty disputes arise daily over teaching assignments . . . administrative duties . . . and a host of other relatively trivial matters" over which courts have "neither the competency nor the resources to micromanage." *Dorsett v. Board of Trustees*, 940 F.2d 121, 123–24 (5th Cir. 1991) (internal citation omitted).

## II.   Lowery has not alleged that any Defendant threatened him with an adverse employment action if he continued to speak.

Lowery based his decision to self-chill on alleged threats that do not rise to the level of threatening adverse employment actions. As explained above, an actionable adverse employment action

would be a termination, refusal to hire or promote, or a formal reprimand. *Benningfield*, 157 F.3d at 376. But all Lowery has alleged are actions akin to the "accusations, verbal reprimands, and investigations," "decisions concerning teaching assignments, pay increases [or] administrative matters," and the "mere . . . criticism" that the Fifth Circuit has already held are not actionable under the First Amendment. *Colson*, 174 F.3d at 511; *Harrington*, 118 F.3d at 365; *Breaux*, 205 F.3d at 157–58.

First, Lowery allegedly feared that his affiliation with the Salem Center would not be renewed, including his role with the Policy Research Lab within the Center, leading to the loss of his stipend and reduced research opportunities. Am. Compl. at ¶¶ 87-88; *see also id.* at ¶¶ 92, 109. To be sure, Defendants dispute that such actions were ever threatened. **Ex. K** (Mills Decl., previously filed as Dkt. 14-1) at ¶¶ 5–8; **Ex. L** (Burris Decl., previously filed as Dkt. 14-2) at ¶¶ 4–5 ("I have never threatened to reduce Dr. Lowery's pay, involuntarily end his affiliation with the Salem Center, reduce his access to research opportunities, request that his speech be placed under speech surveillance, or otherwise discipline him for his speech as his Complaint alleges."). But in any event, Lowery's professed fear involved decisions about administrative matters and supplemental pay. Accordingly, even accepting as true that Lowery reasonably feared losing his Salem Center position, that does not amount to an adverse employment action as a matter of law. Indeed, the Court already recognized as much when it dismissed Lowery's retaliation claim because his allegations are "insufficient to establish an adverse employment action for a First Amendment retaliation claim in the Fifth Circuit." Dkt. 51 (MtD Order) at 24 (citing *Breaux*, 205 F.3d at 160); *see also Breaux*, 205 F.3d at 160 ("[R]etaliatory threats are just hot air unless the public employer is willing to endure a lawsuit over a termination.").

The Fifth Circuit's decision in *Dorsett* also supports judgment for Defendants. There, the court addressed a plaintiff's complaint that "he had been unfairly denied summer employment and salary increases" and "had suffered other miscellaneous harassments" after "he spoke out on matters of public concern." 940 F.2d at 123. The Fifth Circuit recognized that the complained-of "decisions

concerning teaching assignments, pay increases, administrative matters, and departmental proce-dures . . . might seem extremely significant to [the public educator], who has devoted his life to teach-ing," but "nevertheless . . . [they did] not rise to the level of a constitutional deprivation." *Id.* The research opportunities and Salem Center stipend that Lowery allegedly feared losing are like the sum-mer employment and pay increases that *Dorsett* held "do not rise to the level of a constitutional depri-vation." *Id.*; *see also Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) (holding that "any harm resulting from decisions concerning 'pay increases' does not rise to the level of a constitutional depri-vation").   If the actions allegedly taken in *Dorsett* and *Harrington* did not amount to adverse employ-ment actions, then Lowery's alleged fears that similar actions *might* occur in the future cannot provide the threat of an adverse employment action that is required to support a cognizable First Amendment claim.

That leaves only Lowery's fear that "Defendants will attempt to label Lowery as lacking civility, being dangerous, violent, or in need of police surveillance." Am Compl. at ¶ 90; *see also* Am. Compl. at ¶¶ 92, 109. In short, Lowery fears Defendants may criticize him for his controversial speech. But "mere accusations or criticism," including "oral threats or abusive remarks," do not qualify as adverse employment actions. *Breaux*, 205 F.3d at 157–58 (citing *Harrington*, 118 F.3d at 366). And even if Lowery feared an *actual* police investigation—rather than the fear of merely being labeled as "in need of police surveillance," Dkt. 126 (Am. Compl.) at ¶ 90—that would not qualify as an adverse employ-ment action. *Breaux*, 205 F.3d at 158 (holding that a police investigation was not an adverse employ-ment action); *Colson*, 174 F.3d at 511 (holding that city councilmember's claim that she was subject to criminal investigation in retaliation for her expressive activities was not actionable when plaintiff "was never arrested, indicted, or subjected to a recall election" or even formally reprimanded").

In sum, the Amended Complaint fails to allege a cognizable First Amendment claim for self-chilled-speech. Defendants are thus entitled to judgment as a matter of law on this claim.

**III.   Following seven months of discovery, the evidence confirms no adverse employment action was threatened or taken.**

Defendants Mills and Burris and former Defendant Titman submitted declarations at the out-set of this litigation confirming that they had never disciplined Lowery for his speech and had no intention of ever doing so. **Ex. K** (Mills Decl., previously filed as Dkt. 14-1) at ¶ 9 ("I have not cen-sured, disciplined or otherwise punished Dr. Lowery for his speech and have no plans to do so in the future, nor am I aware of any other University officials or administrators who have done so or plan to do so in the future."); *id.* at ¶ 5 ("I have not sought to terminate, demote, or discipline Dr. Lowery because of his speech. Dr. Lowery is a tenured professor. Tenured professors retain their appoint-ments for as long as they want, unless very serious issues arise that warrant termination. The University of Texas System Regents' Rule 31008 lays out the process for removing a tenured employee. Nobody has triggered this time-consuming process for Dr. Lowery, nor am I aware of anything he has done or been accused of doing that would warrant his removal. His tenured position is secure."); **Ex. L** (Burris Decl., previously filed as Dkt. 14-2) at ¶ 14 ("I have not censured, disciplined, or otherwise punished Dr. Lowery for his speech and have no plans to do so."); **Ex. M** (Titman Decl., previously filed as Dkt. 14-3) at ¶ 11 (I have not disciplined or otherwise punished Dr. Lowery for his speech, nor do I have any plans to do so in the future.").

In the discovery that followed the Court's denial of Defendants' motion to dismiss Count One in the Original Complaint, the evidence uncovered has only served to confirm these declarations and to demonstrate that no adverse employment action has ever been threatened. Significant amounts of written discovery were exchanged, and Lowery's counsel took lengthy depositions of Defendants Mills (7 hours) and Burris (over 6 hours), as well as Dr. Carvalho, which offered every opportunity to ex-plore any possible or perceived threats to Lowery. Following all of that discovery, the evidence shows that no threats were made regarding Lowery's tenured position in McCombs (nor even was Lowery's

non-protected affiliation with the Salem Center in jeopardy), *e.g.* **Ex. N** (Mills Depo. Trans. Excerpts) at 193:15–194:4 (confirming no threat was made regarding Lowery's affiliation with the Salem Center); **Ex. O** (Burris Depo. Trans. Excerpts) at 109:19–110:14 (same). And Lowery's reappointments to the Center (both before and after he filed this lawsuit) confirm that not even that aspect of his relationship with UT has been threatened as a result of Lowery's speech.

There are no material facts in dispute as to the basis for Lowery's self-chilling decision, and no further discovery is warranted or necessary. The absence of any allegation of a threatened adverse employment action, together with the lack of any evidence to show that such a threat was made, means that Defendants are entitled to judgment on the chilled-speech claim.

## CONCLUSION & PRAYER

This Court should grant the motion for partial summary judgment and enter judgment in Defendants' favor on Count One in Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief (Dkt. 126).

Respectfully submitted,

JACKSON WALKER L.L.P.

By:   */s/ Matt Dow*
      Charles L. Babcock
      Texas State Bar No. 01479500
      cbabcock@jw.com
      Joel R. Glover
      Texas State Bar No. 24087593
      jglover@jw.com
      Javier Gonzalez
      Texas State Bar No. 24119697
      jgonzalez@jw.com
      1401 McKinney Street, Suite 1900
      Houston, Texas 77010
      (713) 752-4200 – Phone
      (713) 752-4221 – Fax

      Matt Dow
      Texas State Bar No. 06066500
      mdow@jw.com

Adam W. Aston
Texas State Bar No. 24045423
aaston@jw.com
Cody Lee Vaughn
Texas State Bar No. 24115897
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2056 – Phone
(512) 691-4456 – Fax

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

*/s/ Matt Dow*
Matt Dow